UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

EMMANUEL AGROPONG, MARCOS BASABE, ADRIAN
BATANA, CARLOS LAGUNA, YOLANDA NIEVE,
CHRISTINE NUNEZ, ANDY OSEI, ABEL PANTOJA,
ELIETZER PIERRE-LOUIS, JOSUE PIERRE-LOUIS,
DAVID RICHARDSON, DANIEL RODRIGUEZ,  ROBERTO
RODRIGUEZ, HECTOR ROSADO, and SURITA SUEDASS,
individually, and on behalf of all others similarly situated,

Civil Action No. 14-cv-7990 (RWS)

Plaintiffs,

-against-

MICHAEL MEMON  a/k/a IQBAL MEMON, GULAN DORIA
a/k/a JEFF DORIA, BERGEN DISCOUNT INC., BERGEN
DISCOUNT PLUS, INC., 518 WILLIS REALTY, INC.,
WILLIS DISCOUNT INC., ALI M. ABADI  d/b/a WILLIS
DISCOUNT, ZIAD NASSRADIN, ZNF 99 CENT DISCOUNT
CORP., DOLLAR-RITE INC., TODO BARATO DISCOUNT
INC., COMMUNITY DOLLAR PLUS, INC., 167 TRADING
DISCOUNT INC., 167 PRIMO TRADING INC., B&S
DISCOUNT INC., 99 CENT DISCOUNT & PARTY STORE
INC., 99 CENT DISCOUNT, INC., CLEAR CHOICE, INC.,
JOHN AND JANE DOES 1-50, and JOHN DOE
CORPORATIONS 1-20,

Defendants.

## DECLARATION OF ADAM P. SLATER IN SUPPORT OF PLAINTIFFS' REQUEST FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

ADAM P. SLATER, an attorney duly admitted to practice law, in the Southern District of New York, states as follows:

1. I am a partner with the law firm of Slater Slater Schulman LLP, counsel for Plaintiffs in the above captioned action.

2. I have personal knowledge of the facts stated herein as to matters concerning my

communications with Defendants' counsel and where appropriate I refer to the affidavits of Plaintiffs Daniel Rodriguez, Josue Pierre-Louis, David Richardson, and Roberto Rodriguez filed herewith.

3. I submit this declaration in support of Plaintiffs' request for a Temporary Restraining Order and request for the Court to issue an Order requiring defendants Michael Memon a/k/a Iqbal Memon and Gulan Doria a/k/a Jeff Doria to personally appear before the cause and show cause why defendants should not be permanently enjoined from continuing their acts of retaliation against Plaintiffs and other employees.

4. This Complaint in this action was filed on October 3, 2014. *See* Docket Doc. No. 1. In the Complaint, fifteen Plaintiffs alleged that defendants failed to pay them minimum wage and overtime pursuant to the New York Labor Law and the Fair Labor Standards Act. Plaintiffs also asserted that defendants failed to comply with NY's spread of hours requirements and their obligations under the Wage Theft Prevention Act.

5. Defendants operate a group of discount stores and utilize employees interchangeably. Until August 2014, the primary managers of the stores were Mohammed Doria and Defendants Michael Memon and Gulan Doria. Mohammed Doria died in August 2014, after which Defendants Michael Memon and Gulan Doria were the primary managers.[1]

6. Defendant Michael Memon and Gulan Doria have embarked on a campaign of retaliation and harassment against the workers who have participated or may participate in the

---

[1] Plaintiffs have served a notice of claim upon the administrator of the estate of Mohammed Doria. An administration proceeding for the estate was commenced in the Queens County Surrogate's Court after the instant action was filed. In accordance with Sections 1803 and 1806 New York's Surrogate's Court Procedure Act. Plaintiffs will seek to add the administrator of the estate as a defendant in this action, in the event that Plaintiffs' claim is rejected by the estate or if the administrator fails to respond to the notice of claim within ninety days.

lawsuit.[2] They have publicly terminated and suspended employees, threatened to have them deported and forced workers to sign fraudulent documents relinquishing their rights to participate in this lawsuit.  In addition, Defendants have caused a false complaint of grand larceny to be asserted to the NYPD against Plaintiff Roberto Rodriguez.  This campaign has created a chilling effect, resulting in workers who are fearful of defendants' retribution if they were to assert their rights by participating in this action.

7.  The latest round of retaliation commenced in April 2015 and continues unabated. Plaintiffs are confident that this campaign of harassment and retaliation will continue until Defendants Michael Memon and Gulan Doria are personally brought before the Court and the grave consequences of their unlawful actions are explained to them by the Court.

## FACTS

**August 2014 to April 2015: Retaliatory Terminations of Carlos Laguna, Roberto Rodriguez, Josue Pierre-Louis, and Elietzer Pierre-Louis**

8.  Several of the Plaintiffs in this action contacted my office prior to August 2014 and expressed interest in bringing this lawsuit.

9.  Defendants began retaliating against workers based on internal oral complaints once they learned that Plaintiffs were planning to file the instant action in approximately August 2014.  At that time, Defendants terminated several plaintiffs including Carlos Laguna and Roberto Rodriguez.  *See* Daniel Rodriguez  Aff. at ¶¶19; Roberto Rodriguez Aff. at ¶¶3. In the case of Roberto Rodriguez, he was told by Defendant Gulan Doria that Defendant

---

[2] In the amended complaint referenced in footnote 1, Plaintiffs intend to assert additional claims for retaliation under the anti-retaliation provisions of the Fair Labor Standards Act and the New York Labor Law against Defendants, excluding the administrator of the Estate of Mohammed Doria.  Pursuant to NY Labor Law Section 215, Plaintiffs have already served notice of their intention to assert these claims upon NY Attorney General Eric Schneiderman.

Michael Memon had instructed him to terminate Roberto after Defendants learned that Roberto was planning to participate in the instant action. *See* Roberto Rodriguez Aff. at ¶¶15.

10. Roberto has been and continues to be instrumental to the prosecution of this action. Unlike many of the other Plaintiffs in this case, his English language, reading and writing skills are very strong. Moreover, Roberto speaks English and Spanish and he has helped keep other Spanish speaking Plaintiffs informed about the developments in the case.

11. On or about August 31, 2014, Defendant Michael Memon caused one Samuel Quarshie, one of his employees, to falsely complain to police that Roberto had stolen a bag containing $9,000 in cash belonging to the Defendants. *See* Roberto Rodriguez Aff. at ¶¶17.

12. This so-called theft reportedly occurred more than a week after Roberto was terminated. *See* Roberto Rodriguez Aff. at ¶¶16. It appears that Defendant Michael Memon intended to neutralize Roberto's effectiveness in the prosecution of this action for the rights of his co-workers by having him incarcerated for grand larceny. Fortunately, for Roberto and Defendants' workers, the police did not arrest or charge Roberto based on the false accusation.

13. Soon after the action was filed in approximately October and November 2014, Defendants terminated several other plaintiffs including Josue Pierre-Louis and his brother Elietzer Pierre-Louis. *See* Pierre-Louis Affidavit at ¶¶9, ¶¶11.

14. Josue Pierre-Louis was terminated over the telephone by Defendant Gulan Doria immediately after a manager told Josue that Defendant Michael Memon was very upset with him for filing the lawsuit. *See* Pierre-Louis Aff. at ¶¶11.

15. In January 2015, Defendants cut the number of work hours and commensurate pay of Roberto's brother, Plaintiff Daniel Rodriguez in retaliation for his participation in the lawsuit. *See* Daniel Rodriguez Aff. at ¶¶9

**Early April 2015: The Blank Wage Theft Prevention Act Notices and Retaliatory Conduct Against Plaintiff Daniel Rodriguez**

16. In April 2015, Defendants launched a new wave of retaliation and harassment against their current and former employees by suspending, terminating and threatening to have them deported for their participation or intention to participate in the instant lawsuit. Defendants have also demanded that their employees sign fraudulent documents, falsely reflecting compliance with the Wage Theft Prevention Act and disavowing their interest in the instant action. Defendants' harassment continues unabated.

17. Plaintiffs' complaint alleges that Defendants failed to comply with the worker notification requirements of the Wage Theft Prevention Act. *See* Complaint at ¶¶169. Prior to the filing of the lawsuit, Defendants never provided Wage Theft Prevention Act Notices to their workers. Complaint at ¶¶169.

18. In approximately early April 2015, Defendant Michael Memon required all of Defendants' workers to sign blank WTPA notices. See Daniel Rodriguez Aff. at ¶¶ 10.

19. Defendants placed check marks on the blank notices for the employers' name and address and employee's printed name and signature and employees were instructed to complete those fields.

20. The critical information fields on the blank WTPA notices including those for: 1) the purpose of the notice; 2) the employee's pay rate; 3) allowances taken; 4) regular payday; 5) pay period interval; 6) overtime pay rate; and 7) the date the notice was signed, were

not checked off and were not to be completed by the employees.  Defendants required their employees to leave these fields blank and submit the signed document to Defendants.

21. At this time, Defendant Michael Memon informed all of his workers that they must sign these blank Wage Theft Prevention Act notices and they must not participate in the instant lawsuit or they would be terminated.  *See* Roberto Rodriguez Aff. at ¶¶23.

22. Defendant Michael Memon further informed employees who he believed to be undocumented that he would seek to have them deported if they participated in the lawsuit or refused to sign the blank Wage Theft Prevention Act notices.  *See* Roberto Rodriguez Aff. at ¶¶23.

23. At this time, Plaintiff Daniel Rodriguez asked Defendant Michael Memon to restore his hours that had been reduced in January of 2015.  *See* Rodriguez Decl. at¶¶ 13.

24. Defendant Michael Memon informed Daniel Rodriguez in the presence of other employees that he might restore the hours on two conditions: 1) that he sign the blank WTPA notice; and 2) that he stop associating with Carlos Laguna and others participating in the lawsuit. *See* Rodriguez Decl. at ¶¶15, ¶¶16, and ¶¶17.

25. Plaintiff Daniel Rodriguez refused to sign the blank Wage Theft Prevention Act notice and Defendants refused to restore his hours sending a message to other workers that failure to comply with Defendants' illegal demands will result in punitive action.  *See* Rodriguez Decl. at ¶¶24.

26. Pursuant to the Wage Theft Prevention Act and amendments thereto, annual notices were required in 2012, 2013, and 2014.  However, the annual notices are not required for 2015

or any subsequent years.  *See* Governor Cuomo's signing statement dated December 29, 2014, annexed hereto as Exhibit 4, located at

http://www.labor.ny.gov/workerprotection/laborstandards/employer/8106-C.pdf ("This agreed upon chapter amendment would also accelerate the effective date of the notification rule changes in section 1 of the bill to remove the notice requirement on employers for the 2015 calendar year.").

27. Defendants have obtained the signatures of their workers on the blank Wage Theft Prevention Act notices for the purposes of fraudulently backdating the notices with the intent of deceiving the Court into believing that they had provided the requisite notices in a timely manner, when they had not.

**Late April 2014: Using Plaintiffs' Picture IDs Obtained in Discovery to Retaliate Against Plaintiffs**
*The Fraudulent Backdated Affidavits and Retaliatory Suspensions*

28.  In April 2015, I was contacted by Defendants' counsel, Michael Chong, Esq., who requested that I provide him with photo IDs of each of the Plaintiffs.  Beginning the very next day after I provided the Photo IDs, Defendants used them to identify and target Plaintiffs for harassment.

29. Defendants' counsel said he needed the photo IDs to identify some of the Plaintiffs.

30. Plaintiffs were paid in cash off the books, and Defendants' made no effort to learn the names of some of their employees. Instead, they identified many of their employees by nicknames. Indeed, Defendants' counsel told the NY Daily News that many of the

Plaintiffs never worked at the stores.[3]  *See* Exhibit 2, annexed hereto.  In reality,

Defendants' recordkeeping practices are so lax that they did not know the names of all of

their employees.

31. Once Defendants realized that Plaintiff David Richardson was indeed one of their

employees, he became a target of Defendants' retaliation campaign within a matter of

hours.  *See* Richardson Aff. at ¶¶ 8-10.

32. On the evening of April 20, 2015, I e-mailed Defendants' counsel copies of photo IDs of

most of the Plaintiffs, including Plaintiffs David Richardson, Daniel Rodriguez and Josue

Pierre- Louis. *See* Exhibit A, annexed hereto, 4/20/2014, E-mail from Adam Slater to

Michael Chong.

33. The next morning, Defendants Michael Memon and Gulan Doria required Defendants'

employees to sign additional documents concerning the lawsuit.  Employees who were

Plaintiffs in the lawsuit, including Plaintiffs David Richardson and Daniel Rodriguez

were required to sign fraudulent backdated affidavits denying that they had agreed to

participate in the lawsuit and disavowing any interest in continuing the case.  *See*

Richardson Aff. at ¶ 8; Daniel Rodriguez Aff. at ¶¶9 .

---

[3] *See NY Daily News* article, annexed hereto as Exhibit 1. The article quotes "Michael Memon" referring to Plaintiff Carlos Laguna as a criminal. *Id.* ("'He's a criminal'").  In an affidavit filed in a nearly identical wage theft lawsuit against Mohammed Doria and Defendant Michael Memon before the Honorable Kimba M. Wood, Defendant Michael Memon asked Judge Wood to vacate a six-figure default judgment against him, by stating under oath, "Because English is not my primary written or spoken language, I have been unable to identify any documents that I have as a Summon and Complaint." *See* 2/5/2010 Memon Aff. at ¶ 3, annexed hereto as Exhibit 2.  He also stated that his "first name is not 'Mike.'"  *Id.* at ¶ 6. In fact, as indicated by his quote in the news article, "Mr. Mike" as he is known to his workers, speaks perfect English.  On March 1, 2010, Judge Wood vacated the six-figure default judgment based upon Mr. Mike's false affidavit.  *See* 3/1/2010 Order Vacating Default Judgment at 1, annexed hereto as Exhibit 3.

34. Upon information and belief, at this time Defendants' non-plaintiff employees were required to sign some other documents compromising their rights with respect to the lawsuit.  *See* Rodriguez Aff. at ¶ 10.

35. Defendants Michael Memon and Gulan Doria, threatened Plaintiffs Richardson and Daniel Rodriguez with termination if they did not sign the fraudulent backdated affidavits.  *See* Richardson Aff. at ¶¶9, Daniel Rodriguez Aff. at ¶¶23.

36. Plaintiffs Richardson and Daniel Rodriguez refused to sign the fraudulent backdated affidavits. *See* Richardson Decl. at ¶¶10; Rodriguez Decl. at¶¶ 24.

37. In response to their refusal to sign the fraudulent backdated affidavits and their participation in the lawsuit, Defendants Michael Memon and Gulan Doria suspended Plaintiff Richardson and  *See* Richardson Aff at ¶¶10.

38. The fraudulent backdated affidavits provided for a public notary's signature.  Upon information and belief, Defendants either intended to forge a notary public's signature or to use a notary public willing to violate her solemn obligation as a public official by fraudulently acknowledging the employees' signatures on the fraudulent backdated affidavits at Defendants' request.

39. On the afternoon of April 21, 2015, I contacted Mr. Chong and expressed Plaintiffs' frustration with Defendants' retaliatory conduct.  Mr. Chong promised to resolve the retaliation issues and asked that Plaintiffs not seek a temporary restraining order.  I informed him that I could make no such promise.

40. To this day, Plaintiff David Richardson remains suspended, and the public retaliation continues unabated.  As of this week, Plaintiff Daniel Rodriguez has been permitted to come back but his hours have been curt even further.

***Last Week of April 2015: Threats of Deportation***

41. When employees asserted workplace complaints, Defendants Michael Memon and Gulan Doria regularly threatened to contact immigration authorities and have them deported. *See* Roberto Rodriguez Aff. at ¶ 17.  Defendants took this to an entirely new level in their recent retaliation campaign against Plaintiff Josue Pierre-Louis in late April 2015.

42. During the last week of April 2015, after Plaintiffs supplied Defendants' counsel with Plaintiffs' photo ID's and after Defendants counsel assured me that there would be no further retaliatory conduct by Defendants, Plaintiff was contacted by Luckenson "Lucas" Camille. *See* Pierre-Louis Aff. at ¶ 14.

43. In this recent interaction, Camille told Pierre-Louis that Defendant Gulan Doria was very upset that Pierre-Louis was participating in the lawsuit.  *See* Pierre-Louis Aff. at ¶ 15.

44. Camille interrogated Pierre-Louis about his participation in the lawsuit, and tried to convince him to withdraw from the case. *See* Pierre-Louis Aff. at ¶ 16.

45. Camille informed Pierre-Louis that Defendant Gulan Doria had given him a copy of Pierre-Louis' photo ID.   *See* Pierre-Louis Aff. at ¶ 15.

46. Camille further informed Pierre Louis that Defendant Gulan Doria planned to report Pierre-Louis to immigration authorities if he did not withdraw from the lawsuit. Camille also stated that he would have to testify as a witness in the deportation proceedings and

use the photo ID provided to him by Defendant Gulan Doria as evidence in the
deportation proceedings. *See* Pierre-Louis Aff. at ¶1.

## ARGUMENT

47. Plaintiffs seek a temporary restraining order restricting Defendants from engaging in
further acts of retaliation, preserving the status quo until a hearing is held at which
Plaintiffs will seek a preliminary injunction precluding defendants from engaging in
further retaliatory acts.

### Plaintiffs Should Not Be Required to Provide Notice

48. FRCP Rule 65 (b) provides that a temporary restraining order can be issued "without
notice where the facts in an affidavit … clearly show that immediate and irreparable
injury, loss or damage will result to the movant before the adverse party can be heard in
opposition; and the movant's attorney certified in writing the efforts made to give notice
and the reasons why it should not be required."

49. In this case, notice should not be required.  The ongoing acts of retaliation have only
increased since I alerted Defendants' counsel to the conduct of his clients.

50. To be clear, I cast no aspersions on Mr. Chong.  His interactions with me to date have
been nothing but professional.  Rather, Plaintiffs and I believe that Mr. Chong's clients
are hell bent on retaliating and harassing their workers without regard to any contrary
advice or warnings they may have received from their counsel.  Defendants Michael
Memon and Gulan Doria have shown by their repeated retaliatory and harassing conduct
that they have no intention of listening to anyone who would try to deter their efforts to
stifle participation in this lawsuit.

51. For this reason, Plaintiffs believe that the Court should require the personal appearance of Defendants Michael Memon and Gulan Doria, who appear to be primary perpetrators of the harassment campaign.

## Plaintiffs Satisfy the Requirements for a Temporary Restraining Order

52. To obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the moving party must "show that he will suffer irreparable harm absent injunctive relief and either (1) that he is likely to succeed on the merits of his claim; or (2) that there are sufficiently serious questions going to the merits to make them fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); *Mullins v. City of New York*, 307 Fed. Appx. 585, 586 (2d Cir. Jan. 27, 2009) (applying standard to FLSA claim). Plaintiff satisfies each of these requirements.

## Irreparable Harm

53. Plaintiffs easily satisfy the irreparable harm requirement. "Unchecked retaliation, no matter its form, subverts the purpose of the FLSA, the MSAWPA and other federal employment laws." *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003) ("Perry's retaliatory actions undermine the important purposes of the anti-retaliation provisions of the FLSA and MSAWPA, and could potentially chill other migrant workers who might seek to enforce their rights.").

54. Defendant Gulan Doria's threats of having Plaintiff Josue Pierre-Louis and potentially other workers deported create an immediate danger to Plaintiffs who may have difficulty prosecuting their claims from outside the United States. See, *Centeno-Bernuy*, 302 F. Supp. 2d at 135 ("Perry will immediately contact authorities and have them arrested and

deported, thereby making it difficult, if not impossible, for them to pursue the Becker

Farms litigation.").

55. Similarly, Plaintiff Roberto Rodriguez would be a less effective participant in this lawsuit

if he were sitting in a jail cell awaiting a trial on grand larceny charges as Defendants

Michael Memon had hoped.

56. Defendants' public retaliation against Plaintiffs in the presence of other employees were

intended to send a message to other workers not to come forward or suffer the same fate.

This has produced a severe chilling effect whereby other employees are unwilling to

come for forward for fear of losing their jobs. *Garcia v. Lee*, 2010 U.S. Dist. LEXIS

52082, 5 (E.D.N.Y. May 26, 2010) ("It is reasonable to infer that the defendants' adverse

action against them so soon after they filed formal complaints may have deterred other

employees from asserting their rights under FLSA or joining this lawsuit.").

57. Moreover, Defendants have shown by word and deed that their explicit threats of

termination and efforts to have workers deported for participating in this lawsuit are not

idle ones.  That message is clear to both Plaintiffs and non-plaintiff employees who

should be permitted to participate in this action without fear of retaliation.  The actual

chilling effect that Defendants have caused by their unlawful conduct is palpable.  At

least four other workers have resisted their desire to join this lawsuit because Defendants'

threats of termination and deportation. *See* Roberto Rodriguez Aff. at ¶¶17.

### The Merits of the Retaliation Claims

58. There are fair grounds for litigation of the retaliation claims.  Plaintiffs intend to amend

their complaint to add claims for retaliation under Section 215 of the FLSA and Section

215 of the NYLL.  The FLSA specifically authorizes courts to grant injunctive relief

where a retaliation claim is raised under Section 215(a)(3) of the statute. Section
215(a)(3) makes it unlawful for any person:

> to discharge or in any other manner discriminate against any employee because
> such employee has filed any complaint or instituted or caused to be instituted any
> proceeding under or related to this chapter, or has testified or is about to testify in
> any such proceeding, or has served or is about to serve on an industry committee.

59. Similarly, the New York Labor Law prohibits employers from:

> discharg[ing], penaliz[ing], or in any other manner discriminat[ing] against any
> employee because such employee has made a complaint to his employer, or to the
> commissioner or his authorized representative, that the employer has violated any
> provision of this chapter, or because such employee has caused to be instituted a
> proceeding under or related to this chapter, or because such employee has testified
> or is about to testify in an investigation or proceeding under this chapter. See,
> N.Y. Lab. Law § 215(1).

60. In order to establish a prima facie case of retaliation, plaintiffs must show "(1)
participation in protected activity known to the defendant; (2) an employment action
disadvantaging the plaintiff; and (3) a causal connection between the protected activity
and the adverse employment action." Lai v. Eastpoint Intern, Inc., No. 99-cv-2095, 2000
U.S. Dist. LEXIS 12502 (S.D.N.Y. Aug. 31, 2000) (citing Cruz v. Coach Stores, Inc.,
202 F.3d 560, 566 (2d Cir. 2000)). Here, there are sufficiently serious questions on the
merits of the Plaintiffs retaliation claims to make them fair grounds for litigation.

61. First, Plaintiffs participated in a protected activity. Both the FLSA and the NYLL anti-
retaliation statutes specifically provide that the filing of a lawsuit is protected activity.

14

*See* FLSA Section 215(a)(3); NYLL 215(1).

62. Second, Defendants have engaged in numerous employment actions disadvantaging Plaintiffs and other class members.  Defendants have threatened workers with termination and deportations proceedings.  They have also terminated, suspended and reduced the work hours of Plaintiffs participating in this lawsuit.  Moreover, Defendants have required Plaintiffs and other employees, to file blank, backdated and fraudulent documents that could disadvantage the claims of Plaintiffs and current employees. Finally, Defendants tried to have a former employee criminally charged with grand larceny based on false accusations when his only remaining connection to Defendants was this lawsuit.  These actions clearly constitute adverse employment actions. *See Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003) ("Perry's actions after learning of the lawsuit, i.e., reporting plaintiffs to the INS and making baseless allegations to the government that plaintiffs are terrorists, constitute an adverse employment action."); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180 (N.D. Cal. 2000) (reporting a plaintiff to the INS in retaliation for a plaintiff having complained under the FLSA constituted an adverse employment action).

63. Third, Defendants have made clear the causal connection between the protected activity and the adverse employment action.  Indeed, Plaintiff Josue Pierre-Louis was terminated by Gulan Doria moments after Plaintiffs supervisor told him that "Mr. G." was upset about him filing the lawsuit.  See Pierre-Louis Aff. xx. Moreover, Pierre-Louis was again retaliated against with threats of deportation at Mr. G's direction because Mr. G was upset about the lawsuit.  See Pierre-Louis Aff. ¶¶16.  Indeed, Mr. G. was going to use the photo ID of Pierre-Louis's that he obtained in discovery as evidence against him in

deportation proceedings.  Similarly, Daniel Rodriguez and David Richardson were suspended for refusing to sign the fraudulent backdated affidavits, disavowing their involvement in the instant lawsuit one day after Defendants' received their photo IDs. Moreover, Daniel Rodriguez was told that his hours that had been wrongfully reduced might be restored if he stopped communicating with other participants in the lawsuit and signed the blank WTPA notices.  All of this clearly indicates a causal connection between the Plaintiffs' participation in this lawsuit and the adverse employment actions meted out by Defendants.

### Balance of the Hardships

64. The balance of the hardships clearly favors Plaintiffs.  This case is very similar to Centeno-Bernuy, where the Defendant had falsely told authorities that the plaintiffs were terrorists and also tried to have some plaintiffs deported.

65. The failure to grant an injunction will harm the plaintiffs. Without the sought-after injunctive relief, plaintiffs will continue to face difficulty in prosecuting the Becker Farms litigation, and could face criminal and administrative action against them because of Perry's accusations. In contrast, if an injunction is issued, Perry will not suffer any hardship. He will simply be prevented from continuing to repeat his baseless claims about the plaintiffs to government authorities. Centeno-Bernuy, 302 F. Supp. 2d at 137.

66. Similarly, if the injunctive relief is not granted in this case, Plaintiffs and other workers will continue to be subject to Defendants' cruel machinations.  In contrast, Defendants will only be restrained from taking retaliatory actions against its current and former workers, such as jeopardizing their immigration status, filing false police reports against them, terminating them, suspending them, cutting their work hours or any other forms of

malevolent retribution that Defendants may devise.

**<u>Plaintiffs Should Not Be Required To Post a Bond</u>**

67. Where the United States is not the party seeking the injunction, FRCP Rule 65(c)

provides that the movant is required to post security "in an amount that the court

considers proper to pay the costs and damages sustained by any party found to have been

wrongfully enjoined or restrained." In this case, Defendants will suffer no costs or

damages if they are found to have wrongfully enjoined or restrained, because the only

conduct that Plaintiffs seek to enjoin is that which is illegal. In the event that the Court

determines that security is necessary, Plaintiffs request that they be required to post

security of no more than $100.00.


I declare under penalty of perjury under the laws of the State of New York that the
foregoing is true and correct. This declaration is executed on the eighth day of May,
2015, in New York, New York.

Dated: May 8, 2015
New York, New York

_____ /s/ Adam P. Slater _____
Adam P. Slater

EXHIBIT 1

NEW YORK        POLITICS        SPORTS        ENTERTAINMENT

NYC CRIME    BRONX    BROOKLYN    QUEENS    UPTOWN    EDUCATION    WEATHER    OBITUARIES    NEW YORK PICS






# EXCLUSIVE: Workers at dollar store chain claim to have endured 'sweatshop wages and conditions' in $2M lawsuit

BY KELDY ORTIZ , STEPHEN REX BROWN  /  NEW YORK DAILY NEWS  /  Monday, March 9, 2015, 5:22 AM      A A A

116          78                    17

SHARE THIS URL

nydn.us/1C1ulys



RICHARD HARBUS/FOR NEW YORK DAILY NEWS

'They treated us like trash,' says Carlos Laguna, a former worker at Bergen Discount in the Bronx. The 45-year-old is the lead plaintiff in a lawsuit that claims he and other other workers were paid as little

as $2.27 an hour for 11-hour days, six days a week, with no overtime.

RELATED STORIES

New York workers
shorted of $1 billion
annually

Penn State Chipotle
employees complain
of sweatshop
conditions

A group of activist-
workers has a
message for Costco:
"Stop supporting
sweatshops."

Labor lawsuit makes
Domino's fall

Shoppers find notes
from sweatshop
workers in clothes

The discounts at a chain of dollar stores also appeared on the company payroll, a lawsuit charges.

Fifteen workers — most of them undocumented — at the stores in the Bronx and Queens say they were paid as little as $2.27 an hour for 11-hour days, six days a week, with no overtime.

If they got any lunch break at all, it was only 15 minutes, documents filed in Manhattan Federal Court charge.

"They treated us like trash," said Carlos Laguna, 45, who worked three years at Bergen Discount on Willis Ave. in the Bronx.

"How do you have so many stores and not pay?"

By the time he quit his job stocking shelves and unloading deliveries last year, he was earning a mere $5.45 an hour, he said. The current minimum wage in New York is $8.75.

The suit alleges that the chain of 10 stores, with names like Dollar Rite Discount Warehouse and Barato Discount Store, has prospered on the backs of underpaid undocumented workers.

"Upon protesting their sweatshop wages and conditions, plaintiffs were repeatedly advised . . . that plaintiffs would not receive a job elsewhere without documentation, and that defendants would report the plaintiffs to immigration authorities if they said anything," court papers said, alleging the abuses have been in place since 1986.

Laguna and his fellow workers seek $2 million in unpaid wages, overtime and damages for their work at the stores, which sell cheap fabrics, kitchenware, cleaning supplies and other sundries.

That sum could grow immensely if Federal Judge Robert Sweet approves the suit as a class action, granting Adam Slater, the lawyer for the plaintiffs, access to the company's payroll since 2008. That could expand the potential number of plaintiffs and damages.

"These guys need that pay. They rely on it," Slater said.

Michael Menon, 70, the co-owner of Bergen Discount, which serves as the








RICHARD HARBUS/FOR NEW YORK DAILY NEWS

**Bergen Discount owner Michael Memon, 70, says Laguna is 'a criminal.'**

chain's headquarters, would not talk about the lawsuit. But he couldn't hide his disdain for Laguna, who is a leader of the plaintiffs.

"He's a criminal," Menon said.

Menon's attorney, Michael Chong, said many of the plaintiffs never even worked at the stores and were just "jumping on the bandwagon."

Workers not involved in the suit didn't dispute the allegations of brutal shifts with minimal breaks.

Jorge Pena, 54, said he works 10-hour shifts for $6 an hour as a security guard.

"They think about themselves and treat others like slaves," Pena said about his bosses. "I took a half-hour break, they got upset. This is off-the-boat money!"

sbrown@nydailynews.com

## PROMOTED STORIES

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

**FREDDY RODRIGUEZ,** on his behalf
and on behalf of others similarly situated,

       Plaintiff,

      -against-

**BERGEN DISCOUNT PLUS, INC.,
WILLIS DISCOUNT STORE, ERROL
MARKS,** an individual, **MIKE MEMON,**
an individual, and **MUHAMMED
DORIA,** an individual,

    Defendants.

------------------------------------------------------------------X

Case No. 08-cv-8304 (KMW)

**AFFIDAVIT IN SUPPORT OF ORDER
TO SHOW CAUSE TO SET ASIDE
DEFAULT**

STATE OF NEW YORK     )
                 ) ss.:
**County of Bronx**      )

Defendant, **Iqbal Memon,** being duly sworn, deposes and says:

    1.    Plaintiff may have attempted to name me as a Defendant in the above action.

    2.    English is not my primary written or spoken language.  In my household we speak, write read and understand Hindi.

    3.    Plaintiff, Freddy Rodriquez, claims to have served me with a Summons and Complaint in this matter.  Because English is not my primary written or spoken language, I have been unable to identify any documents that I have as a Summons and

Complaint. Neither do I have any papers which I understand I am legally required to respond to in order to prevent the entry of a default judgment against me.

4.    I do not have extensive knowledge of or experience with the United States legal system.

5.    The Return of Service in this case states that the Summons and Complaint were left with Lakhi Yunus "co-worker/Auth. to Accept" at 518 Willis Avenue, Bronx, New York. In fact, Lakhi Yunus is NOT a co-worker of mine nor is he my agent. Lakhi Yunus is not a "clerk," "person in charge," or "registered agent" for me. Furthermore, Lakhi Yunus was not authorized at any time to accept service on my behalf.

6.    My legal first name is "Iqbal." My first name is not "Mike," as indicated by Plaintiff on the Summons and Complaint and on the Return of Service.

7.    I have never personally employed Plaintiff Freddy Rodriguez. On information and belief, any work that he might have done at 518 Willis Avenue, Bronx, New York was compensated at least at minimum wage required by the Fair Labor Standards Act or New York Labor Law.

8.    On information and belief, any work that Plaintiff Freddy Rodriguez might have done at 518 Willis Avenue, Bronx, New York was within the spread of hours compensation as required by New York Labor Law.

9.    On information and belief, any work that Plaintiff Freddy Rodriguez might have done at 518 Willis Avenue, Bronx, New York on overtime was always compensated at overtime wages as required by the Fair Labor Standards Act or New York Labor Law.

10.    I have no knowledge of the identity of "Plaintiff" Elon Kumar or Defendant Errol Marks.

11.    I do not know anything about Bergen Discount Plus, Inc. I do not own or operate Bergen Discount Plus, Inc.  Furthermore, I am not a Chairman of the Board, Chief Executive Officer, stockholder, director, officer or agent of Bergen Discount Plus, Inc..  Finally, I do not have power over payroll or personnel decisions at Bergen Discount Plus, Inc., nor do I have the power to hire or fire employees, establish or pay wages, set works schedules, or maintain employment records at Bergen Discount Plus, Inc.

12.    I do not know anything about Willis Discount Store. I do not own or operate Willis Discount Store.  Furthermore, I am not a Chairman of the Board, Chief Executive Officer, stockholder, director, officer or agent of Willis Discount Store. Finally, I do not have power over payroll or personnel decisions at Willis Discount Store, nor do I have the power to hire or fire employees, establish or pay wages, set works schedules, or maintain employment records at Willis Discount Store.

13. I do not owe any money to Plaintiffs for any reason.

14. Upon learning that a judgment might have been filed against me in this matter on January 19, 2010, I immediately contacted an attorney and retained him to represent me in this matter.

                                        /s/ Iqubal Memon_____
                                        Iqbal Memon

Sworn to before me on

    2/5/10_____

  /s/ Richard D Lamborn____
Notary Public

EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: 3 / 1 / 10               │
└─────────────────────────────────────┘
```

-----------------------------------------------------------

**FREDDY RODRIGUEZ**, on his behalf and
on behalf of others similarly situated,

    Plaintiff,

          -against-

**BERGEN DISCOUNT PLUS, INC.,
WILLIS DISCOUNT STORE, ERROL
MARKS**, an individual, **MIKE MEMON**, an
individual, and **MUHAMMED DORIA**, an
individual,

    Defendants.

Index No. 08-cv-8304 (KMW)

**ORDER VACATING DEFAULT
JUDGMENT**

-----------------------------------------------------------

      Defendants', IQBAL MEMON's and MUHAMMED DORIA's, Order to Show Cause to

Vacate the Default Judgment herein, said Default Judgment being dated and entered on January

19, 2010, said Order to Show Cause being dated and entered on February 8, 2010, came on for

hearing before the above entitled Court on February 16, 2010, the Honorable Kimba M. Wood,

presiding.   Plaintiff appeared through counsel, Richard Kistnen, Esq.   Defendants, IQBAL

MEMON and MUHAMMED DORIA, appeared through counsel, **RICHARD D LAMBORN**,

Esq.

      Based upon the pleadings, papers and filings herein, all proceedings heretofore had

herein, upon the arguments of counsel and good cause appearing therefore, it is hereby

      **ORDERED** that the Default Judgment herein dated and entered on January 19, 2010 is

hereby vacated as to all Defendants, and it is further

1

**ORDERED** that Defendants IQBAL MEMON and MUHAMMED DORIA may file and serve their proposed Answer, and it is further

**ORDERED** that Plaintiff shall obtain a transcript of the hearing held herein on February 16, 2010.

ENTER:

DATED: March 1, 2010
New York, NY

_____
Honorable Kimba M. Wood
United States District Court Judge

2

EXHIBIT 4



STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

APPROVAL # 30

CHAPTER # 537

DEC 29 2014

MEMORANDUM filed with Assembly Bill 8106-C, entitled:

"AN ACT to amend the labor law, in relation to increased penalties for violations of wage payment provisions and contractor accountability; to amend the limited liability company law, in relation to liability of members; and to amend the state finance law, in relation to establishing the wage theft prevention account"

A P P R O V E D

This bill would expand various protections enacted last year to protect employees from wage theft and would also eliminate the annual written notice requirement that employers are required to provide employees of their rates of pay and certain pay-related information.

However, as passed, this bill contains some technical and substantive problems which the Legislature has agreed to address in additional legislation. This agreed-upon chapter amendment would also accelerate the effective date of the notification rule changes in section 1 of the bill to remove the notice requirement on employers for the 2015 calendar year. On the basis of the changes reflected in the agreed-upon legislation, I am signing this bill.

This bill is approved.

EXHIBIT A



Adam Slater <aslater@sssfirm.com>

## Bergen

**M C** <mkc5001@yahoo.com>                                                        Mon, Apr 20, 2015 at 3:50 PM
Reply-To: M C <mkc5001@yahoo.com>
To: "Adam P. Slater, Esq." <aslater@sssfirm.com>

Respectfully, my client does not recognize any of the names, and so we need to obtain
photo ID from you of each Plaintiff.

Once received, my client will review for identification.


Sincerely,

Michael

Michael K. Chong, Esq.

**Law Offices of Michael K. Chong, LLC**

**Fort Lee Office**:
2 Executive Drive, Suite 720, Fort Lee, New Jersey 07024
Ph: (201) 708-6675 Fx: (201) 708-6676
**Direct Dial: (201) 947-5200**

**Hoboken Office**:
300 Hudson Street, Suite 10, Hoboken, New Jersey 07030
Ph: (201) 203-7476 Fx: (201) 708-6676

**New York Office:**
1250 Broadway, 36th Fl., Suite 300, New York, New York 10001
Ph: (212) 726-1104 Fx: (212) 726-3104

🌱 Go Green. Please consider our planet before printing your documents. 🖨

This email (including any attachments) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or
copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify the
Law Offices of Michael K. Chong, LLC and permanently delete the original and any copy of this email (including any attachments) and destroy
any printout(s) thereof. Thank you.

**From:** "Adam P. Slater, Esq." <aslater@sssfirm.com>
**To:** M C <mkc5001@yahoo.com>
**Sent:** Monday, April 20, 2015 3:48 PM

**Subject:** Re: Bergen

[Quoted text hidden]



**Adam Slater <aslater@sssfirm.com>**

---

# Bergen Plaintiffs Photo Identifications Email 1 of 4

---

**Adam P. Slater, Esq.** <aslater@sssfirm.com>                     Mon, Apr 20, 2015 at 5:44 PM
To: M C <mkc5001@yahoo.com>
Cc: Thomas Cho <thomas.cho720@gmail.com>

   I will be sending a few emails with the ids.  Please confirm receipt of each one.  Thank you.
   Adam P. Slater, Esq.

   909 Third Avenue, 28th Floor
   New York, NY 10022
   phone: (212) 481-7400
   fax: (212) 922-0907

   ----------------------------------------------------------
   This message, as well as any attached document, contains information from the law firm of Slater Slater Schulman LLP that is confidential
   and/or privileged, or may contain attorney work product.  The e-mail message is intended solely for the named recipient(s) above.  If you are
   not the intended recipient, you are hereby notified that any disclosure, dissemination, copying, distribution or the taking of any action in
   reliance on the contents of this message or any attachment(s) is strictly prohibited, and may be unlawful.  If you have received this message
   in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you may have created,
   without disclosing the contents, and notify the sender immediately.  Unintended transmission does not constitute waiver of the attorney-client
   privilege or any other privilege.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or
   electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.
   ----------------------------------------------------------
   [Quoted text hidden]

**3 attachments**



**Roberto Rodriguez.JPG**
519K

**Elietzer Pierre Louis.jpg**
24K





**Marcus Basabe.jpg**
34K

Slater Slater Schulman LLP Mail - Bergen Plaintiffs Email 2 of 4                    Page 1 of 2

 **Adam Slater <aslater@sssfirm.com>**

---

## Bergen Plaintiffs Email 2 of 4

---

**Adam P. Slater, Esq.** <aslater@sssfirm.com>                    Mon, Apr 20, 2015 at 5:44 PM
To: M C <mkc5001@yahoo.com>
Cc: Thomas Cho <thomas.cho720@gmail.com>

Adam P. Slater, Esq.



909 Third Avenue, 28th Floor
New York, NY 10022
phone: (212) 481-7400
fax: (212) 922-0907

---------------------------------------------------------

This message, as well as any attached document, contains information from the law firm of Slater Slater Schulman LLP that is confidential

and/or privileged, or may contain attorney work product.  The e-mail message is intended solely for the named recipient(s) above.  If you are

not the intended recipient, you are hereby notified that any disclosure, dissemination, copying, distribution or the taking of any action in

reliance on the contents of this message or any attachment(s) is strictly prohibited, and may be unlawful.  If you have received this message

in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you may have created,

without disclosing the contents, and notify the sender immediately.  Unintended transmission does not constitute waiver of the attorney-client

privilege or any other privilege.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or

electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

---------------------------------------------------------

[Quoted text hidden]

---------------------------------------------------------

**2 attachments**



**Sueda Sarita.jpg**
829K

**Christina Nunez.Bergen Discount.PDF**
8K

---

Case 1:14-cv-07990-SN   Document 17   Filed 05/14/15   Page 37 of 41

Case 1:14-cv-07990-SN   Document 17   Filed 05/14/15   Page 38 of 41



**Adam Slater <aslater@sssfirm.com>**

---

## Bergen Discount email 3 of 4

---

**Adam P. Slater, Esq.** <aslater@sssfirm.com>          Mon, Apr 20, 2015 at 5:45 PM
To: M C <mkc5001@yahoo.com>
Cc: Thomas Cho <thomas.cho720@gmail.com>

Adam P. Slater, Esq.

909 Third Avenue, 28th Floor
New York, NY 10022
**phone:** (212) 481-7400
**fax:** (212) 922-0907

------------------------------------------------------------

This message, as well as any attached document, contains information from the law firm of Slater Slater Schulman LLP that is confidential and/or privileged, or may contain attorney work product. The e-mail message is intended solely for the named recipient(s) above. If you are not the intended recipient, you are hereby notified that any disclosure, dissemination, copying, distribution or the taking of any action in reliance on the contents of this message or any attachment(s) is strictly prohibited, and may be unlawful. If you have received this message in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you may have created, without disclosing the contents, and notify the sender immediately. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

------------------------------------------------------------

[Quoted text hidden]
Anthony R. Portesy
Sent from my iPhone

------------------------------------------------------------

**2 attachments**

**IMG_1452.JPG**
47K





**IMG_1453.JPG**
45K



**Adam Slater <aslater@sssfirm.com>**

---

## Bergen Discount Email 4 of 4

---

**Adam P. Slater, Esq.** <aslater@sssfirm.com>                    Mon, Apr 20, 2015 at 5:46 PM
To: M C <mkc5001@yahoo.com>
Cc: Thomas Cho <thomas.cho720@gmail.com>

Adam P. Slater, Esq.



909 Third Avenue, 28th Floor
New York, NY 10022
phone: (212) 481-7400
fax: (212) 922-0907

-------------------------------------------------------

This message, as well as any attached document, contains information from the law firm of Slater Slater Schulman LLP that is confidential and/or privileged, or may contain attorney work product.  The e-mail message is intended solely for the named recipient(s) above.  If you are not the intended recipient, you are hereby notified that any disclosure, dissemination, copying, distribution or the taking of any action in reliance on the contents of this message or any attachment(s) is strictly prohibited, and may be unlawful.  If you have received this message in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you may have created, without disclosing the contents, and notify the sender immediately.  Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege.  Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

-------------------------------------------------------

[Quoted text hidden]

-------------------------------------------------------

**2 attachments**



**Carlos Laguna (2).JPG**
36K

**Daniel Rodriguez (2).JPG**
37K

Case 1:14-cv-07990-SN   Document 17   Filed 05/14/15   Page 41 of 41

