UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMANUEL AGROPONG, MARCOS BASABE, ADRIAN BATANA, CARLOS LAGUNA, YOLANDA NIEVE, CHRISTINE NUNEZ, ANDY OSEI, ABEL PANTOJA, ELIETZER PIERRE-LOUIS, JOSUE PIERRE- LOUIS, DAVID RICHARDSON, DANIEL RODRIGUEZ, ROBERTO RODRIGUEZ, HECTOR ROSADO, and SURITA SUEDASS, individually, and on behalf of all others similarly situated,

Plaintiffs,

-against-

MICHAEL MEMON a/k/a IQBAL MEMON, GULAN DORIA a/k/a JEFF DORIA, BERGEN DISCOUNT INC., BERGEN DISCOUNT PLUS, INC., 518 WILLIS REALTY, INC., WILLIS DISCOUNT INC., ALI M. ABADI d/b/a WILLIS DISCOUNT, ZIAD NASSRADIN, ZNF 99 CENT DISCOUNT CORP., DOLLAR-RITE INC., TODO BARATO DISCOUNT INC., COMMUNITY DOLLAR PLUS, INC., 167 TRADING DISCOUNT INC., 167 PRIMO TRADING INC., B&S DISCOUNT INC., 99 CENT DISCOUNT & PARTY STORE INC., 99 CENT DISCOUNT, INC., CLEAR CHOICE, INC., JOHN AND JANE DOES 1-50, and JOHN DOE CORPORATIONS 1-20,

Civil Action No. 14-cv-7990 (RWS)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR CONTEMPT**

## INTRODUCTION

Plaintiffs seek an evidentiary hearing on the merits in connection with this Second Motion for Contempt against Defendants concerning their numerous violations of the Court's Preliminary Injunction. The Court should grant the motion, severely sanction defendants, reinstate the workers and award Plaintiffs' attorneys fees in connection with this motion.

This is Plaintiffs' Second Motion for Contempt. The first motion concerned Defendants' violation of the temporary restraining Order issued by the Hon. Robert. W. Sweet on May 12, 2015 enjoining Defendants from communicating with Plaintiffs and retaliating with workers.

This motion concerns Defendants' violations of the preliminary injunction that was issued by the Hon. Richard J. Sullivan on June 2, 2015, which enjoins Defendants from the following communications and actions with respect to all current and former employees, whether they are Plaintiffs in the lawsuit or not:

> no discussion, conversation whatsoever about this litigation, and certainly no retaliation, no threats of termination or suspension or deportation, no requests or demands that employees sign documents disclaiming rights withdrawing from the litigation or anything related to the ligation.

Defendants simply ignored the preliminary injunction issued by Judge Sullivan as they had ignored the previous temporary restraining order issued by Judge Sweet. By June 3, 2015, one day after the preliminary injunction was issued, Defendants had violated the preliminary injunction no less than five times. To date, Defendants have violated the preliminary injunction no less than eleven times. As recently as this morning Defendants escalated the retaliation campaign by falsely accusing one of the Plaintiffs of threatening to assault Usman Doria,[1] with a deadly weapon. When that didn't result in the plaintiffs' arrest, Defendants Mike Memon, Usman Doria, Gulan Doria terminated him. Plaintiffs cannot tally the total number of violations because many workers in this case are terrified of incurring Defendants' wrath and thus will not come forward to tell their stories.

Plaintiffs believed that the Court's issuance of the temporary restraining order would deter defendants from retaliating against current and former workers, but they were wrong.

---

[1] Usman Doria is a manager of Defendants' Discount Stores. He is the brother Defendant Gulan Doria, as well as the former primary manager, Mohamed H. Doria (deceased), and managers Sikander Doria, Salim Doria and the brother-in-law of manager Musajee Vawda. At the time of this incident, Usman Doria was aware that Plaintiffs are preparing to file a motion to amend the complaint, naming him, the estate of Mohamed H. Doria, Sikander Doria, Salim Doria and Musajee Vawda as defendants in the lawsuit.

Plaintiffs were naïve to think that the filing of their first motion for contempt would deter Defendants from continuing their ruthless campaign of vengeance. They hoped in vain that Defendants Michael Memon and Gulan Doria's appearance before Judge Sullivan and the issuance of the preliminary injunction would finally wake Defendants up to the consequences of their actions. But as Judge Sullivan noted at the hearing, "you can't teach judgment." Many of the workers have now lost hope, believing that there is no way to stop Defendants from continuing to punish them. Nevertheless, Plaintiffs ask the Court to exercise its inherent and statutory authority to put an end to Defendants' malicious retaliation campaign once and for all.

## FACTS

### A. Sixteen Retaliatory Acts Before The Temporary Restraining Order Is Issued

Since Defendants learned that Plaintiffs were planning to file this lawsuit, they have waged a campaign of retaliation and harassment against their current and former workers with terminations, suspensions, reductions in work hours, threats of deportation, and the malicious filing of a complaint with law enforcement authorities. *See e.g.*, Declaration of Christopher Marlborough ("Marlborough Decl."), Exh. "A", Timeline, Acts Nos. 4 - 18. The Timeline, submitted herewith, chronicles more than fifty-five acts of retaliation and/or violations of Judge Sweet's Temporary Restraining Order and/or Judge Sullivan's Preliminary Injunction.

### B. The Temporary Restraining Order

On May 12, 2015, Judge Sweet issued a Temporary Restraining Order prohibiting Defendants from communicating with Plaintiffs about the lawsuit or retaliating against any workers for their actual or intended participation in the lawsuit pending a hearing for a preliminary injunction on May 12, 2015 (the "TRO"). *See* Dkt. Doc. No. 16. Specifically, the TRO provided the following:

> ORDERED that, sufficient reason have been shown therefor, pending the hearing of plaintiffs' application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., the defendant is temporarily restrained and enjoined from terminating or suspending or threatening to terminate or suspend any

employee, causing any employee to be deported or threatening to cause any employee to be deported, retaliating or discriminating in any way against current or former employees of the above-named Defendants based on their participating in or intention to participate in the instant lawsuit, requesting any employees to sign documents compromising their rights in this lawsuit or cooperating in any way in the prosecution of the lawsuit;

ORDERED that, Defendants are prohibited from speaking to employees of Defendants either directly or through another person acting on their behalf, regarding any communication with Plaintiffs' counsel.

**C. Twenty-Seven Violations Of The Temporary Restraining Order**

Defendants did not even wait for the ink to dry on the TRO before threatening several Plaintiffs and Plaintiffs' counsel on the courthouse steps with physical violence and having strangers make harassing phone calls to another Plaintiff in violation of the TRO. *See* Timeline at 7, Acts Nos. 19-21.

On May 14, 2015, Plaintiffs filed their first motion for contempt pursuant to 18 U.S.C. 401(1),(3) in connection with Defendants' threats on the courthouse steps and violations of the TRO. *See* Docket Doc, No. 22.

After the motion was filed, Defendants' ruthless campaign of vengeance continued to escalate, including: 1) harassment of the family of two Plaintiffs in Haiti; 2) worker interrogations concerning their participation in the lawsuit, their communications with their counsel, and pressure to drop the lawsuit; 3) threats of termination; and 4) demands that workers write a coerced statement disavowing their participation in the lawsuit ("Coerced Statement").

With respect to the Coerced Statement, Defendant Michael Memon informed Plaintiffs that "everybody has to sign" the Coerced Statement. *See* Marlborough Decl. Exh., B, Transcript of 5/20/2015 Interrogation of Plaintiff Keletso Tebogo By Defendant Michael

Memon and Usman Doria at **24:7**. ("Tebogo Interrogation Transcript"). The Coerced Statement read as follows:

> (Name) No # 14-cv-07990
>
> I certify that I am not in this lawsuit case and my identification was theft and misused my information. Therefore, I didn't sign any paperwork. This statement I prepared myself voluntarily without any pressure or obligation.
> Signed
>
> Phone #
> 5-20-15

*See* Timeline, Acts Nos. 28. *See also*, Marlborough Decl., Exh. C (Coerced Statement for Hector Rosado; Coerced Statement presented to Keletso Tebogo);

On May 21, 2015, more than a dozen Plaintiffs, including Miguel Rosendo, came to the courthouse to attend the scheduled preliminary injunction hearing, but the hearing was adjourned on short notice. *See* Timeline, Act No. 33. Outside the Courthouse, Defendants spotted several workers; later that day, Defendants sent them home upon their arrival at work. See e.g., *id.* at 32. Plaintiff Miguel Rosendo was told by Usman Doria that he was being sent home because he went to court. *Id.* The following day, Defendants suspended Plaintiffs Keltso Tebogo, Miguel Rosendo and Joseph Kofie. Timeline, Act No. 34-36; Tebogo Decl. at ¶ 27. Over the next few days, Defendants substantially reduced the work hours and commensurate pay of the following Plaintiffs: Keletso Tebogo; Sergio Recinos, Israel Uduaghan, Hector Rosado, and Joseph Kofie. *See* Tebogo Decl. at ¶ 29; Timeline, Acts. Nos. 38, 40-42, 45-47.

On or about June 1, 2015, the day before the preliminary injunction hearing, Salim Doria, brother of Mohamed Doria, Usman Doria, and Defendant Gulan Doria, called

former employee Kamal Passa and attempted to dissuade him from participating in the action.[2] *See* Declaration of Kamal Passa at ¶¶ at 17-19.

**D. The Preliminary Injunction**

The Preliminary Injunction/Contempt hearing was rescheduled to June 2, 2015 before Judge Sullivan, acting Part 1 Judge. The hearing on that date was attended by several Plaintiffs including Miguel Rosendo and Sergio Recinos.

At the hearing, Judge Sullivan concentrated on the alleged retaliation in connection with the interrogation by Defendant Michael Memon of Plaintiff Keletso Tebogo as well as the Coerced Statement the workers were required to sign. *See* Marlborough Declaration, Exhibit D, 6/2/2015 Hearing at 8:23-25 (PI Hearing Tr.); Marlborough Decl. Exh. C, Coerced Statement. Plaintiff Tebogo had recorded his interrogation and provided the Court with both an audio recording and a transcript of the interrogation.

Defendants initially denied to Judge Sullivan that the conversation ever took place. *See* Hearing Tr. at 5:14-19 ("I reached out to my clients and they advised me that the conversation did not take place. ... They did not recognize anybody speaking on that conversation."). Judge Sullivan warned Defendants that if it turned out that Defendants were on the recording "there would be repercussions." Hearing Tr. at 5:22-6:1. Judge Sullivan further informed Defendants that:

> This is not a game. I want to make it clear to everybody, this is not a game. … If you lie up on this stand you will regret it. I would refer you to the United States Attorneys' office for prosecution. You would also be held in contempt and fined in such a way that you never do it again. Everybody better get that clear in their head, this is not a street corner. This is a courtroom. And the way we conduct ourselves in a courtroom is real different than we do on a street corner or in an alley someplace.

---

[2] Because this communication occurred at or around the time of the hearing, it was either a violation of the temporary restraining order or the preliminary injunction. In either event, it is a violation of Court Order for which Defendants should be held in contempt.

*Id.* at 6:2-6:15.

The Court then took a short break while giving Defendants an opportunity to reconsider their decision to deny that they had tried to intimidate workers from participating in the lawsuit. Following the break, Judge Sullivan noted that the statements in the transcript "supported only one inference, which is a request that someone sign a document disavowing any participation in this suit falsely." However, Defendants denied that obvious inference. Hearing Tr. at 9:19-25.

Judge Sullivan then informed Defendants that "if you are going to take that position against the clear inference of the transcript, then I will call a witness to authenticate the transcript, and then the chips are to fall where they are going to fall. … I mean, you can't teach judgment, that is fine." *Id.* at 11:13-21. Plaintiffs' counsel then called Plaintiff Keletso Tebogo as a witness to authenticate the recording of his interrogation by Defendant Michael Memon and Usman Doria. *Id.* at 11:21-13:8. As Mr. Tebogo sat in the witness chair prepared to testify, Defendants consented to the preliminary injunction. *Id.*

Judge Sullivan then issued the preliminary injunction providing the following with respect to Defendants acts and communications with all employees:

> **no discussion, conversation whatsoever about this litigation, and certainly no retaliation, no threats of termination or suspension or deportation, no requests or demands that employees sign documents disclaiming rights withdrawing from the litigation or anything related to the ligation.**

*Id.* at 14:20-15:21.

Judge Sullivan then addressed the first motion for contempt. He noted that some of the conduct sworn to in the affidavits and contained in the Tebogo Interrogation Transcript would constitute a violation of the Temporary Restraining Order. *Id.* at 1-5. However, Judge Sullivan deferred to Judge Sweet on the contempt motion. *Id.* at 16:6-19.

After the hearing, Judge Sullivan issued a written version of Preliminary Injunction, which provides:

> during the pendency of this action, Defendants are enjoined from retaliating or discriminating in any way against any current or former employee of the Defendants, including, but not limited to, by terminating or suspending, threatening to terminate or suspend, causing to be deported, or threatening to cause to be deported such employee or former employee, based on any participation in or intent to participate in the instant lawsuit; requesting that any employee sign documents compromising any rights in this lawsuit or any ability to cooperate in the prosecution of this lawsuit; or communicating in any way with any employees, Plaintiffs and otherwise, regarding this lawsuit or any facts relating to this lawsuit.

*See* Docket Doc. No. 61.

**E. Eleven Violations Of The Preliminary Injunction**

On the afternoon of June 2, 2015, when Plaintiffs Miguel Rosendo and Sergio Recinos arrived to work on time after attending the Preliminary Injunction hearing, they were suspended in retaliation for their participation in this lawsuit. *See* Rosendo Decl at ¶¶ 6-8; Recinos Decl. at ¶¶ 4-10; Timeline, Act Nos. 49-50. This is the exact same retaliatory conduct that Defendants took against Mr. Rosendo when he attempted to attend the adjourned preliminary injunction hearing on May 22, 2015. *See* Rosendo Decl. at ¶ 9.

Also on the afternoon of June 2, 2015, Defendants suspended Ronald Agyemang, a Plaintiff in the lawsuit. Mr. Agyemang had requested time off to attend the hearing, but that request had been denied. *See* Declaration of Ronald Agyemang at ¶¶ 13-14 ("Agyemang Decl."), filed herewith. Nevertheless, Mr. Agyeman was sent home after the hearing was over. *Id.* at ¶¶ 15-16; Timeline, Act No. 51.

On June 3, 2015 Defendants cut Plaintiff Ronald Agyemang's hours from sixty-six to forty two hours per week. *Id.* at ¶¶ 18-19. Timeline Act, No. 52.

On June 3, 2015, Defendant Gulan Doria called Mamadou Diallo, a former employee, and asked to meet him that day at the Bergen Discount location. *See* Declaration of Mamadou Diallo at ¶ 17 ("M. Diallo Decl."), filed herewith. At the

meeting, Defendant Gulan Doria told Diallo that he didn't want him involved in the lawsuit. *Id.* at ¶ 18. Timeline Act, No. 53.

On or about June 9, 2015, Defendants similarly cut the work hours of Plaintiff Santiago Pelma in retaliation for his interest in participating in the lawsuit. *See* Tebogo Decl. at ¶ 37; Timeline, Act No. 55.

Also on June 9, 2015, Usman Doria angrily confronted Plaintiff Tebogo about his participation in the lawsuit and accused him of taking advantage of Defendants in the case by recording the Tebogo Interrogation Transcript. *See* Tebogo Decl. at ¶ 38. Timeline Act No. 54.

On June 19, 2015, Defendant Gulan Doria called Mamadou Diallo, and asked him to come the Bergen Discount location to meet with him and Michael Memon. M. Diallo Decl. at ¶¶ 20-23. Defendants Michael Memon and Gulan Doria told Diallo that, as fellow Muslims, they did not want him involved in the lawsuit. *Id* at ¶¶ 20-21. They said that the money at issue was "haram" or "unclean" in Arabic. *Id* at ¶ 20. Defendant Michael Memon offered to give Diallo a delivery truck (which was apparently not haram) if he stayed out of the lawsuit. *Id.* at ¶ 22. Memon further stated that he was going to pay other workers to stay out of the case. *Id* at ¶ 23; Timeline, Act No. 56.

On June 28, 2015, Defendant Gulan Doria called Mamadou Diallo to meet with him and at the Bergen Discount location. *Id* at ¶¶ 24-27. At the meeting, Defendant Gulan Doria told Diallo that he believed Diallo was involved in the lawsuit because he was associating with Plaintiffs in the case. *Id* at ¶ 24. Defendant Gulan Doria told Diallo that he wanted him to stay out of the lawsuit and promised to "take care of him" if he withdrew from the case. *Id* at ¶ 27; Timeline, Act No. 57.

On July 24, 2015, Usman Doria swore at Plaintiff Daniel Rodriguez and angrily confronted him. *See* 7/24/2015 Declaration of Plaintiff Daniel Rodriguez, filed herewith ("D. Rodriguez Decl.") at ¶¶ 9-10. Plaintiff Daniel Rodriguez was unarmed and did not respond. However, Usman Doria falsely claimed that Plaintiff Daniel Rodriguez had threatened him with a box cutter and the police were called.

*Id.* at ¶¶ 12-13. When the police arrived Usman Doria demanded that the police issue an order of protection. *Id.* at ¶ 16. The police questioned and searched Plaintiff Rodriguez. *Id.* at ¶ 17. Defendant Memon then told a manager to get pictures of the police talking to Usman Doria and Plaintiff Daniel Rodriguez and further told the manager that the lawsuit "is finished." *See* Tebogo Decl. at ¶ 43. However, the police found no box cutter and issued no arrests. *See* D. Rodriguez Decl. at ¶ 17. Timeline, Act. No. 58.

After Defendants failed to have Plaintiff Daniel Rodriguez arrested on the spot, they terminated his employment in retaliation for his participation in this lawsuit. *Id.* at ¶ 18. Defendants paid him $150.00 in cash for the 25 hours that he had worked that week ($6.00 per hour). *Id.* at ¶ 19. Timeline, Act No. 59.

## ARGUMENT

### A. <u>Defendants Have Flagrantly Disregarded Judge Sullivan's Preliminary Injunction</u>

Defendants have treated the Court with complete and utter disdain by ignoring its Orders. After the preliminary injunction was issued Defendants continued to communicate with workers about the lawsuit, in violation of the preliminary injunction and by suspending and reducing Plaintiffs' work schedules. The evidence for these violations is overwhelming.

First, Defendants continued to communicate with current and former workers right up until the hearing and even after Judge Richardson issued the preliminary injunction in an effort to dissuade them from participating in the lawsuit. *See* Timeline, Acts No. 47, 51, 53, 55, 56; Passa Decl. at ¶¶ 17-19; M. Diallo Decl. at ¶¶ 17-27; Tebogo Decl. at ¶¶ 36, 38.

As unpersuasive as Defendants' denials have been to date, they will likely deny that these communications took place and hope the Court believes them. That strategy blew up in Defendants' face at the preliminary injunction hearing when Plaintiffs produced a recording of Defendant' interrogation of Plaintiff Tebogo. Defendants first tried to deny that that the recording was authentic. *See* Marlborough

Decl., Exh. D, Hearing Tr. at 5:12-22. When that didn't work, and Judge Sullivan offered them the opportunity to withdraw their claims so that they would not perjure themselves at the hearing, Defendants claimed that statement was taken out of context. *Id.* at 7:2-13. That argument fared no better, and subsequently Defendants consented to the preliminary injunction as Plaintiff Tebogo sat in the witness box prepared to authenticate the recording. *See* Hearing Tr. at 11:13-12:6. Plaintiffs anticipate a similarly implausible series of denials from Defendants, which should be made under oath to facilitate the U.S. Attorneys' potential prosecution of Defendants should the Court grant all relief requested by this motion.

Second, Defendants initiated another round of suspensions and reductions in work hours of Plaintiffs immediately after Judge Sullivan issued the preliminary injunction. *See* Timeline, Acts Nos. 48-51. The timing of these adverse employment actions reveals that they were committed in furtherance of Defendants retaliation campaign.

"In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996), *quoting Gorman-Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir. N.Y. 2001). Throughout this case, Defendants have flexed their muscle by retaliating against workers with each new development in the case. Here are but a few examples:

| *Case Activity* | *Retaliatory Acts* | *Timeline* |
|---|---|---|
| **April 20** | **April 21** | **Act No.** |
| | David Richardson threatened with termination. | 12-13 |
| *Plaintiffs' Counsel produce* | David Richardson terminated. | 15 |
| | Daniel Rodriguez threatened with termination. | 12-13 |
| | Daniel Rodriguez suspended. | 14 |

| | | |
|---|---|---|
| *Phot ID cards to Defendants Counsel* | ~ Josue Pierre-Louis threatened with deportation proceedings in which Photo ID card would be used against him. | 17 |
| **May 12** | **May 12 - May 15** | **Act. No.** |
| | Attorney Adam Slater threatened. | 19-21 |
| | Carlos Rodriguez threatened with arrest. | 19-21 |
| *Temporary Restraining Order Issued* | Carlos Rodriguez threatened with violence. | 19-21 |
| | Carlos Laguna threatened with violence. | 19-21 |
| | Josue Pierre-Louis received anonymous harassing phone call. | 22 |
| | Pierre-Louis family in Haiti receives harassing and threatening phone calls from Camille. | 23 |
| **May 21** | **May 21 – 27** | **Act No.** |
| | Miguel Rosendo suspended. | 32 |
| | Miguel Rosendo hours cut. | 34-36 |
| *Preliminary Injunction hearing adjourned* | Sergio Recinos hours cut. | 37 |
| | Joseph Kofie suspended. | 34-36 |
| | Keletso Tebogo suspended. | 34-36 |
| | Keletso Tebogo suspended again. | 38 |
| | Keletso Tebogo hours cut. | 40-41 |
| | Keletso Tebogo demoted. | 40-41 |
| | Hector Rosado hours cut. | 42 |
| | Israel Uduaghan demoted. | 44 |
| | Joseph Kofie's hours cut. | 45 |
| | Israel Uduaghan hours cut. | 46 |

Similarly, the most recent wave of retaliation against the workers occurred in close temporal proximity to a major event in this litigation, i.e. Judge Sullivan's issuance of the preliminary injunction on June 2, 2015.

| *Case Activity* | *Retaliatory Acts* | *Timeline* |
|---|---|---|
| **June 2** | **June 2 - June 3** | **Act. No.** |
| *Preliminary* | Miguel Rosendo suspended. | 48 |
| *Injunction* | Sergio Recinos suspended. | 49 |
| *Issued* | Ronald Agyemang suspended. | 50 |
| | Ronald Agyemang's hours cut. | 51 |

Thus, it is implausible for Defendants to assert that the four suspensions and reductions in work hours were anything but retaliatory.

With respect to prior retaliatory conduct, Defendants have asserted that any reduction in work hours was the result of a general business slowdown. This is demonstrably false for several reasons. First, in some instances, Defendants told Plaintiffs they were being or would be punished for participating in the lawsuit. *See* Timeline, Act Nos. 30, 32. *See also* Tebogo Decl. at ¶ 22 (asserting that Defendants promised to terminate Plaintiff Tebogo immediately after the preliminary injunction hearing). For example, Defendant Usman Doria told Plaintiff Rosendo that he was sent home because he attempted to attend the adjourned preliminary injunction hearing. *See* Timeline, Act No. 32. Later, after Plaintiff Rosendo attended the June 2, 2015 preliminary injunction hearing, Defendants suspended him again when he reported to work that day. *See* Timeline at 48; Rosendo Decl. at ¶¶ 7-9. In both instances Defendants' conduct was the same. Moreover, their reason for engaging in that conduct was the same. As Usman Doria admitted with respect to the first suspension, Defendants want to punish Plaintiffs for participating in this lawsuit

Second, the suspensions and reductions in work hours were targeted to participants in the lawsuit. *See* Tebogo Decl. at ¶ 25. In addition, many workers who are not participants in the lawsuit were spared Defendants' wrath and continued to work a full schedule. *See* Tebogo Decl. at ¶ 48. Moreover, Defendants have hired numerous other employees since

the retaliatory suspensions and reductions in work hours commenced. *See id.* at ¶ 49. Defendants' claim of a slowdown in business is merely an implausible pretext.

**B. <u>Defendants Should Be Held in Contempt of Court</u>**

Defendants have made it clear that nothing short of a finding of Contempt and the Court's harshest sanctions will have any chance of dissuading them from continuing their campaign of retaliation against the workers. They have repeatedly shown complete and utter disdain for Judge Sweet's Temporary Restraining Order and Judge Sullivan's Preliminary Injunction. Defendants proceeded to violate both Orders within minutes or hours of their issuance. *See* Timeline Acts. Nos. 17-19 (threatening Plaintiffs and their counsel on the Courthouse steps minutes after the TRO was issued), and 45-47 (suspending three workers for attending or attempting to attend the Preliminary Injunction hearing a few hours after the Preliminary Injunction was issued). Despite months of effort by Plaintiffs to end this vicious campaign of retaliation, Defendants remain unpersuaded by the Court's interventions to date.

18 U.S.C. 401 empowers the Court to hold parties in contempt for their actions and sanction recalcitrant Defendants like Mssrs. Memon and Doria. The statute provides in pertinent part: "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." Moreover, the Second Circuit has recognized that "[a] court has the inherent power to supervise and control its own proceedings and to sanction . . . a litigant for bad-faith conduct." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). *See also Wilson v. Pasquale's DaMarino's, Inc.*, 2013 U.S. Dist. LEXIS 41733, *16 (S.D.N.Y. Mar. 24, 2013). *In Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (U.S. 1991), the Supreme Court clarified that:

> it is firmly established that the power to punish for contempt is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for "the underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was

> disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."

*quoting Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 798 (1987) (additional citations omitted).

The purpose of civil contempt sanctions are, unequivocally, to coerce future compliance and to repair the harm that has been inflicted on the innocent parties and on the judicial process. *See NHL v. Metro Hockey Club*, 427 U.S. 639, 643 (1976). *See also Roadway Express v. Piper*, 447 U.S. 752, 764-65(1980) (court must exercise contempt power "to protect the orderly administration of justice and to preserve the dignity of the tribunal").

A finding of civil and/or criminal contempt is appropriate for violation of an order restraining defendants from retaliating against their workers. *See Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 139 (W.D.N.Y. 2003). In *Centeno-Bernuy*, the Court issued a preliminary injunction restraining a defendant from engaging in further acts of retaliation after he had threatened employees with deportation and complained to authorities that the workers were terrorists. *See Id.* Under those circumstances, the court held that defendant would be held in contempt as an appropriate sanction for any violation of the injunction. *Id.* ("[i]f defendant… fails to comply with this preliminary injunction, he may be held in either civil or criminal contempt, or both").

In this case, Defendants' actual violations of the Preliminary Injunction were particularly egregious. First, Defendants have had every opportunity and fair warning that they could be subject to severe sanctions from the Court. Indeed, after Defendants repeatedly denied that they sought to pressure workers to drop the lawsuit and sign fraudulent documents, even when confronted with a recording and transcript to the contrary, Judge Sullivan made it abundantly clear to Defendants that conducting themselves in the litigation as they were on a street corner or an alley would not be tolerated.

Second, these verbal warnings have had no effect whatsoever. Defendants suspended workers for attempting to attend a court hearing before the preliminary injunction was issued and they did the same thing after the preliminary injunction was issued. *Compare* Timeline, Acts No. 32 *with* Acts Nos. 48-50. Defendants substantially cut workers

hours in retaliation for their participation in the lawsuit both before and after Judge Sullivan issued the preliminary injunction. *Compare* Timeline, Acts Nos. 33, 37, 40-41, 45-46 with Act No. 51. Defendants angrily confronted workers about their participation in the lawsuit both before and after the preliminary injunction was issued. *Compare* Timeline, Act No. 27-28 *with* Act No. 53. *See also* Marlborough Decl., Exh. B, Tebogo Interrogation Transcript. Defendants could not have made their intention more clear: they will not stop retaliating against the workers unless an extreme contempt sanction is imposed upon them.

**The Proposed Sanctions Are Warranted**

Plaintiffs seek the following sanctions against Defendants: default judgment in favor of Plaintiffs; reinstatement and restoration of work hours to Plaintiffs who have been retaliated against; a substantial fine; and referral of this matter to the United States Attorney for criminal prosecution.

First, Plaintiffs propose that the Court issue a default judgment against Defendants Memon and Doria. This is appropriate where a defendant acts to limit FLSA Plaintiffs from coming forward. *Roslies-Perez v. Superior Forestry Serv.*, 652 F. Supp. 2d 887, 900 (M.D. Tenn. 2009) (granting motion for contempt and providing that another violation will result in a default judgment against defendants where they threatened retaliation against workers in an FLSA case and interfered with court-ordered process). While in the *Roslies-Perez* case, the Court had offered defendant another chance before issuing a default judgment, here Defendants have had every reasonable chance to conform their conduct to the Court's orders, but they have simply ignored those orders.

In response to Plaintiffs' first motion for contempt, Defendants argued that they had not been given enough chances to violate the Court's orders before a harsh sanction in imposed. *See* Dkt. No. 29, Motion in Opposition to Contempt Motion, at 16. However, after taking that that argument, Defendants continued to ignore court orders and retaliate against the workers with impunity. Defendants have had enough to rope to hang themselves with several times over. Thus, the Court should enter a default judgment against Defendants and schedule an inquest for damages.

Second, Plaintiffs request the Court order that Plaintiffs who were terminated, suspended, demoted or had their hours cut be reinstated to their former positions with their original work hours. This would serve to "repair the harm that has been inflicted on the innocent parties and on the judicial process." *See NHL v. Metro Hockey Club*, 427 U.S. 639, 643 (1976). Should Defendants fail to reinstate and restore the work hours of their victims within ten days of the Court's Order, they should be subject all potential sanctions available under 18 U.S.C. 401.

Third, Defendants should be fined in the amount of $250,000 pursuant to the Court's contempt power. Judge Sullivan warned Defendants at the preliminary injunction that if he found that the audio recording was authentic (which it is), they would be subject to a fine so substantial that they would never perjure themselves again. Despite the clear notice of potential contempt sanctions, Defendants proceeded to ignore Judge Sullivan's preliminary injunction only hours after the hearing. Plaintiffs request that the fine be held in trust for Plaintiffs and be payable to them towards any settlement or judgment in the action.

Plaintiffs further request that the Court refer the issue of Defendants' retaliatory conduct to the United States Attorney for prosecution of criminal contempt proceedings. In *Centeno-Bernuy v. Perry*, 2009 U.S. Dist. LEXIS 103580, 17 (W.D.N.Y. July 14, 2009)("*Centeno-Burnuy II*"), the defendant did not learn its lesson from the issuance of the preliminary injunction order and continued to retaliate against his workers. In response, the court referred the matter to the United States Attorney for prosecution of criminal contempt charges. ("Defendant was charged with violating 18 U.S.C. § 401(3), and convicted of contempt."). Judge Sullivan specifically told Defendants' that the case could be turned over to the U.S. Attorneys if they denied the authenticity of the Memon-Tebogo Interrogation Transcript under oath. Defendants' conduct is criminal, and it should be treated as such.

In addition to awarding all relief requested above and herein, Plaintiffs request that the Court grant Plaintiffs their attorneys' fees and costs incurred in connection with this motion.

Respectfully submitted,

THE MARLBOROUGH LAW FIRM, P.C.

By: ________________________________
Christopher Marlborough, Esq.
(CM-6107)
445 Broad Hollow Road, Suite 400
Melville, NY 11747
(212) 991-8960
chris@marlboroughlawfirm.com

Adam P. Slater, Esq.
Anthony Portesy, Esq.
SLATER SLATER SCHULMAN LLP
445 Broad Hollow Road, Suite 334
Melville, NY 11747
(631) 420-9300
aslater@sssfirm.com
aportesy@sssfirm.com

Attorneys for Plaintiffs