UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE DORIA/MEMON DISCOUNT STORES WAGE AND HOUR LITIGATION | § Civil Action No. 14-cv-7990 (RWS) § § **FIRST AMENDED AND** § **SUPPLEMENTAL CLASS** § **AND COLLECTIVE** § **ACTION COMPLAINT** § § |

Plaintiffs Emmanuel Agropong, Marcos Basabe, Adrian Batana, Carlos Laguna, Yolanda Nieve, Christine Nunez, Abel Pantoja, Elietzer Pierre-Louis, Josue Pierre-Louis, David Richardson, Daniel Rodriguez, Roberto Rodriguez, Hector Rosado, Surita Suedass, Mamadou Diallo, Keletso Tebogo, Joseph Kofie, Israel Uduaghan, Miguel Rosendo, Sergio Recinos, Ronald Agyemang, and Santiago Pelma (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, Slater Slater Schulman LLP and The Marlborough Law Firm, P.C., respectfully allege upon knowledge as to themselves and upon information and belief as to all other matters, the following:

## NATURE OF THE ACTION

1.    Plaintiffs are current and former employees of Mohamed Doria (deceased) and Defendants Mike Memon, Gulan Doria, Usman Doria, Sikander Doria, Salim Doria, Musajee Vawda and the Corporate Defendants (defined below). Defendants (defined below) employed Plaintiffs to work at one or more of Defendants' seventeen discount

stores (the "Discount Stores") in various positions, including stock workers, unloaders, cashiers, sales-floor employees, low level managers and truck drivers. The Discount Stores were operated by Mohamed Doria (until his recent death), Defendant Mike Memon and Defendant Gulan Doria, individually and through various corporations, including the Corporate Defendants.

2.      This is a prospective collective action concerning Mohamed Doria's and Defendants' failure to pay Plaintiffs and other similarly situated workers minimum wage and overtime compensation pursuant to the Fair Labor Standard Act of 1938 (the "FLSA"). In addition to the fifteen named Plaintiffs, forty-seven workers have filed Consents to Join this action (the Opt-In Plaintiffs). On June, 25 2015, Plaintiffs filed a motion for conditional certification of the collective class with Defendants' consent.

3.      Plaintiffs also bring this action as a prospective class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to Plaintiffs' state law claims under the New York Labor Law ("NYLL"). The NYLL claims concern Mohamed Doria's and Defendants' failure to pay minimum wage and overtime, failure to pay spread of hours premium pay, failure to provide wage statements to their employees in compliance with NYL 195(3) and failure to provide Wage Theft Prevention Act notifications to their employees in compliance with NYLL 195(1).

4.      More than a dozen current and former workers also assert claims for Mohamed Doria and/or Defendants' retaliatory conduct in violation of the anti-retaliation provisions of the FLSA (29 U.S.C. § 215(a)(3)) and the NYLL (NYLL § 215).

5.      Defendants have mounted a massive and vicious retaliation campaign against workers who are participating or who have expressed interest in participating in this lawsuit. Defendants have lodged false complaints with law enforcement against two of the Plaintiffs in this case, alleging that one committed grand larceny and another assaulted or threatened to assault Defendant Usman Doria with a deadly weapon.   Defendants have terminated at least seven Plaintiffs for engaging in protected activity.  They have suspended at least three Plaintiffs for their participation in this lawsuit.  They have demoted several Plaintiffs and reduced the work hours of at least ten Plaintiffs for their participation in this lawsuit. Defendants have repeatedly threatened Plaintiffs with termination and deportation proceedings for their participation in this case, but it did not stop there.  Defendants have caused their agent to make repeated harassing phone calls to the family in Haiti of two Plaintiffs.  Moreover, Defendants have threatened several Plaintiffs with physical violence on the steps of the courthouse only minutes after the Court issued a Temporary Restraining Order prohibiting such retaliation.    Defendants' harassment, threats and adverse employment actions continue unabated even after the Honorable Judge Richard Sullivan issued a preliminary injunction against such conduct.

## PARTIES

*The Plaintiffs*

6.      Plaintiff Elietzer Pierre-Louis was a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.  Defendants terminated him in retaliation for his participation in this lawsuit in November 2014.

7.      Plaintiff Josue Pierre-Louis is a resident of Bronx County, State of New York

and a former employee of Mohamed Doria and Defendants.  Defendants terminated him him in retaliation for his participation in this lawsuit in December 2014.

8. Plaintiff David Richardson is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.  Defendants terminated him in retaliation for his participation in this lawsuit in April 21, 2015.

9. Plaintiff Daniel Rodriguez is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.  Defendants terminated him in retaliation for his participation in this lawsuit on July 24, 2015.

10. Plaintiff Roberto Rodriguez is a resident of Bronx County, State of New York. He is a former employee of Mohamed Doria and Defendants.   Defendant terminated him in retaliation for his internal complaints about Defendants unlawful minimum wage practices and his efforts to commence this lawsuit on or about August 13, 2015.

11. Plaintiff Carlos Laguna is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.  Defendant terminated him in retaliation for his internal complaints about Defendants unlawful minimum wage practices and his efforts to commence this lawsuit on or about August 13, 2015.

12. Plaintiff Mamadou Diallo is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.  Defendant Mike Memon terminated him in retaliation for his participation in a United States Department of Labor investigation of the Bergen Discount location.

13. Plaintiff Hector Rosado is a resident of Bronx County, State of New York and a current employee of Defendants.

14.     Plaintiff Keletso Tebogo is a resident of Bronx County, State of New York and a current employee of Defendants.

15.     Plaintiff Joseph Kofie is a resident of Bronx County, State of New York and a current employee of Defendants.

16.     Plaintiff Santiago Pelma is a resident of Bronx County, State of New York and a current employee of Defendants.

17.     Plaintiff Ronald Agyemang is a resident of Bronx County, State of New York and a current employee of Defendants.

18.     Plaintiff Miguel Rosendo is a resident of Bronx County, State of New York and a current employee of Defendants.

19.     Plaintiff Israel Uduaghan is a resident of Bronx County, State of New York and a current employee of Defendants.

20.     Plaintiff Sergio Recinos is a resident of Bronx County, State of New York and a current employee of Defendants.

21.     Plaintiff Emmanuel Agropong is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.

22.     Plaintiff Marcos Basabe is a resident of Bronx County, State of New York and a former employee of Mohamed Doria and Defendants.

23.     Plaintiff Adrian Batana is a resident of Bronx County, State of New York and an employee of Defendants.

24.     Plaintiff Yolanda Nieve has been a resident of the County of Bronx, State of New York and is a former employee of Mohamed Doria and Defendants.

25.     Plaintiff Christine Nunez has been a resident of the County of Kings, State of New York and is a former employee of Mohamed Doria and Defendants.

26.     Plaintiff Abel Pantoja has been a resident of the County of Bronx, State of New York and is a former employee of Mohamed Doria and Defendants.

27.     Plaintiff Surita Suedass has been a resident of the County of Bronx, State of New York and is a former employee of Mohamed Doria and Defendants.

28.     Plaintiffs Carlos Laguna, Roberto Rodriguez, Daniel Rodriguez, Elietzer Pierre-Louis, Josue Pierre-Louis, Hector Rosado, David Richardson, Mamadou Diallo, Keletso Tebogo, Joseph Kofie, Israel Uduaghan, Miguel Rosendo, Sergio Recinos, Ronald Agyemang, and Santiago Pelma (¶¶ 6-20 above) are hereafter referred to collectively as "Retaliation Plaintiffs."

29.     Plaintiffs are covered employees within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Laws § 160 *et seq.* ("NYLL").

30.     Since the initial complaint in this action was commenced on October 3, 2014 by the 15 Plaintiffs captioned therein, forty-seven additional Plaintiffs have filed consents to join the action including: 1) Bibi Fernaaz Bishnauth, 2) Ravindranauth Singh, 3) Sergio Recinos, 4) Christopher Bruce, 5) Mady Nassoko, 6) Oseman Amandoh, 7) Miguel Rosendo, 8) Kelesto Tebogo, 9) Maria Sara Sumano, 10) Santiago Pelma, 11) James Osei-Owusu, 12) Mariana Toure, 13) Mohammed Yakubu, 14) Aneesa Aziz, 15) Arlene Rosado, 16) Francisco Jimenez, 17) Israel M. Uduaghan, 18) Mareelin Auguste, 19) Mohammed Yakubu, 20) Wilson Nana Kwame Tenadu, 21) Amadou Diallo, 22) Mamadou Diallo, 23) Peter Iseguede, 24) James Saylor, 26) Lino Bueno Luna, 27) Mark Doe-Tetteh, 28) Felipe

Rios, 29) Jennifer Rooplall, 30) Yuriana Martinez Sanchez, 31) Kamal Passa, 32) Joseph Kofie, 33) Ketshephamang Baleseng, 34) Alioune B. Diagne, 35) Olugbenga Opesanwo, 36) Comlan Marcus Goncalves, 37) Angel Cartegena, Sr., 38) Abdul Malicki Diallo, 39) Ronald Agyemang, 40) Comlan Marius Goncalves, 41) Michael Britton 42)Maria Sara Sumano 43) Wilda Rodriguez 44) Sonia Espinosa, 45) Thierno Diallo, 46) Abdourahmane Diop Sow, and 47) Jocelyn Mandungu.

*The Individual Defendants*

31.     Defendant Mike Memon a/k/a Iqbal Memon a/k/a Michael Memon, was and still is a resident of Bronx County, State of New York, and at all relevant times, was an operator of the Discount Stores.

32.     Defendant Mike Memon is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

33.     Mohamed Doria a/k/a Mohamed Hanif Aiyub Doria was an owner of the Discount Stores and managed the operations of the enterprise alongside Defendant Mike Memon until his death in August 18, 2014.  Mohamed Doria was the brother by blood or marriage of Defendants Gulan Doria, Usman Doria, Salim Doria, Sikander Doria and Musajee Vawda.

34.     Until the time of his death, Mohamed Doria was in active control and management of the Discount Stores, regulated the employment of persons employed by

the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and was thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

35.     Defendant Sofiya Doria a/k/a Sofiya Mangra is the administrator of the Estate of Mohamed Doria.  She was appointed as administer of the estate on November 26, 2014. She is being sued in her capacity as administrator.

36.     Sofiya Doria is the surviving spouse of Mohamed Doria and the sister-in-law of Defendants Gulan Doria, Sikander Doria, Salim Doria, Usman Doria and Musajee Vawda.

37.     Defendant Gulan Doria a/k/a Gulam Doria a/k/a Jeff Doria was and still is a resident of Bronx County, State of New York, is a primary manager of the Discount Stores. Defendant Gulan Doria is a brother by blood or marriage to Mohamed Doria and Defendants Usman Doria, Salim Doria, Sikander Doria and Musajee Vawda.

38.     Defendant Gulan Doria is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

39.     Defendant Usman Doria is a primary manager of the Discount Stores, operating primarily from the Bergen Discount location and having assumed greater control of the Discount Stores following the death of Mohamed Doria.  Defendant Usman Doria is a brother by blood or marriage to Mohamed Doria, Gulan Doria, Salim Doria, Sikander Doria and Musajee Vawda.

40.     Defendant Usman Doria is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

41.     Defendant Sikander Doria is a manager of the Morris Discount location. Defendant Sikander Doria is a brother by blood or marriage to Mohamed Doria and Defendants Gulan Doria, Salim Doria, Usman Doria and Musajee Vawda.

42.     Defendant Sikander Doria is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

43.     Defendant Salim Doria is a manager of the ZNF Discount location. Defendant Salim Doria is a brother by blood or marriage to Mohamed Doria, and Defendants Gulan Doria, Sikander Doria, Usman Doria and Musajee Vawda.

44.     Defendant Salim Doria is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

45.     Defendant Musajee Vawda manages multiple Discount Store locations.

Defendant Musajee Vawda is a brother by marriage to Mohamed Doria and Defendants Gulan Doria, Sikander Doria, Salim Doria and Usman Doria.

46.     Defendant Musajee Vawda is in active control and management of the Discount Stores, regulates the employment of persons employed by the Discount Stores, acted directly and indirectly in the interest of the Discount Stores in relation to the employees, and is thus an employer of Plaintiffs and the prospective classes under the Fair Labor Standards Act and New York State Labor Law.

47.     Defendants John and Jane Does 1 through 50 are individuals whose names and addresses are unknown.

*The Corporate Defendants*

48.     Mohamed Doria and Defendants Mike Memon, and Gulan Doria controlled and operated a group of 17 discount stores, through various corporate entities.

49.     The locations for each of the seventeen Discount Stores is or was:

a.   518 Willis Avenue, Bronx, New York, commonly referred to as "Bergen Discount" or "Willis Discount";

b.   3728 White Plains Road, Bronx, New York, commonly referred to as "W.P. Rainbow";

c.   263 East 167th Street location, commonly referred to as the "167 Trading";

d.   2072 White Plains Road, Bronx, New York, commonly referred to as "ZNF Discount";

e.   765 Morris Avenue, Bronx, New York, commonly referred to as "Morris Discount";

f.   1170D Webster Avenue, Bronx, New York, commonly referred to as "B&S Discount";

g.   3706 Third Avenue, Bronx, New York, commonly referred to as "Dollar Rite Third Avenue" or "T.A. Rainbow";

h.   21-12C 36th Avenue, Long Island City, New York, commonly referred to as "Clear Choice";

i.   680 E. Tremont Avenue, Bronx, New York, commonly referred to as "Community Discount";

j.   2901 White Plains Road, Bronx, New York, commonly referred to as the "Dollar Majic";

k.   1916 Cross Bronx Expressway, Bronx New York, commonly referred to as "Good Luck Discount";

l.   1101 40th Avenue, Long Island City, New York, commonly referred to as "QB Minimart' or "Neighborhood Discount";

m.   1 East 170th Street Bronx, New York, commonly referred to as "Todo Barato";

n.   101 W. Kingsbridge Road, Bronx, New York, commonly known as "Daisy Discount";

o.   2685 University Avenue, Bronx, New York, commonly known as "University Discount";

p.   2033 Grand Concourse, Bronx, New York, commonly referred to as "Royal Discount"; and

11

q.  1627 Westchester Avenue, Bronx, New York, commonly referred to as "W.A. Rainbow" and "Amor Discount."

50.     Mohamed Doria and Defendants Gulan Doria and Mike Memon frequently changed the entities and shuffled among themselves corporate officer titles with respect to the corporations operating the Discount Stores in order to avoid accountability for taxes and other obligations.

51.     Defendant Jackie Variety, Inc., was and still is a domestic business corporation organized and existing under the laws of the State of New York, currently operating the Bergen Discount location.  The Bergen Discount location was formerly operated by Bergen Discount Inc.  Mohamed Doria held himself out as president of Bergen Discount Inc. while Defendant Mike Memon held himself out as Vice President.

52.     Defendant Willis Realty, Inc. was and still is a domestic corporation organized and existing under the laws of the State of New York, currently operating the Bergen Discount location.  Mohamed Doria was the company's Chief Executive Officer.

53.     Defendant Moonlite Discount Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, currently operating the W.P. Rainbow location.  Defendant Mike Memon is the corporation's Chief Executive Officer.   Previously, the W.P. Rainbow location was operated through W.P. Rainbow, Inc.  Mohamed Doria was that corporation's Chief Executive Officer.

54.     Defendant 167 Primo Trading Inc. a/k/a 167 Trading Discount Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, operating the 167 Trading location.  Defendant Mike Memon is the Chief

Executive Officer of the corporation.  Previously, the 167 Trading location was operated through 167 Trading, Inc.  Defendant Gulan Doria was that company's Chief Executive Officer.

55.     Defendant Popular Discount, Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, currently operating the ZNF location.  Defendant Mike Memon is the company's Chief Executive Officer.

56.     Defendant 675 Morris Disc. Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, operating the Morris Discount location.  Defendant Mike Memon is the company's Chief Executive Officer.

57.     Defendant Unique Discount, Inc. a/k/a B&S 99 Cents and Variety Store, Inc. a/k/a B&S Discount, Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, currently operating the B&S location. Defendant Mike Memon is the company's Chief Executive Officer.

58.     Defendant New Star Discount, Inc. a/k/a Dollar-Rite Inc., was and still is a domestic business corporation organized and existing under the laws of the State of New York, operating the T.A. Rainbow location.  Defendant Mike Memon is the company's Chief Executive Officer.

59.     Defendant Terminal Discount Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, operating the Clear Choice location.  Defendant Mike Memon is the company's Chief Executive officer.

60.     Defendant Royal Discount, Inc. was and still is a domestic business corporation

organized and existing under the laws of the State of New York, which operates the Royal Discount location.

61.     Defendant Best Discount, Inc. was and still is a domestic business corporation organized and existing under the laws of the State of New York, currently operating the Community Discount location.

62.     Defendant Community Dollar Plus, Inc. is a domestic corporation organized and existing under the laws of the State of New York, currently operating the Community Discount location.  The Community Discount location was formerly operated through Rosy Discounts, Inc.  Mohamed Doria was the Chief Operating Officer for Rosy Discounts, Inc.

63.     Bridge Discounts, Inc. was a domestic business corporation organized and existing under the laws of the State of New York, which operated the Daisy Discount location.  The company was dissolved in 2013 and the store was closed down.  Defendant Mike Memon was the company's Chief Executive Officer.

64.     Daisy Cosmetics, Inc. was a domestic business corporation organized and existing under the laws of the State of New York, which operated the Daisy Discount location prior to Bridge Discounts, Inc.  Mohamed Doria was the company's Chief Executive Officer.

65.     Happy Dollar Discount, Inc. was a domestic business corporation organized by Mohamed Doria, and Defendant Mike Memon and Gulan Doria and existing under the laws of the State of New York, which operated the Dollar Majic location.  The store was closed down and the company was dissolved in 2013.

66.     Todo Barato Discount Inc. was a domestic business corporation organized and existing under the laws of the State of New York, which operated the Todo Barato location. The company was dissolved and upon information and belief, the location is now operated through another entity.  Defendant Gulan Doria was the Chief Executive Officer of Todo Barato Discount, Inc.

67.     99 Cents Amor, Inc. was a domestic business corporation organized and existing under the laws of the State of New York, which operated the W.A. Rainbow location.  The company was dissolved in 2011 and the store was closed down.

68.     W.A. Rainbow was a domestic business corporation organized and existing under the laws of the State of New York, which operated the W.A. Rainbow location prior to the formation of 99 Cents Amor, Inc.  Mohamed Doria was the company's Chief Executive Officer.

69.     Defendants John Doe Corporations 1 through 20 are corporations whose names and addresses are unknown.  They include without limitation the entities through which Mohamed Doria and Defendants Mike Memon and Gulan Doria operated the Discount Stores.

70.     Hereafter, the Defendants listed in paragraphs 51-62 are referred to as the "Corporate Defendants."

71.     Collectively with Defendants Mike Memon, Gulan Doria, Sofiya Doria (for actions until the time of Mohamed Doria's death), Usman Doria, Sikander Doria, Salim Doria and Musajee Vawda, the Corporate Defendants are hereafter referred to as "Defendants."

72.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.

73.     Pursuant to Bus. Corp. Law § 630, Plaintiffs served on Defendants Sofiya Doria, Mike Memon and Gulan Doria a notice providing for their joint and several liability as they are each among the ten largest shareholders of the Corporate Defendants.  Plaintiffs also served a demand on the corporations that they make available their respective records of shareholders for inspection by Plaintiffs.  None of the Defendants have responded to the demands.

## JURISDICTION AND VENUE

74.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

75.     This Court has supplemental jurisdiction of the claims arising under the NYLL pursuant to 28 U.S.C. § 1367, in that the New York State law claims are so closely related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

76.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, collective and class members, within this judicial district.

## PLAINTIFFS' FACTUAL ALLEGATIONS

*Joint Employers*

77.     Mohamed Doria and each of the Defendants were Plaintiffs' joint employers in

furtherance of the operation of the Discount Stores.

78.    Mohamed Doria and Defendants operated the Discount Stores as a single enterprise.

79.    Mohamed Doria and each of the Defendants shared control of the Plaintiffs, directly or indirectly.

80.    Mohamed Doria and Defendants Mike Memon and Gulan Doria owned, operated, managed, and controlled, the Discount Stores and shared their employees among the Discount Stores.

81.    Other managers including Defendants Usman Doria, Sikander Doria, Salim Doria and Musajee Vawda also maintained control over the employees, their working conditions and their pay.

82.    Each of the Plaintiffs was employed by Mohamed Doria and Defendants to work at one or more of their Discount Store locations.

83.    Many of the workers worked at several of the Discount Store locations.  For instance, until his recent retaliatory demotion in May 2015, Plaintiff Keletso Tebogo worked in each of the Discount Stores on a weekly basis.

84.    Plaintiffs were regularly transferred between stores either temporarily or permanently.  For instance, until his recent retaliatory demotion, Plaintiff Israel Uduaghan was a manager at the Clear Choice location.  In May 2015, he was transferred to the Morris Discount location and replaced by another worker who was transferred in from the Morris Discount location.

*Overtime*

85.     Plaintiffs and other similarly situated workers were and are entitled to be paid at least the greater of one and one-half times the federal and New York State minimum wage or their respective regular rates of pay for each hour in excess of forty (40) hours that they worked in any workweek pursuant to the 29 U.S.C. § 207 and the NYLL.

86.     Mohamed Doria and Defendants maintained, and Defendants continue to maintain, a policy and practice of failing to pay their employees the greater of one and one-half times the federal or New York State minimum wage or their regular hourly work rate for any hours that they work in excess of 40 per workweek.

87.     During the relevant time periods, Mohamed Doria and Defendants did not pay Plaintiffs and other similarly situated workers one and of one-half times the greater of the federal or New York State minimum wage or their regular hourly work rate for any hours that they worked in excess of 40 per workweek, in violation of the FLSA and NYLL.

88.     Mohamed Doria's and Defendants' failure to pay overtime premium pay was and is intentional and willful.

*Minimum Wage*

89.     The standard work schedule for the Plaintiffs was generally 9:00 a.m. to 8:00 p.m., eleven (11) hours per day, Monday through Saturday, for sixty-six (66) hours per week.

90.     Only a few of the workers maintained a regular schedule of less than sixty hours per week, unless they were being subject to a retaliatory reduction in work hours by Defendants for asserting their workplace rights.

91.     Nearly all of the workers with shorter schedules worked substantially more than forty hours per week.

92.    The maximum daily lunch break allotted to Plaintiffs was twenty minutes or less.  Plaintiffs were only permitted to take one fifteen to twenty minute lunch break per day.

93.    Plaintiffs and other similarly situated workers were hourly employees.

94.    The work performed by Plaintiffs was non-exempt work, as that term is used and defined in the U.S. Department of Labor's (DOL) regulations promulgated under the FLSA and NYLL.

95.    During the relevant time period, Mohamed Doria's and Defendants' failed to pay Plaintiffs and others similarly situated the applicable federal and New York State minimum wage, in violation of the FLSA and NYLL.

96.     Mohamed Doria's and Defendants' failure to pay minimum wage was intentional and willful.

97.    In 2013, the United States Department of Labor determined that the Bergen Discount location had failed to pay several workers legally required overtime.

98.    To limit Mohamed Doria's and Defendants' liability, Defendant Mike Memon told Department of Labor investigators that he had very few employees, who were not his relatives.  In fact, none of the workers were his relatives.

*Spread of Hours*

99.    Plaintiffs were and still are entitled to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that they worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours ("spread of hours wages"), pursuant to NYLL §§ 190, *et seq*., and 650, *et seq*., and 12 NYCRR § 142-2.4.

100.     During the relevant time periods, each of the Plaintiffs worked shifts in excess of ten (10) hours per day and were entitled to receive spread of hours wages.

101.     In violation of the NYLL and NYCRR, Mohamed Doria and Defendants failed to pay Plaintiffs and other similarly situated workers spread of hours premium pay, an additional hour's pay at the basic minimum hourly wage rate for every day that they worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours.

102.     Mohamed Doria's and Defendants' failure to pay spread of premium pay was intentional and willful.

*Plaintiffs' Wages and Hours Worked*

103.     Plaintiff Emmanuel Agropong was employed by Mohamed Doria and Defendants as a stock worker from approximately October 2013 through March 2014. For each and every week of his employment, Mr. Agropong worked from 9:00 a.m. to 8:00 p.m., Monday through Saturday, for sixty-six (66) hours per week, and was paid $240.00 per week ($3.63 per hour).

104.     Plaintiff Marcos Basabe, was a stock and sales-floor worker employed by Mohamed Doria and Defendants from approximately July 21, 2014 through July 25, 2014. Mr. Basabe worked from 9:00 a.m. to 8:00 p.m., for fifty-five (55) hours and was paid $300.00 for the week ($5.45 per hour).

105.     Plaintiff Adrian Batana, has been employed by Mohamed Doria and Defendants as a cashier from approximately April 2013 through present. Ms. Batana worked a regular weekly schedule of 9:00 a.m. to 8:00 p.m., Monday through Saturday, for sixty-six (66) hours per week, and was and still is paid $350.00 per week ($5.30 per hour).

106.     Plaintiff Carlos Laguna was a stock worker and unloader employed by Mohamed Doria and Defendants from approximately June 2011 through August 2014.  Mr. Laguna regular weekly work schedule was from 9:00 a.m. to 8:00 p.m., Monday through Saturday, for sixty-six (66) hours per week, and was paid $360.00 per week ($5.45 per hour).

107.     Plaintiff Christine Nunez was a cashier and sales-floor worker employed by Mohamed Doria and Defendants from on or about November 2012 through on or about December 2013. Ms. Nunez' worked from 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $200.00 per week.

108.     Plaintiff Abel Pantoja was employed by Mohamed Doria and Defendants as a truck driver, loader and security guard from approximately August 2008 through March 10, 2014.  Mr. Pantoja worked 9:00 a.m. to 8:00 p.m., Monday through Sunday each week, for eighty-four (84) hours per week. From August 2008 through January 2011, Mr. Pantoja was paid $150.00 per week From January 2011 through March 11, 2014, Mr. Pantoja was paid $350.00 per week.

109.     Plaintiff Elietzer Pierre-Louis was a stock worker, unloader and sales-floor worker employed by Mohamed Doria and Defendants from on or about October 2013 through on or about December 2014. Mr. Pierre-Louis worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $300.00 per week.

110.     Plaintiff Josue Pierre-Louis was a stock worker employed by Mohamed Doria and Defendants from approximately June 2013 through October 2014.  Josue Pierre Louis worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours

per week, and was paid $250 per week at the commencement of his employment to $260.00 per week at the end of his employment.

111.    Plaintiff Yolanda Nieve is a cashier who was been employed by Mohamed Doria and Defendants from December 2013 through present.  Ms. Nieve has worked from 8:00 a.m. to 9:00 p.m., six days per week for sixty-six (66) hours per week, and was and still is paid $350.00 per week.

112.    Plaintiff David Richardson was a stock worker who employed by Mohamed Doria and Defendants from January 2008 through April 2015.  Mr. Richardson has worked from 8:00 a.m. to 9:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was and still is paid $300.00 per week ($4.54 per hour).

113.    Plaintiff Daniel Rodriguez is a truck driver who has been employed by Mohamed Doria and Defendants from November 2007 through July 24, 2015. From November 2007 to May 2015, Daniel Rodriguez worked 9:00 a.m. to 8:00 p.m., Monday through Saturday, for sixty-six (66) hours per week, and was paid $385.00 per week. From January 2015 through July 24, 2015, Mr. Rodriguez worked twenty eight to thirty hours per week. and was paid $260.00 per week.

114.    Plaintiff Roberto Rodriguez worked for Mohamed Doria and Defendants as an unloader and truck driver from approximately September 2013 through August 13, 2014. Mr. Rodriguez worked from 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $330.00 per week.

115.    Plaintiff Hector Rosado is a stock worker employed by Mohamed Doria and Defendants from approximately November 2006 through present.   Until May 2015, Mr.

Rosado has worked from 9:00 a.m. to 8:00 p.m., Monday through Saturday for sixty six (66) hours per week and was paid $300.00 per week. In May 2015, the Defendants cut his hours and commensurate pay were to thirty hours per week in retaliation for joining this lawsuit.

116.    Plaintiff Sarita Suedass was employed by Mohamed Doria and Defendants as a cashier from September 2013 through June 2014. From September 2013 through December 2013, Ms. Suedass worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $300.00 per week ($4.54 per hour).

117.    Plaintiff Keletso Tebogo was employed by Mohamed Doria and Defendants as a stock clerk placing orders from November 2005 through the present. He began placing orders on or about 2010 for various store locations. Throughout his employment, Tebogo worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $180.00 per week at the start of his employment to up to $300.00 per week until late May 2015.  On May 26, 2015, Plaintiff Tebogo's hours were cut from sixty-six (66) hours per week to thirty (30) hours per week and his pay was cut to $225.00 per week.

118.    Plaintiff Joseph Kofie was employed by Mohamed Doria and Defendants as a stock clerk and delivery driver from on or about November 2004 until present. From the commencement of his employment, Plaintiff Joseph Kofie worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid a $250.00 per week at the beginning of his employment to $450.00 per week until on or about June 3, 2015. Since June 3, Plaintiff Joseph Kofie hours have been reduced to thirty (30)

hours per week and is paid $250.00 per week in retaliation for joining the lawsuit.

119.    Plaintiff Santiago Pelma was employed by Mohamed Doria and Defendants as a stock clerk from on or about March 2005 through present. From March 2005 through June 3, 2015 Mr. Pelma worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid a $240.00 per week at the commencement of his employment to $340.00 per week until on or about June 9, 2015. Since on or about June 9, 2015 Mr. Pelma has been paid $200 per week in retaliation for joining the lawsuit.

120.    Plaintiff Israel Uduaghan was employed by Mohamed Doria and Defendants as a stock clerk and later as an assistant manager from on or about the year 1998 to present. For the first two years of his employment Plaintiff Uduaghan was employed as a stock clerk. In 2000, Plaintiff Uduaghan was promoted to the position of assistant manager. Throughout his employment, Plaintiff Uduaghan  worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid a from $200.00 per week at the commencement of his employment to $525 per week until late May 2015. On May 26, 2015 Plaintiff Uduaghan was demoted to stock clerk in retaliation for joining the lawsuit and had his hour reduced to thirty-seven (37) hours per week from sixty-six (66) hours per week and his pay was reduced to $294.00 per week.

121.    Plaintiff Mamadou Diallo was employed by Mohamed Doria and Defendants as a stock clerk from on or about February 2012 until on or about March 2014. From February 2012 until March 2014, Plaintiff Diallo worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $300.00 per

week. When Defendants discovered in 2013 that he made a complaint with the Department of Labor Mohamed Doria reduced his pay $300 to $280 per week while requiring him to work the same number of hours in retaliation for his participation in the Department of Labor investigation.  Plaintiff Mamadou Diallo was terminated by Defendant Mike Memon in March 2014 for filing the Department of Labor complaint.

122.    Plaintiff Miguel Rosendo was employed by Mohamed Doria and Defendants as a stock clerk from August 31, 2011 through the present. From August 31, 2011 until June 3, 2015, Plaintiff Rosendo worked 9:00 a.m. to 8:00 p.m., Monday through Saturday each week, for sixty-six (66) hours per week, and was paid $360.00 per week at the commencement of his employment to $385 per week until late May, 2015. Defendant cut Plaintiff Rosendo hours cut to thirty (30) per week from May 31st, 2015 to June 15th, 2015 in retaliation for joining this lawsuit. At the present time Plaintiff Rosendo works approximately 54 hours per week.

123.    Plaintiff Ronald Agyemang was employed by Mohamed Doria and Defendants as a stock clerk from December 2000 until the present. From December 2000 through June 2, 2015, Plaintiff Agyemang worked from 9:00 a.m. to 8:00 p.m. from Monday through Saturday each week, for sixty-six (66) hours per week and was paid from $140.00 per week at the commencement of his employment to $470.00 per week. On or about June 3, 2015, Defendants cut Plaintiff Agyemang's hours from sixty-six (66) to forty (40) hours per week and reduced his pay to $285.00 per week in retaliation for joining the lawsuit.

124.    Plaintiff Sergio Recinos has been employed by Mohamed Doria and Defendants since 2010.   During most of Mr. Recinos' employment during the relevant period, he

worked 9:00 a.m. to 8:00 p.m., six days per week, for sixty-six (66) hours per week. Defendants failed to pay him minimum wage and failed to pay him overtime.  On May 23, Defendant Mike Memon cut Plaintiff Sergio Recinos' hours and commensurate pay from well over forty hours per week to thirty three hours per week.

125.    Mohamed Doria and Defendants failed to pay each of the Opt-In Plaintiffs minimum wage and/or any premium for overtime hours worked.

*Wage Statements*

126.    Each of the Plaintiffs and nearly all of Mohamed Doria's and Defendants' employees were paid in cash off the books.

127.    Pursuant to NYLL § 195(3) Mohamed Doria and Defendants were required to furnish each employee with a statement with every payment of wages, listing gross wages, deductions and net wages.

128.    Prior to the commencement of this action, Mohamed Doria and the Defendants never provided Plaintiffs and prospective class members with accurate pay statements indicating: 1) wage rates; 2) hours worked; 3) gross wages; 4) net wages paid; 5) the employers' name address and phone number; and 6) and allowances and deductions.

129.    Mohamed Doria and Defendants willfully failed to provide such wage payment statements to Plaintiffs and all of their other workers.

*Wage Theft Prevention Act Notices of Pay Rate*

130.    Pursuant to NYLL 195(1), Mohamed Doria and Defendants were required to furnish Plaintiffs and class members with Wage Theft Prevention Act Notices of Pay Rate at the commencement of their employment since 2011, and annually as required between

2012 and 2014.

131.    Mohamed Doria and Defendants willfully failed to furnish Plaintiffs and class members with any such notices.

132.    In April 2015, Defendants required all of their employees to sign blank Wage Theft Prevention Act notices.  A true and correct copy of the form provided to Plaintiff Daniel Rodriguez by Defendants is attached hereto as Exhibit "A."

133.    Check marks were placed on the notices for the employers' name and address and Plaintiffs' printed name and signature for employees to complete those fields.

134.    The critical information fields including those for: 1) the purpose of the notice; 2) the employee's pay rate, 3) allowances taken, 4) regular payday, 5) pay period interval, 6) overtime pay rate, and 7) the date the notice was signed were not checked off and were not to be completed by the employees, were blank when the workers were required to sign the forms.

135.    Defendant Usman Doria travelled to the various Discount Store locations and distributed the blank notices to workers.

136.    Defendant Mike Memon told Plaintiff Daniel Rodriguez in a recorded conversation that all of the other employees had signed the documents, as Defendants had instructed them.

137.    Defendants obtained these signatures on these blank documents for the purpose of fraudulently backdating the Blank Wage Theft Prevention Act Notices with the intent of deceiving the Court into believing that they had provided the requisite notice when they had not.

27

138.     Defendants Mike Memon and Gulan Doria claim that they required workers to sign notices in 2015, "so that we would be in compliance", but deny that the forms were blank.

139.     However, the annual notice of pay rate has been abolished by the legislature in recent amendments to the Wage Theft Prevention Act.  There is no requirement that annual notices be completed in 2015.

*Retaliation*

140.     Defendants have mounted a massive and vicious retaliation campaign against workers who are participating or who have expressed interest in participating in this lawsuit. Defendants have terminated at least seven Plaintiffs in retaliation for participating in protected activity.  They have suspended and reduced the work hours of numerous Plaintiffs, and demoted several of the Plaintiffs.  They have also threatened Plaintiffs with termination, deportation proceedings and physical violence.   Indeed, Defendants threatened two Plaintiffs on the steps of the Courthouse. Defendants have also caused false police reports to be filed with law enforcement, in order to have two of the Plaintiffs arrested for serious felonies that they did not commit, including attempted assault with a deadly weapon and grand larceny.

141.     On May 12, 2015, the Court has issued a temporary restraining order against acts of retaliation and Defendants' communications with Plaintiffs concerning the lawsuit, but Defendants' ignored it.

142.     Defendants ignored the temporary restraining order and began violating the Order within minutes.

143.     On June 3, 2015, the Court issued a preliminary injunction against further acts of retaliation and communications with workers about the lawsuit.

144.     Defendants ignored the preliminary injunction as well.

145.     Defendants' relentless retaliation campaign continues unabated.

**Plaintiff Keletso Tebogo**

146.     In 2013, the United States Department of Labor conducted an investigation of pay practices at the Bergen Discount location.

147.     The Department found that workers at the Bergen Discount location were unlawfully deprived of minimum wage and overtime.

148.     In December 2013, Plaintiff Keletso Tebogo received a letter from the Department stating that he was entitled to several thousand dollars in unpaid wages, which was payable to him upon the return of some paperwork.

149.     Thereafter, Mohamed Doria and Defendant Mike Memon met with Plaintiff Keletso Tebogo and told him that he would terminated if he collected money from the Department of Labor.

150.     Out of fear of Mohamed Doria's and Defendant Mike Memon's threat of retaliatory termination, Plaintiff Tebogo did not return the paperwork and never collected the money available to him.

151.     Plaintiff Keletso Tebogo's consent to join this action was filed in early May 2015.

152.     On the morning of May 20, 2015, Defendants Mike Memon and Usman Doria called Plaintiffs Keletso Tebogo and Mady Nassoko into a meeting at which they

interrogated the workers about their participation in the lawsuit and required them to write a false statement disavowing their participation in the lawsuit (the "May 2015 Coerced Statement").

153.    The May 2015 Coerced Statement read:

Reference # Civil Action

(Name)                No # 14-cv-07990

I _____ certify that I am not in this lawsuit case and my identification was theft and misused my information.  Therefore, I didn't sign any paperwork. This statement I prepared myself voluntarily without any pressure or obligation. Sincerely

Signed

Phone #
5-20-15

154.    Plaintiff Tebogo recorded and transcribed the interrogation and took a photograph of the May 2015 Coerced Statement.

155.    A true and correct copy of the May 2015 Coerced Statement that Defendants demanded Plaintiffs Keletso Tebogo and Mady Nassoko write is annexed hereto as Exhibit "B".

156.    Plaintiff Tebogo refused to sign the May 2015 Coerced Statement.

157.    On the afternoon of May 20, 2015, Defendant Usman Doria informed Plaintiff Keletso Tebogo that he would be terminated for his participation in the lawsuit and refusal to write the May 2015 Coerced Statement as soon as the preliminary injunction hearing, scheduled for the following day, was over

158.    On May 21, 2015, the preliminary injunction hearing was adjourned.

159.     On May 23, 2015, Defendants suspended Plaintiff Keletso Tebogo for the day.

160.     When Plaintiff Keletso Tebogo arrived on time for work on May 25, 2015, Defendant Gulan Doria required him to wait several hours before he was suspended for the day in retaliation for his participation in the lawsuit.

161.     On May 26, 2015, Defendants cut Plaintiff Keletso Tebogo's work schedule from sixty-six hours to approximately thirty-three hours in retaliation for his participation in the lawsuit.

162.     On July 27, 2015, Defendant Mike Memon told Plaintiff Keletso Tebogo that he should quit if he didn't like the working conditions and threatened him and his attorneys by saying, "today it's you, tomorrow it's your lawyers."

### Plaintiff Mamadou Diallo

163.     Plaintiff Mamadou Diallo initiated the 2013 Department of Labor Complaint concerning the Bergen Discount location.

164.     In January 2014, Mohamed Doria cut Mamadou Diallo's pay from $300 per week to $280 per week in retaliation for his participation in the Department of Labor investigation concerning the Bergen Discount location.

165.     In March 2014, Defendants Mike Memon terminated Plaintiff Mamadou Diallo. Defendant Mike Memon informed him at the time that the reason for his termination was because he participated in the Department of Labor investigation concerning the Bergen Discount location.

### Plaintiffs Roberto Rodriguez and Carlos Laguna

166.     Plaintiff Roberto Rodriguez was terminated for planning to participate in this lawsuit and internal complaints.

167.    Prior to the filing of this action, while employed by Defendants Plaintiffs Roberto Rodriguez and Carlos Laguna asserted internal complaints to their employer about Defendants' unlawful pay practices, including the failure to pay minimum wage and overtime.

168.    In August 2014, Defendants learned that several Plaintiffs were planning to file the instant action.

169.    On or about August 22, 2014, Defendant Gulan Doria informed Plaintiff Roberto Rodriguez that he was being terminated because "Mr. Mike" (Defendant Mike Memon) had a list of people who were planning to bring a lawsuit and Plaintiff Roberto Rodriguez was on the list.

170.    On or about August 31, 2015, Defendants caused, an employee, Samuel Quarshie, to file a false police report against Plaintiff Roberto Rodriguez, claiming that he had stolen a bag of cash belonging to Bergen Discount.

171.    On or about August 31, 2014, Defendants terminated the employment of Plaintiff Carlos Laguna in retaliation for his planning to bring the instant action and internal complaints.

172.    On May 12, 2015 at approximately 10:15 a.m., the Hon. Judge Robert Sweet issued a temporary restraining order enjoining Defendants Mike Memon and Gulan Doria from retaliating against workers for participating in the lawsuit.

173.    Defendants Mike Memon, Gulan Doria, and two other associates (the "Memon-Doria Group") were present at the Courthouse when the Court issued the temporary restraining order.

174.     Plaintiffs Carlos Laguna and Roberto Rodriguez were also present at the Courthouse when the Court issued the temporary restraining order.

175.     As Plaintiffs Carlos Laguna and Roberto Rodriguez left the courthouse with their counsel at approximately 10:30 a.m., they were accosted on the courthouse steps by the Memon-Doria Group, who began photographing and/or videotaping Plaintiffs with their cell phones.

176.     On the courthouse steps, one of the Bergen-Doria Group got on his phone and stated that he was calling the police to have Plaintiff Roberto Rodriguez arrested.

177.     On the Courthouse steps, the Bergen-Doria Group then threatened Plaintiffs Roberto Rodriguez and Carlos Laguna with physical violence stating "We are going to F*** you up!"

### Plaintiff Israel Uduaghan

178.     Plaintiff Israel Uduaghan has worked for Defendants for at least fifteen years.

179.     On May 18, 2015, Plaintiffs' counsel filed Israel Uduaghan's consent to join this action.

180.     At the time his consent was filed, Plaintiff Uduaghan had been a manager of the Clear Choice Discount location for several years.

181.     On May 19, 2015, Plaintiff Israel Uduaghan was interrogated by Defendant Mike Memon and threatened with termination if he did not disavow his participation in the lawsuit.

182.     Later on May 19, 2015, Defendant Gulan Doria continued the interrogation of Plaintiff Israel Uduaghan.

183.    On May 20, 2015, Plaintiffs' counsel filed a declaration from Plaintiff Israel Uduaghan in support of the preliminary injunction and Plaintiffs' motion for contempt sanctions.

184.    On May 25, 2015, Defendant Musajee Vawda questioned Plaintiff Israel Uduaghan about his participation in this lawsuit.

185.    On May 26, 2015, Defendant Gulan Doria required Plaintiff Israel Uduaghan to turn over his keys, demoted him to a stock worker, and transferred him to the Morris Discount location.

186.    On May 27, 2015, Defendants cut Plaintiff Israel Uduaghan from sixty-six hours per week to forty-two hours per week.

187.    Plaintiff Israel Uduaghan's management position at the Clear Choice location was filled by Samuel Quarshie, the employee who filed the false police report against Plaintiff Roberto Rodriguez.   Quarshie was promoted and transferred from Morris Discount to fill the position.

188.    Thus, in one fell swoop, Defendants retaliated against Plaintiff Uduaghan for his participation in this lawsuit and rewarded another employee for filing a false police report against Plaintiff Roberto Rodriguez for his participation in this lawsuit.

**Plaintiffs Elietzer Pierre-Louis and Josue Pierre-Louis**

189.    In November 2014, approximately one month after this lawsuit was filed, Defendant terminated Plaintiff Elietzer Pierre-Louis for his participation in this lawsuit.

190.    In December 2014, Plaintiff Josue Pierre-Louis was informed by his manager that Defendant Gulan Doria was upset with him for participating in the lawsuit.  The

34

manager then handed Plaintiff Josue Pierre-Louis a telephone.  Defendant Gulan Doria was on the other end of the line and promptly terminated Plaintiff Josue Pierre-Louis because of his participation in this lawsuit.

191.    In approximately April 2015, Plaintiff Keletso Tebogo spoke with a former employee of the Bergen Discount location, Luckenson Camille, as Camille came out of a meeting with Defendant Gulan Doria.  At the time of the conversation, Tebogo had not joined the lawsuit.

192.    Camille told Plaintiff Keletso Tebogo that he has been instructed by Defendant Gulan Doria to get Josue Pierre-Louis to drop the lawsuit.

193.    Camille told Plaintiff Keletso Tebogo that he was going to comply with Defendant Gulan Doria's instructions.

194.    In late April or early May, 2015, Plaintiff Josue Pierre-Louis received a phone call from Camille, who tried to pressure Josue Pierre-Louis to drop the lawsuit.  Camille told Plaintiff Josue Pierre-Louis that if he did not drop the lawsuit, he and Defendant Gulan Doria would report Josue Pierre-Louis to immigration authorities and have him deported.

195.    On May 9-10, 2015, the family of Josue and Elietzer Pierre-Louis in their native country of Haiti received several threatening phone calls from Camille pressuring the family to have Plaintiffs Josue and Elitzer Pierre-Louis drop the lawsuit.  During one of these phone calls, Camille stated that he would be happy if Josue and Elietzer Pierre-Louis were dead.

196.     On May 13, 2014, Plaintiff Josue Pierre-Louis received a phone call from a stranger who said he was going to bring Josue to meet with Defendant Gulan Doria about

the case.  Plaintiff Josue Pierre-Louis reasonably perceived this as a threat.

197.    On May 15, the Pierre-Louis family in Haiti received more threatening phone calls from Camille.  Camille stated that if they did not drop the lawsuit, Camille was coming to Haiti to bring shame on the Pierre-Louis family for associating with criminals by participating in the lawsuit.

### Plaintiff David Richardson

198.    On April 21, 2015, Defendants Mike Memon and Gulan Doria terminated the employment of Plaintiff David Richardson in retaliation for his participation in this lawsuit.

199.    Defendants Mike Memon and Gulan Doria informed Plaintiff Richardson that he would be terminated if he refused to sign a fraudulent backdated affidavit, disavowing his participation in this lawsuit (the "Fraudulent Backdated Affidavit").

200.    The document reads as follows:

> To whom it may concern:
>
> I David Richardson, hereby state that I am a part time worker at Bergen Discount, Inc located at 518 Willis Avenue Bronx, NY 10455
>
> I also state that I am not part of and have no intention to be part to any lawsuit filed against my employer and/or subsidiaries of my employer.
>
> The lawsuit filed on October 03, 2014 naming me as a plaintiff was done without my consent and I therefore object to it's continuance with me named as a plaintiff.
>
> _____
>     David Richardson
>
>         State of New York
>           County of Bronx
>     Sworn before me 14 day of October 2014

201.    A true and correct copy of the Fraudulent Backdated Affidavit is attached

hereto as Exhibit "C."

202.    The statements in the affidavit are false for several reasons.

203.    First, in October 2014, Plaintiff Richardson was not a part time employee.  He worked sixty-six (66) hours per week.

204.    Second, Plaintiff Richardson was a part of and did intend to continue his participation in this lawsuit.  The lawsuit was filed with his consent and he did not and does not object to its continuance.

205.    Third, the notary acknowledgement was fraudulently backdated to a few days after the lawsuit was filed.

206.    Fourth, there was no notary public present when Plaintiff David Richardson and Daniel Rodriguez were required to sign the Fraudulent Backdated Affidavit.

207.    Upon information and belief, Defendants either intended to forge the notary public's signature or to use a notary public willing to violate her solemn obligation as a public official by fraudulently acknowledging Plaintiff Richardson's signature.

208.    Mr. Richardson refused to sign the Fraudulent Backdated Affidavit and has not been permitted to return to work since.  He has been terminated.

**Plaintiff Daniel Rodriguez**

209.    Plaintiff Daniel Rodriguez was one of the original Plaintiffs in this case.  Prior to the filing of this lawsuit he was working approximately sixty-six hours per week.

210.    In January 2015, Defendants substantially reduced his work hours to less than forty hours per week in retaliation for his participation in the lawsuit.

211.    In April 2015, Daniel Rodriguez asked Defendant Mike Memon to restore his

hours and questioned why he was required to sign the Blank Wage Theft Prevention Act Notice.

212.     In a recorded conversation, Defendant Mike Memon told Plaintiff Daniel Rodriguez that he would consider restoring Plaintiff Daniel Rodriguez's work hours on two conditions: 1) Plaintiff Daniel Rodriguez had to sign the Blank Wage Theft Prevention Act Notice; and 2) Plaintiff Daniel Rodriguez had to disassociate himself from other plaintiffs in the lawsuit, because Defendant Mike Memon did not like having to meet with his lawyer.

213.     Plaintiff Daniel Rodriguez refused to sign the blank form and his hours were not restored.

214.     On April 21, 2015, Defendants Mike Memon and Gulan Doria presented Plaintiff Daniel Rodriguez with the same Fraudulent Backdated Affidavit that they had presented to David Richardson.

215.     Defendants Mike Memon and Gulan Doria required Plaintiff Daniel Rodriguez to sign the Fraudulent Backdated Affidavit under threat of termination.

216.     Plaintiff Daniel Rodriguez refused to sign the Fraudulent Backdated Affidavit.

217.     Defendant Mike Memon and Gulan Doria then temporarily suspended Plaintiff Daniel Rodriguez and cut his work hours further in retaliation for his refusal to disavow himself from the lawsuit.

218.     On July 24, 2015, Plaintiff Daniel Rodriguez was working in the basement of the Bergen Discount location when Usman Doria called him a "mother**er" and approached him in a threatening manner.  Usman Doria continued swearing at Plaintiff Daniel Rodriguez and then went upstairs and claimed that Plaintiff Daniel Rodriguez had

pulled a box cutter on him.

219.   Defendants called the police and Defendant Usman Doria tried to press charges against Plaintiff Daniel Rodriguez and to obtain a protective order.

220.   Plaintiff Daniel Rodriguez explained that he had no box cutter in his possession and never pulled a box cutter or any weapon on Defendant Usman Doria.

221.   As the police questioned Defendant Usman Doria and Plaintiff Daniel Rodriguez, Defendant Mike Memon instructed a manager to photograph the police presence.  Defendant Mike Memon then smiled and said, the lawsuit "is finished."

222.   The police left without making any arrests or taking any action about a protective order.

223.   Defendants staged this incident so they could falsely accuse Plaintiff Daniel Rodriguez, one of the original Plaintiffs in this case, with committing a felony, just as they had done to his brother Roberto Rodriguez, when they learned that he was planning to file this lawsuit in August 2014.

**Plaintiff Miguel Rosendo**

224.   Plaintiff Miguel Rosendo received advance approval from his supervisor to be absent from work the morning of the preliminary injunction hearing scheduled for May 21, 2015.

225.   The hearing was adjourned after Plaintiff Rosendo arrived at the courthouse, but Defendant Mike Memon spotted Plaintiff Rosendo in front of the courthouse.

226.   When Plaintiff arrived at work on time, he was informed by Defendant Usman Doria that he was being dismissed for the day without pay because he showed up for the

court hearing.

227.    On May 22, 2015, Defendant Gulan Doria reduced the work hours and commensurate pay of Plaintiff Rosendo from sixty-six to forty two hours per week in retaliation for his participation in this lawsuit.

228.     On or around May 31, 2015, Defendant made a further reduction in Plaintiffs' work schedule and commensurate pay from forty-two to thirty-six hours per week in retaliation for his participation in this lawsuit.

229.    On the morning of June 2, 2015, Plaintiff Rosendo attended the preliminary injunction hearing, prior to his scheduled shift.

230.    On June 2, 2015, at 1:00 p.m. when Plaintiff Rosendo arrived for his scheduled shift, he was suspended for the day by Defendants in retaliation for his participation in this lawsuit.  He was informed of his suspension by Defendant Usman Doria.

### Plaintiff Hector Rosado

231.    Plaintiff Hector Rosado worked for Defendants for the past eight and a half years.  He worked sixty-six hours per week, six days per week.  He most recently worked at the W.P. Rainbow location.

232.    On May 20, 2015, Defendants provided Plaintiff Hector Rosado with a copy of the same May 2015 Coerced Statement that they required Plaintiffs Keletso Tebogo and Mady Nassoko to write.

233.    On May 26, 2015, Defendant Gulan Doria called Hector Rosado at the W.P. Rainbow location and told him to go to the Bergen Discount location to meet with Defendant Mike Memon that day.

234.     When Plaintiff Hector Rosado arrived at the Bergen Discount location he met with Defendants Mike Memon and Musajee Vawda, who required him to sign the May 2015 Coerced Statement.

235.     Plaintiff Hector Rosado took a photograph of the May 2015 Coerced Statement. A true and correct copy of the May 2015 Coerced Statement that Defendants required Plaintiff Hector Rosado to sign is annexed hereto as Exhibit "D".

236.     Plaintiff Hector Rosado refused to sign the May 2015 Coerced Statement because it was untrue.

237.     Soon thereafter, Defendant Gulan Doria reduced Plaintiff Hector Rosado's work schedule and commensurate pay from sixty-six hours per week to thirty hours per week.

238.     Later that same day, Defendant Musajee Vawda continued to question Plaintiff Hector Rosado about his refusal to agree to disavow his participation in the lawsuit.

**Plaintiff Sergio Recinos**

239.     Plaintiff Sergio Recinos has worked for Defendants for approximately five years.  Prior to joining this lawsuit, Plaintiff Sergio Recinos worked substantially more than forty hours per week at the Bergen Discount location.

240.     In late May 2015, Defendant Mike Memon interrogated Plaintiff Sergio Recinos about his participation in the lawsuit and required him to write the May 2015 Coerced Statement.

241.     Plaintiff Sergio Recinos refused to write the May 2015 Coerced Statement.

242.     On May 23, 2015, in a meeting with Defendants Mike Memon and Usman

Doria, Defendants substantially cut the work hours and commensurate pay of Plaintiff Sergio Recinos to thirty three hours per week.  During the conversation Defendant Mike Memon told Plaintiff Sergio Recinos that Plaintiff Sergio Recinos was "a leader of the people," "trying to start a union" and stabbing Memon in the back.

243.    Defendants also retaliated against Plaintiff Sergio Recinos in connection with his participation in the lawsuit, immediately after he attended the June 2, 2015, preliminary injunction hearing.

244.    Defendant Gulan Doria was present at the hearing and spotted Plaintiff Sergio Recinos at the hearing.

245.    When Plaintiff Sergio Recinos arrived on time for work that afternoon, his supervisor told him that he was instructed to call Defendant Gulan Doria when Plaintiff Sergio Recinos reported for work.

246.    The supervisor was unable to reach Defendant Gulan Doria and instead spoke with Defendant Usman Doria.

247.    Immediately following the call, Plaintiff Sergio Recinos was sent home for the day by his supervisor without pay.

**Plaintiff Ronald Agyemang**

248.    Plaintiff Ronald Agyemang requested time off from work on the morning of June 2, 2015.

249.    The request was granted by his supervisor.

250.    Plaintiff attended the preliminary injunction hearing and was spotted by Defendants present at the hearing including Defendants Gulan Doria and Mike Memon.

251.    When Plaintiff arrived on time for work the afternoon of June 2, 2015, he was immediately suspended for the rest of the day in retaliation for his participation in the lawsuit.

252.     On June 3, 2015, he was informed by his supervisor that his work schedule was now reduced from sixty-six hours per week to forty-two hours per week.

### Plaintiff Santiago Pelma

253.    On or about June 9, 2015, Defendant Gulan Doria informed Plaintiff Santiago Pelma that his regular work hours were being reduced from sixty-six hours per week to thirty six hours per week shortly after he filed a consent to join this action.

### Plaintiff Joseph Kofie

254.    Upon information and belief, Defendants learned that Plaintiff Joseph Kofie was planning to join the lawsuit.

255.    On May 20, 2015, Defendants Mike Memon and Gulan Doria demanded that Plaintiff Joseph Kofie write the May 2015 Coerced Statement.

256.    Plaintiff Joseph Kofie refused to write the May 2015 Coerced Statement.

257.    On May 23, 2015, two days after the scheduled date for the preliminary injunction hearing, Defendants suspended Plaintiff Joseph Kofie for refusing to sign the May 2015 Coerced Statement.

258.    On May 26, 2015, Defendants substantially reduced Plaintiff Joseph Kofie's regular work schedule from substantially more than forty to thirty hours per week.

### Other Workers

259.    Upon information and belief, Defendants have required numerous other workers to sign blank and/or false documents concerning the claims in the action and

workers' participation in the lawsuit.

260.     Upon information and belief, in April 2015, when David Richardson and Daniel Rodriguez were required to sign the Fraudulent Backdated Affidavits under threat of termination, other Plaintiffs were required to sign similar documents.

261.     Non-plaintiff workers were required by Defendants to sign documents stating that they were part time workers, when in fact they were all full time workers and almost all of them worked sixty or more hours per week.

262.     In May 2015, numerous Plaintiffs and non-Plaintiffs were subject to the same sort of interrogations by Defendants pressuring them to write the May 2015 Coerced Statement and to discontinue their participation in the lawsuit.

263.     Before and after the Court issued the preliminary injunction against communicating with current and former workers, Defendants, including Mike Memon Salim Doria, Usman Doria, Musajee Vawda, and Gulan Doria harassed Plaintiffs and non-Plaintiffs, pressuring them to stay out of and/or discontinue their participation in the lawsuit.

*The 2013 Department of Labor Investigation*

264.     In 2013, the Bergen Discount location was the subject of a United States Department of Labor Investigation.

265.     Mohamed Doria and Defendant Mike Memon told workers to hide and go to other locations when investigators arrived and not to cooperate with investigators if they were discovered by the investigators.

266.     The United States Department of Labor determined that Bergen Discount had

failed to pay several workers at that the Bergen Discount location minimum wage and overtime pursuant to the FLSA.

267.     The Department of Labor determined that the few workers who were willing to speak with investigators were paid an average of $5.00 per hour and received no premium for overtime.

268.     To limit Defendants' liability, Defendant Mike Memon told the Department of Labor that almost all of the workers were his relatives.  He claimed he was assisted by his wife, children and many cousins.

269.     In fact, no relatives of the Defendant Mike Memon worked at the location.

270.     Workers were terrified of revealing the truth to the Department of Labor because of the retaliation that Mohamed Doria and Defendant Mike Memon would subject them to.

271.     Defendant Mike Memon told the investigators that he owned and ran no businesses other than the Bergen Discount location.

272.     In fact, he and Mohamed Doria owned and ran more than a dozen other Discount Store locations.

273.     Several employees were notified by the Department of Labor that Defendants had violated the law and that they were owed money.  The notice informed the workers that they had to complete some paperwork and send it to the Department of Labor to collect the payments.

274.     Mohamed Doria and Defendant Mike Memon interrogated the workers who were to receive these payments and threatened to terminate them if they tried to collect.

*The Prior Lawsuit*

275.     Mohamed Doria and Defendant Mike Memon were sued for failing to pay minimum wage and overtime, and the allegations in that case were nearly identical.

276.     In *Rodriguez v. Bergen Discount Plus Inc.* 08-cv-8304, Mohamed Doria and Defendant Mike Memon were named as defendants in a putative class and collective action. The Complaint alleged that a Plaintiff who worked at the Bergen Discount location worked 66 hours per week, was paid less than $5.00 per hour, received no premium for overtime, and received no spread of hours premium pay.

277.     On December 18, 2009, Plaintiffs obtained a default judgment in the amount of $97,227.80 for two workers after Mohamed Doria and Defendant Mike Memon failed to respond to the complaint.

278.     Mohamed Doria and Defendant Mike Memon filed a motion to vacate the default judgment in which they submitted sworn affidavits dated February 5, 2010.

279.     In his sworn affidavit to Judge Kimba Wood, Defendant Mike Memon denied that his name was Mike Memon.

280.     In this action, Defendant Mike Memon filed an affidavit admitting that his name is Mike Memon.

281.     In his sworn affidavit to Judge Kimba Wood, Defendant Mike Memon claimed he did not comprehend English well enough to understand that he was served with a summons and complaint in the Rodriguez action.

282.     Throughout the class period, Defendant Mike Memon's English language skills have been excellent.

283.    In his sworn affidavit to Judge Kimba Wood, Defendant Mohamed Doria claimed he did not comprehend English well enough to understand that he was served with a summons and complaint in the action, stating: "Because English is not my primary written or spoken language, I have been unable to identify any documents that I have as a Summon and Complaint in this matter."

284.    Throughout the class period until his death, Defendant Mohamed Doria's written and spoken English language skills were excellent.

285.    Based on Mohamed Doria and Defendant Mike Memon's false statements, Judge Kimba Wood, granted the motion to vacate the default judgment.

286.    Upon information and belief, the case settled soon thereafter for an undisclosed sum.

## CLASS ACTION ALLEGATIONS

287.     Plaintiffs bring this case as representatives of a class of all other persons similarly situated.

288.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiffs seek the certification of a class of all persons who, during the relevant time period of October 3, 2009, to the date of final judgment in this matter, have been employed by as non-exempt workers at one or more of Defendants' Discount Stores (hereinafter referred to as the "Discount Workers Class").

289.    Upon information and belief, the Discount Workers Class includes over three hundred (300) similarly situated individuals who have not been paid minimum wage, overtime, or spread of hours; who have not received wage payment statements; and who

would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

290.   Defendant Mike Memon admitted in a recorded conversation that he currently has one hundred (100) employees and turnover is high.

291.   The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

292.   There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

293.   Common questions of law and fact include, but are not limited to, the following:

A.   Whether Defendants have consistently failed to pay the Plaintiffs and class members minimum wage as required by the NYLL;

B.   Whether Defendants have consistently failed to pay Plaintiffs and class members overtime wages at one and one-half times their regular rate of pay as required by the NYLL for hours worked in excess of forty hours;

C.   Whether Defendants consistently failed to pay Plaintiffs and class members spread of hour wages as required by New York Law;

D.   Whether Defendants have, in failing to make required payments to Plaintiffs and others similarly situated, acted willfully and with the intent of depriving members of the class of such compensation;

  E. Whether Defendants have consistently failed to provide wage payment statements as required by New York Law; and

  F. Whether Defendants have consistently failed to provide Wage Theft Prevention Act notices of pay rate as required by New York Law.

294. Plaintiffs' wage and hour claims and Defendants' anticipated affirmative defenses thereto are typical of the claims of all class members and of Defendants' anticipated affirmative defenses thereto.

295. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent.

296. Plaintiffs have retained counsel capable of handling class action suits. Neither Plaintiffs nor their counsel have an interest which is in conflict with the class or which might cause them not to vigorously pursue this action.

297. Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices, or could as a practical matter dispose of the legal claims of class members not parties to such separate adjudications.

298. Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COLLECTIVE ACTION ALLEGATIONS

299.    Plaintiffs' FLSA claims are brought as a collective action pursuant to 29 U.S.C. § 216(b).

300.    Employees are "similarly situated" for purposes of FLSA collective wage suits if they are subject to a common policy, plan, or design.

301.    Plaintiffs bring the FLSA claims on behalf of themselves and others similarly situated, namely all non-exempt employees who worked for Defendants at one or more of the Discount Stores from the period of October 3, 2011 to the date of final judgment in this matter (hereinafter referred to as the "Discount Workers Collective").

302.    Upon information and belief, the Discount Workers Collective consists of more than two hundred fifty (250) similarly situated individuals who have not been paid minimum wage and overtime and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

303.    Defendant Mike Memon has admitted that he currently has one hundred (100) employees and turnover is high.

304.    Upon information and belief, Defendants have failed to pay overtime to employees other than those in the Discount Workers Collective, and Plaintiffs reserve the right to broaden their definition of the collective group and/or add subgroups to this claim as additional members are discovered.

305.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

306.     Those similarly situated potential collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASSWIDE FACTUAL ALLEGATIONS

307.     Plaintiffs and members of the Discount Workers Class and Discount Workers Collective defined above (collectively, "Discount Workers Group") have been victims of a common policy and plan perpetrated by Defendants that has violated their rights under the FLSA and NYLL by denying them pay, including without limitation, minimum wage, overtime wages and spread of hours wages.

308.     Defendants have also failed to comply with the Wage Theft Prevention annual notice requirements and periodic wage statement requirements.

309.     Moreover, Defendants have required current employees to sign fraudulent and/or unenforceable documents after the lawsuit was commenced.

310.     First, in April 2015, Defendants required all of its current employees to sign blank Wage Theft Prevention Act Statements.

311.     Second, since this lawsuit was filed, Defendants have required current employees to sign other documents with the intent of prejudicing their claims and relinquishing valuable rights.

312.     As part of their ongoing business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and the Discount Workers Group by engaging in a pattern, practice and/or policy of violating the FLSA and/or the NYLL.

313.     Defendants have paid wages to the Plaintiffs and Discount Workers Group significantly below minimum wage, and have not paid overtime wages at any time.

314.    Defendants have substantially benefitted and profited from the work that Plaintiffs and Discount Workers Group have performed.

315.    Defendants failed to keep any records of the hours worked by the Plaintiffs and the Discount Workers Group.

316.    Defendants' unlawful conduct, policies and practices have been widespread, repeated, and consistent.

317.    Defendants' conduct, policies, and practices as described herein are ongoing and continuing.

318.    Defendants' conduct, policies and practices have been intentional, willful, and in bad faith, and has caused significant damages to the Plaintiffs and the Discount Workers Group.

## AS AND FOR THE FIRST CLAIM FOR RELIEF
*(Minimum Wage Under the FLSA)*

319.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

320.    Plaintiffs bring this claim on behalf of themselves and the Discount Workers Collective.

321.    Defendants have engaged in a widespread pattern, policy and practice of violating the minimum wage requirements of the FLSA.

322.    At all relevant times, Defendants were subject to the minimum wage requirements set forth in the FLSA, 29 U.S.C. § 201 *et seq.*

323.    At all relevant times, Plaintiffs and the Discount Workers Collective were employees of the Defendants within the meaning of 29 U.S.C. § 203(e).

324.     At all relevant times, Defendants employed Plaintiffs and the Discount Workers Collective within the meaning of 29 U.S.C. § 203(g).

325.     At all relevant times, Defendants were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

326.     As the Defendants shared control of the services of the Plaintiffs and Discount Workers Collective, Defendants are a single "employer" as defined by the Fair Labor Standards Act.

327.     Subject to the statutory time limits, Defendants were required to pay Plaintiffs and the Discount Workers Collective a rate of $7.25 per hour from October 3, 2011 through present pursuant to 29 U.S.C. § 206(a).

328.     Defendants have engaged in a policy and/or practice of failing to pay Plaintiffs and the Discount Workers Collective the applicable minimum wage for any of the hours Plaintiffs and the Discount Workers Collective were required to work.

329.     Defendants have violated and continue to violate 29 U.S.C. § 206(a) by failing to compensate Plaintiffs and the Discount Workers Collective the applicable minimum hourly wage.

330.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Discount Workers Collective the required minimum wage, Plaintiffs and the Discount Workers Collective have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216.

331.    Defendants willfully, knowingly and intentionally have failed, and continue to fail to compensate Plaintiffs and Discount Workers Collective the required minimum wage.

332.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Discount Workers Collective.

333.    Due to Defendants' intentional and willful failure to pay Plaintiffs and Discount Workers Collective the applicable minimum wage, the Plaintiffs and Discount Workers Class are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

334.    Members of the Discount Workers Collective are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consents to join this action. 29 U.S.C. § 216(b).

## AS AND FOR THE SECOND CLAIM FOR RELIEF
*(Minimum Wage Under the NYLL)*

335.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

336.    Plaintiffs bring this claim on behalf of themselves and the Discount Workers Class.

337.    Mohamed Doria and Defendants have engaged in a widespread pattern, policy and practice of violating the minimum wage requirements of the NYLL.

338.    At all relevant times, Plaintiffs and the Discount Workers Class were employees and Mohamed Doria and Defendants have been employers within the meaning of NYLL §§ 190, 651 and 652.

339.    At all relevant times, Mohamed Doria and Defendants were subject to the minimum wage provisions of Article 19 of the NYLL.

340.    Subject to the statutory time limits, Mohamed Doria and Defendants were required to pay Plaintiffs and the Discount Workers Class at least a minimum wage rate of (a) $7.15 per hour for all hours worked from September 29, 2008 through July 24, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through December 31, 2013; and (c) $8.00 per hour from December 31, 2013 through present, pursuant to NYLL § 652.

341.    Mohamed Doria and Defendants have engaged in a pattern, practice, policy and/or common scheme of failing to pay Plaintiffs and the Discount Workers Class the applicable minimum wage for any of the hours they required Plaintiffs and the Discount Workers Class to work.

342.    Mohamed Doria and Defendants have violated and continue to violate NYLL § 652 by failing to compensate Plaintiffs and the Discount Workers Class the applicable minimum hourly wage.

343.    As a result of Mohamed Doria's and Defendants' violations of the law and failure to pay Plaintiffs and Discount Workers Class the required minimum wage, Plaintiffs and the Discount Workers Class have been damaged and are entitled to recover from Mohamed Doria's estate and Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL §§ 198 and 663.

344.    Mohamed Doria and Defendants willfully, knowingly and intentionally have failed, and continue to fail to compensate Plaintiffs and Discount Workers Class the required minimum wage.

345. Mohamed Doria and Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs and the Discount Workers Class.

346. Due to Mohamed Doria's and Defendants' intentional and willful failure to pay Plaintiffs and Discount Workers Class the applicable minimum wage, Plaintiffs and the Discount Workers Class are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL §§ 198 and 663.

## AS AND FOR THE THIRD CLAIM FOR RELIEF
*(Overtime Under the FLSA)*

347. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

348. Plaintiffs bring this claim on behalf of themselves and the Discount Workers Collective.

349. At all relevant times, Mohamed Doria and Defendants were subject to the overtime wage requirements set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*

350. Mohamed Doria and Defendants expected Plaintiffs and Discount Workers Collective to work more than forty (40) hours a week, and Plaintiffs and the Discount Workers Collective regularly worked more than forty (40) hours a week throughout their employment.

351. At no time have Mohamed Doria and Defendants paid Plaintiffs and the Discount Workers Collective a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

352. Mohamed Doria and Defendants willfully, knowingly and intentionally did not,

and continue not to, compensate Plaintiffs and the Discount Workers Collective for overtime at a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours a week.

353.     As a result of Mohamed Doria's and Defendants' violations of the law and failures to pay Plaintiffs required overtime wages, Plaintiffs and Discount Workers Collective have been damaged and are entitled to recover from Mohamed Doria's estate and Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

354.     As Mohamed Doria and Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and Discount Workers Collective was in compliance with the law, Plaintiffs and Discount Workers Collective are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

355.     Members of the Discount Workers Collective are entitled to collectively participate in this action by choosing to "opt-in" and submit written Consents to Join this action. 29 U.S.C. § 216(b).

### AS AND FOR THE FOURTH CLAIM FOR RELIEF
*(Overtime Under the NYLL)*

356.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

357.     Plaintiffs bring this claim on behalf of themselves and the Discount Workers Class.

358.     At all relevant times, Mohamed Doria and Defendants were subject to the overtime wage requirements set forth in Article 19 of the NYLL.

359.     Pursuant to NYLL § 650 *et seq.* and 12 NYCRR 142-2.2, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty (40) worked in any workweek.

360.     Mohamed Doria and Defendants expected Plaintiffs and the Discount Workers Class to work more than forty (40) hours a week, and Plaintiffs regularly worked more than forty (40) hours a week throughout their employment.

361.     At no time have Mohamed Doria and Defendants paid Plaintiffs and the Discount Workers Class a rate of one and one-half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

362.     Mohamed Doria and Defendants willfully, knowingly and intentionally have not, and continue not to, compensate Plaintiffs and the Discount Workers Class for overtime at a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours a week.

363.     As a result of Mohamed Doria's and Defendants' violations of the law and failures to pay Plaintiffs required regular and overtime wages, Plaintiffs and the Discount Workers Class have been damaged and are entitled to recover from Mohamed Doria's estate and Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL § 198 and 12 NYCRR 142-2.2.

364.     As Mohamed Doria and Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and the Discount Workers Class was

in compliance with the law, Plaintiffs and the Discount Workers Class are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL§ 198.

## AS AND FOR THE FIFTH CLAIM FOR RELIEF
*(Spread of Hours Under the NYLL)*

365. Plaintiffs repeat and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

366. Plaintiffs bring this claim on behalf of themselves and the Discount Workers Class.

367. At all relevant times, Plaintiffs and the Discount Workers Class were and still are required to work eleven (11) hours each shift.

368. Plaintiffs and the Discount Workers Class were and still are entitled to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that they worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, pursuant to the NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR § 142-2.4.

369. Mohamed Doria and Defendants failed to pay Plaintiffs and the Discount Workers Class the spread of hours wages to which they were entitled under NYLL.

370. Plaintiffs and the Discount Workers Class were and still are entitled to be paid all of their earned wages.

371. Mohamed Doria's and Defendants' failure to pay Plaintiffs and the Discount Workers Class their lawfully due spread of hours wages was a willful violation of NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR § 142-2.4.

372. Pursuant to NYLL § 198, Plaintiffs and the Discount Workers Class are entitled

to recovery of full payment of unpaid spread of hours wages, an additional amount equal thereto in liquidated damages, prejudgment interest, attorney's fees, and costs and disbursements of this action from Mohamed Doria's estate and Defendants.

## AS AND FOR THE SIXTH CLAIM FOR RELIEF
*(Wage Payment Statements Under the NYLL)*

373.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

374.     Plaintiffs bring this claim on behalf of themselves and the Discount Workers Class.

375.     At all relevant times, Mohamed Doria and Defendants were responsible for providing Plaintiffs and the Discount Workers Class with the proper statements with every payment of wages, as required by NYLL § 195.

376.     At all relevant times, Mohamed Doria and Defendants failed to provide Plaintiffs and the Discount Workers Class with the proper statements with every payment of wages, as required by NYLL § 195.

377.     As Mohamed Doria and Defendants failed to provide Plaintiffs and the Discount Workers Class with proper statements with every payment of wages as required by NYLL § 195, Plaintiffs and the members of the Discount Workers Class are each entitled to liquidated damages in the amount of $50.00 per day for every day until Plaintiffs have been paid in full, up to a maximum of $5,000.00, along with all reasonable attorney fees and costs from Mohamed Doria's estate and Defendants.

## AS AND FOR THE SEVENTH CLAIM FOR RELIEF
*(Wage Theft Prevention Act Notices of Pay Rate)*

378.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

379.    Plaintiffs bring this claim on behalf of themselves and the Discount Workers Class.

380.    Between 2011 through the present, Mohamed Doria and Defendants were responsible for providing  Plaintiffs and the Discount Workers Class with notifications of pay rate at the commencement of their employment pursuant to NYLL § 195(1) and the Wage Theft Prevention Act.

381.    Between 2012 and 2014, Mohamed Doria and Defendants were responsible for providing  Plaintiffs and the Discount Workers Class with annual notifications of pay rate their employment pursuant to NYLL § 195(1) and the Wage Theft Prevention Act.

382.    Mohamed Doria and Defendants failed to provide Plaintiffs and the Discount Workers Class with notifications of pay rate at the commencement of their employment or annually pursuant to NYLL § 195(1) and the Wage Theft Prevention Act.

383.    As Mohamed Doria and Defendants failed to provide Plaintiffs and the Discount Workers Class with Wage Theft Prevention Act notifications as required by NYLL § 195(1), Plaintiffs and the members of the Discount Workers' Class are each entitled to liquidated damages in the amount of $2,500.00, along with all reasonable attorney fees and costs.

## AS AND FOR THE EIGHTH CLAIM FOR RELIEF
*(Retaliation Under the FLSA)*

384.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

385.     This claim is brought individually by Retaliation Plaintiffs against Defendants and the estate of Mohamed Doria for retaliatory acts prior to the death of Mohamed Doria and against Defendants after that time.

386.     Retaliation Plaintiffs filed complaints or instituted proceedings against Mohamed Doria and Defendants within the meaning and scope of Section 215(a)(3) of the FLSA by filing the initial Complaint in this action on October 3, 2014, participating in a Department of Labor investigation in 2013, and lodging internal complaints about defendants' unlawful minimum wage and overtime pay practices.

387.     Mohamed Doria's and Defendants' behavior towards Retaliation Plaintiffs since lodging their complaints, including, but not limited to, terminating them, suspending them without pay, reducing their hours, threatening them with termination, threatening them with deportation, threatening them with physical violence, demoting them, filing a false police report, harassing them and making comments intended to intimidate them from proceeding with the lawsuit, constitutes discrimination in violation of Section 215(a)(3) of the FLSA.

388.     Due to Mohamed Doria's and Defendants' illegal retaliation, Retaliation Plaintiffs are entitled to legal and equitable relief including, but not limited to, reinstatement, enjoining Defendants from further retaliation, payment of lost and withheld compensation, back-pay, emotional distress damages, and additional amounts such as liquidated damages, interest, and reasonable attorneys' fees.

## AS AND FOR THE NINTH CLAIM FOR RELIEF
*(Retaliation Under the NYLL)*

389.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

390.     This claim is brought individually by Retaliation Plaintiffs against Defendants and the estate of Mohamed Doria for retaliatory acts prior to the death of Mohamed Doria and against Defendants after that time.

391.     Retaliation Plaintiffs filed complaints or instituted proceedings against Mohamed Doria and Defendants within the meaning and scope of Section 215 of the NYLL by filing the initial Complaint in this action on October 4, 2014, by participating in a United States Department of Labor Investigation in 2013 and by lodging internal complaint about defendants' failure to pay minimum wage and overtime.

392.     Mohamed Doria and Defendants behavior towards Retaliation Plaintiffs since the filing of the initial Complaint, including, but not limited to, terminating them, suspending them without pay, reducing their hours, threatening termination, threatening deportation, threatening them with physical violence, filing a false police report, harassing them and making comments intended to intimidate them from proceeding with the lawsuit, constitutes discrimination in violation of Section 215 of the NYLL.

393.     Due to Mohamed Doria's and Defendants' retaliation, Retaliation Plaintiffs are entitled to all appropriate relief, including, but not limited to, reinstatement, enjoining Defendants from further retaliation, payment of lost and withheld compensation, back-pay, emotional distress damages, additional amounts such as liquidated damages, interest, and reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request, pursuant to FRCP 38(b), a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalves and on behalf of all other similarly situated persons, seek the following relief:

A. Declaring Mohamed Doria's and Defendants' conduct complained of herein to constitute illegal retaliation in violation of the FLSA and NYLL.

B. Declaring the Discount Stores and the individual Defendants to be operating a single enterprise and to be joint employers pursuant to the NYLL and the FLSA.

C. Declaring Mohamed Doria's and Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA and NYLL.

D. Issuing an Order, at the earliest time possible, permitting Plaintiffs be to give notice of this collective action, or that the Court issue such notice, to the Discount Workers Collective. Such notice shall inform the Discount Collective that this civil action has been filed, of the nature of the action, and of their right to join this action, the preliminary injunction and their right to be free from retaliation for their participation in this action.

E. Issuing an Order Certifying the Discount Workers Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; designating Plaintiffs as class representatives; designating of Plaintiffs' counsel as class counsel; and awarding reasonable incentive payment to Plaintiffs;

F.   Ordering Defendants to restore Retaliation Plaintiffs to their positions and work schedules prior to the lodging of their complaints;

G.   Issuing a permanent injunction, enjoining Defendants from engaging in any further retaliation against Plaintiffs and any of their workers;

H.   On the First and Second Claim for Relief on behalf of Plaintiffs and Discount Workers Members against the estate of Mohamed Doria and Defendants, for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

I.   On the Third and Fourth Claim for Relief on behalf of Plaintiffs and Discount Workers Members against the estate of Mohamed Doria and Defendants, for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

J.   On the Fifth Claim for Relief on behalf of Plaintiffs and Discount Workers Members against the estate of Mohamed Doria and Defendants, for all spread of hours wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

K.   On the Sixth Claim for Relief on behalf of Plaintiffs and Discount Workers Members against the estate of Mohamed Doria and Defendants for failing to provide proper statements with every payment of wages, liquidated damages in the amount of $100.00

per week for every work week in which the violation occurred, up to a maximum of $2,500.00, along with all reasonable attorney fees and cost in an amount to be determined by this Court but greater than the jurisdictional minimum;

L.  On the Seventh and Eighth Claims for Relief of the Retaliation Plaintiffs against the estate of Mohamed Doria and Defendants for unlawful retaliation, awarding all legal and equitable relief including but not limited to reinstatement, compensation for the reduction of their hours, back pay, emotional distress damages, liquidated damages, interest, along with all reasonable attorney fees and costs in an amount to be determined by this Court but greater than the jurisdictional minimum.

M.  Interest;

N.  Costs and disbursements; and

O.  Such other and further relief as is just and proper.

Dated: Melville, New York
        December 11, 2015

                                          Respectfully submitted,

                                          By: _____
                                          Christopher Marlborough, Esq. (CM-6107)
                                          THE MARLBOROUGH LAW FIRM, P.C.
                                          445 Broad Hollow Road, Suite 400
                                          Melville, NY 11747
                                          (212) 991-8960
                                          chris@marlboroughlawfirm.com

                                          SLATER SLATER SCHULMAN LLP
                                          Adam P. Slater, Esq.
                                          Anthony Portesy, Esq.
                                          445 Broad Hollow Road, Suite 334
                                          Melville, NY 11747
                                          (631) 420-9300
                                          aslater@sssfirm.com
                                          Attorneys for Plaintiffs

# EXHIBIT A

Blank Wage Theft Prevention Act Notice

# EXHIBIT B

Coerced Statement
Presented to Keletso Tebogo



# EXHIBIT C
### Fraudulent Backdated Affidavit

To whom it may concern:

I David Richardson, hereby state that I am a part time worker at Bergen Discount, Inc located at 518 Willis Avenue, Bronx, NY 10455

I also state that I am not a part of and have no intention to be a part to any lawsuit filed against my employer and/or subsidiaries of my employer.

The lawsuit filed on October 03, 2014 naming me as a plaintiff was done without my consent and I therefore object to it's continuance with me named as a plaintiff.

_____

David Richardson

State of New York
County of Bronx
Sworn before me 14 day of October 2014

# EXHIBIT D
Coerced Statement
Presented to Hector Rosado

