UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE DORIA/MEMON DISCOUNT STORES          14-cv-7990 (RWS)
WAGE AND HOUR LITIGATION

                                     OPINION

----------------------------------------X

A P P E A R A N C E S:

<u>Attorneys for Plaintiffs</u>

SLATER SLATER SCHULMAN LLP
445 Broad Hollow Road
Melville, NY 11747
By:  Adam Paul Slater, Esq.
     Anthony R. Portesy, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/21/16

KATZ MELINGER PLLC
280 Madison Avenue, Suite 600
New York, NE 10016
By:  Kenneth J. Katz, Esq.
     Nicole Deanna Grunfeld, Esq.

THE MARLBOROUGH LAW FIRM, P.C.
555 Fifth Avenue, 14th Floor
New York, NY 10017
By:  Christopher Marlborough, Esq.

<u>Attorneys for Defendants</u>

LAW OFFICES OF MICHAEL K. CHONG, LLC
300 Hudson Street, Suite 10
Hoboken, NJ 07030
By:  Michael K. Chong, Esq.

**Sweet, D.J.,**

The Plaintiffs, a conditionally-certified class of current and former workers at a chain of discount stores in the Bronx, have moved twice for a finding of contempt against Defendants Michael Memon ("Memon") and Gulan Doria ("Doria"). Based upon the findings and conclusions set forth below, the motions are granted.

## Prior Proceedings

This action was initiated by the Plaintiffs on October 3, 2014, with the filing of a Complaint alleging that the Defendants failed to pay their workers minimum wage and overtime compensation, and neglected to properly document each employee's hours worked and payment received, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (See generally, Complaint, Dkt. No. 1.) The Defendants filed their Answer on December 6, 2014.

On May 12, 2015, the Plaintiffs filed an Order to Show Cause, seeking a temporary restraining order and preliminary injunction. (Dkt. No. 16.) The Court signed a Temporary Restraining Order ("TRO") later that day, which forbade the Defendants from

2

terminating or suspending or threatening to terminate or
suspend any employee, causing any employee to be
deported or threatening to cause any employee to be
deported, retaliating or discriminating in any way
against current and former employees . . . based on their
participating in or intention to participate [in] the
instant lawsuit, requesting any employees to sign
documents compromising their rights in this lawsuit or
cooperating in any way in prosecution of the lawsuit.

(Id.)  The TRO also prohibited the Defendants "from speaking to

employees of Defendants either directly or through another

person acting on their behalf, regarding any communication with

Plaintiffs' counsel."  (Id.)

Two days later, the Plaintiffs filed their first Motion for

Contempt, alleging that Memon, Doria, and two of their

associates had confronted and threatened Plaintiffs' counsel on

the courthouse steps shortly after the issuance of the TRO, and

that they called the police in an attempt to have Plaintiff

Roberto Rodriguez arrested.  (See Declaration of Adam P. Slater,

Dkt. No. 21, at ¶¶ 30-37.)  They also alleged that Plaintiff

Josue Pierre-Louis had received an anonymous phone call in

Haitian Creole, saying that Pierre-Louis should meet with

Defendant Gulan Doria and settle the case.  (Id. at ¶ 35.)  The

initial contempt motion was supported by affidavits, and the

Plaintiffs submitted additional affidavits a month later,

alleging that the Defendants engaged in retaliation for their

participation in the lawsuit.  (See Dkt. Nos. 28 & 41.)

On June 2, 2015, the Honorable Richard J. Sullivan, sitting

3

as Part One Judge, converted the Temporary Restraining Order

into a preliminary injunction, using slightly different

language.  Judge Sullivan's Order stated that

> Defendants are enjoined from retaliating or
> discriminating in any way against any current or former
> employee of the Defendants, including, but not limited
> to, by terminating or suspending, threatening to
> terminate or suspend, causing to be deported, or
> threatening to cause to be deported such employee or
> former employee, based on any participation in or intent
> to participate in the instant lawsuit; requesting that
> any employee sign documents compromising any rights in
> this lawsuit or any ability to cooperate in the
> prosecution of this lawsuit; or communicating in any way
> with any employees, Plaintiffs and otherwise, regarding
> this lawsuit or any facts relating to this lawsuit.

(Dkt. No. 61.)  Judge Sullivan also stayed the motion for

contempt (Id.) and later referred the parties to mediation.

(Dkt. No. 71.)  The mediation was ultimately unsuccessful.  (See

Dkt. No. 142.)

On June 25, 2015, the Plaintiffs filed a motion for

conditional class certification under the FLSA.  (Dkt. Nos. 75-

89.)  On August 5, 2015, the Plaintiffs filed a motion to amend

their Complaint, seeking to add new parties and allegations,

including a claim based on retaliation.  The Court granted both

motions in an Opinion dated September 23, 2015.  Agropong v.

Memon, No. 14 Civ. 7990, 2015 WL 5610879 (S.D.N.Y. Sept. 23,

2015).

On July 26, 2015, the Plaintiffs filed their second motion

4

for contempt, alleging multiple violations of the TRO and
preliminary injunction. (Dkt. Nos. 100-12.) They supported
their motion with multiple affidavits from employees at the
Defendants' chain of stores. (Dkt. Nos. 103-09.) The
Defendants submitted their opposition brief on September 23,
2015, supported by an affidavit from Memon. (Dkt. No. 145.)
Plaintiffs filed their reply on September 28, 2015, also
supported by affidavits. (Dkt. Nos. 150-54.)

A contempt hearing was conducted on September 30, 2015.
The Plaintiffs called two witnesses, Plaintiff Keletso Tebogo,
who spoke about a recording he made covertly of a discussion
with Memon and Doria, and Memon, who they confronted with their
allegations of retaliation. (See generally, Hearing Transcript,
Dkt. No. 163 (the "Tr.").) At the end of the day, Plaintiffs'
counsel was given the option of calling additional witnesses the
following morning, but declined. (Tr. at 108-09.)

At the close of the hearing, the Defendants requested the
opportunity to submit a short post-hearing brief, which the
Court granted. (Tr. at 109.) The Defendants filed their brief
on October 8, 2015. (Dkt. No. 159.) The Plaintiffs requested
and were granted the opportunity to reply to the Defendants'
post-hearing submission (Dkt. No. 158), and filed their response
on October 12, 2015. (Dkt. Nos. 160-61.)

5

**Findings of Fact**

The substance of the TRO and preliminary injunction was communicated to the Defendants and understood by them. This understanding was confirmed by Defendants' Counsel, Michael Chong, at the preliminary injunction hearing:

> THE COURT: . . . . No discussion, no conversation whatsoever about this  litigation, and certainly no retaliation, no threats of termination or suspension or deportation, no requests or demands that employees sign documents disclaiming rights, withdrawing from the litigation, or anything related to the litigation. Yes?
>
> MR. CHONG: Yes, Your Honor.

(Preliminary Injunction Hearing Transcript, Dkt. No. 73 (the "PI Hg. Tr."), at 15:15-22.) Chong represented to Judge Sullivan that "my clients have agreed they will not contact any of the plaintiffs to engage in any of the conduct they are being accused of. They flat out have understood that they're not to contact any of the plaintiffs in regard to this litigation." (PI Hg. Tr. at 12:13-17.) As Chong summarized the matter, his clients were "consenting to full compliance with [Plaintiffs'] request that the defendants will not contact, they will not discuss, they will not engage in retaliatory acts." (Id. 13:6-8.) Defendant Memon acknowledged at the contempt hearing that he was aware of the order and that his counsel had instructed him not to discuss the lawsuit with any employee. (Tr. at

101:5-16.)

Nonetheless, the Defendants engaged in a campaign of intimidation and retaliation in an attempt to compel the Plaintiffs into disavowing the lawsuit and to prevent additional employees from joining.  The strongest piece of evidence showing retaliation is a recording made by plaintiff Keletso Tebogo of a conversation he and another employee had with defendants Memon and Doria on May 20, 2015, the day before the initially-scheduled preliminary injunction hearing, while the TRO was already in effect.  In the recording, Memon confronts Tebogo about a document concerning this litigation, and asks him a number of questions regarding his interactions with Plaintiffs' counsel.  (See generally Recording Transcript, Dkt. No. 102-2.) Memon also asks Tebogo to execute a statement disavowing any involvement in this action and claiming that the use of his name was a misidentification.  (Id. at 8-9.)  Memon queries whether Tebogo understands the "consequences" of his actions, which could include lower paychecks if the discount stores deducted taxes, Social Security, and Medicare contributions in accordance with federal law.  (Id.)  Memon and Doria put pressure on Tebogo at various points throughout the conversation, asking if Tebogo "wanted to leave us" (Id. at 9); stating that participating in the action "puts you out of the game; you're not in the game" (Id. at 12.); declaring that "you are with them, [] in other

7

words. You are not with us. You are not, you are not working for us," (Id. at 12.); and concluding that "you are not working for me, you are working for the attorney, right?" (Id. at 13.) The gist of the conversation could not be clearer: Memon and Doria wanted to know what interactions Tebogo and his coworker had with Plaintiffs' counsel, and they demanded that the two workers disavow any interest in the litigation, or face consequences. This conduct amounts to a clear violation of the terms of the TRO, which had been in place for over a week. (See Dkt. No. 16.) The recording was played at the contempt hearing, after Tebogo recounted the conversation and how he recorded it (See Tr. at 15), and then confirmed that the recording was complete and unedited. (Id. at 23.) The Court credits the recording and Tebogo's testimony regarding it.

The Plaintiffs also submit two additional recordings (and their pertinent transcripts): one by plaintiff Daniel Rodriguez (Dkt. No. 40 Exs. G & H) and one by plaintiff Sergio Recinos (Dkt. No. 152 Ex. A). In the Rodriguez recording (which is supported by an affidavit relating the substance of the conversation, but not the circumstances of the recording, see Dkt. No. 17-2, at 9), Doria and Memon tell Rodriguez that he will have his hours restored if he signs a document disavowing the lawsuit. (Dkt. No. 40 Ex. H.) In the Recinos recording, which is also supported by an affidavit, Memon discusses why

8

Recinos should not work with lawyers. (Dkt. No. 152.) The
Court also credits the contents of these recordings.

The Plaintiffs buttress each of their contempt motions with
an array of affidavits and declarations. The first motion for
contempt is supported by affidavits from five plaintiffs:
Roberto Rodriguez, who discusses an incident on the courthouse
steps and alleges that Memon and Doria attempted to have him
arrested (Dkt. No. 28-1); Israel Udughan, who alleges that Memon
and Doria called and questioned him on May 19, 2015, the day
after he joined the lawsuit, and that Memon threatened to fire
him (Dkt. No. 41-1); Tebogo, who states that he witnessed Doria
questioning workers about their participation in the lawsuit
(Dkt. No. 41-2); David Richardson, who states that he was
suspended after refusing to sign a paper renouncing the
litigation, and not allowed to return to work even after the
issuance of the TRO (Dkt. No. 41-3); and Josue Pierre-Louis,
alleging that he and his sister received threatening phone calls
demanding that he settle the case. (Dkt. Nos. 28-1 & 41-4.)[1]

The second motion for contempt is supported by signed
declarations from seven plaintiffs. The first is from Tebogo,
who discusses the conversation he recorded with Memon and Doria,
alleges that he was demoted and had his hours reduced due to his

---

[1] Although the affidavits contain additional allegations against the
Defendants, for the purpose of these motions the Court considers only the
facts alleged to have taken place after the May 12, 2015 issuance of the TRO.

participation in the case, and asserts that the Defendants have engaged in a "wave of retaliation against the workers," including making false criminal charges against Plaintiff Daniel Rodriguez. (Dkt. No. 103.) The second declaration is by Rodriguez, who claims that the Defendants falsely claimed that he threatened a manager with a box cutter, and then fired him. (Dkt. No. 104.) A third declaration came from plaintiff Ronald Agyemang, stating that he was suspended and had his hours cut after refusing to sign papers that renounce his participation in the lawsuit. (Dkt. No. 105.) Plaintiff Mamadou Diallo states in a fourth declaration that Memon and Doria attempted to convince him to cease his participation in the lawsuit by offering to buy him a delivery truck and by claiming that the lawsuit was *haram*, or against Muslim religious law. (Dkt. No. 106.) Plaintiff Kamal Passa filed a declaration stating that Doria's brother had called him to tell him not to be part of the lawsuit (Dkt. No. 107), and plaintiffs Sergio Recinos and Miguel Rosendo each filed declarations stating that they had their work hours reduced for participating in the litigation. (Dkt. Nos. 108 & 109.)

Materials submitted regarding other motions also contain averments of retaliation or of meddling by the Defendants in their employees' participation in this action. For instance, the bulk of the affidavits submitted in connection with the

10

Plaintiffs' recent motion for class certification mention some form of retaliation that would constitute a violation of the TRO or preliminary injunction. (See, e.g., Declaration of Joseph Kofie, Dkt. No. 83, at ¶¶ 12-16.) Similarly, one of the declarations submitted in opposition to the Defendants' August 28, 2015 motion to quash a subpoena on T-Mobile contains an allegation that Memon improperly inquired about his employees' participation in this action. (Declaration of Sonia Espinosa, Dkt. No. 134, at ¶¶ 12-14.)

The Defendants have offered only limited evidence in opposition to the contempt motions. When the first motion was filed, Defendants submitted an affidavit from Memon that specifically refuted several of the assertions made in the Plaintiffs' affidavits. (Dkt. No. 31.) Memon stated that plaintiffs Pierre-Louis, Richardson, Daniel Rodriguez, and Roberto Rodriguez did not have their hours reduced because of their participation in the lawsuit, but rather because they were unreliable and lacked tax documentation. (See id. at 3-7, 10.) He denied ever demanding that employees sign documents disavowing the lawsuit, instead stating that the business had become more concerned about paperwork due to the lawsuit, and had begun asking workers to sign required payroll documents. (See id. at 6, 9.) Memon also stated that Roberto and Daniel Rodriguez had robbed him of $9,000 and vigorously disputed the

11

Plaintiffs' account of the confrontation outside the courthouse.
(See id. at 7, 16.)  Doria filed an affidavit in response to the
first motion that tracked Memon's word-for-word.  (Dkt. No. 32.)
Memon also attached an affidavit to Defendants' opposition brief
to the second contempt motion, stating that there has been no
retaliation, that any reduction in hours was the consequence of
a slowdown in business, and that the plaintiffs had "taken
advantage of this litigation" and used threats of contempt in
order to "slack[] off by not performing their duties; using
their cell phones during their scheduled work hours rather than
work."  (Dkt. No. 145, Ex. 1.)

Memon was called as a witness at the contempt hearing, but
his testimony was not credible.  He could not recall the
conversation that Tebogo recorded, or identify any of the voices
on the tape.  (Tr. at 73.)  He claimed not to remember the
conference at which the TRO was issued or the hearing at which
Judge Sullivan converted it into a preliminary injunction, and
did not remember whether the orders permitted him to retaliate
against workers.  (Id. at 79-80.)[2]  Memon said that he cut the
hours of many workers, including some of the Plaintiffs, due to
poor business conditions, but he also acknowledged recently

---

[2] Memon backed off of these claims of a faulty memory when questioned by his
own lawyer, Michael Chong, acknowledging that Chong had discussed the TRO
with him and that he was told not to discuss the lawsuit with his employees.
(Tr. at 101.)

12

hiring new full-time workers and was unable to name any employee
who was not involved in this action and still saw his or her
hours reduced. (Id. at 90-92.) He also could not recall – but
did not deny – ever asking his employees to sign documents
renouncing participation in the lawsuit. (Id. at 100.) Memon's
inability to remember facts relating to the core elements of the
Plaintiffs' retaliation claims is deeply unconvincing, both
because it dovetails perfectly with his self-interest and
because it is inconsistent with his status as a man with mental
faculties and business acumen sufficient to manage twelve retail
stores on his own. (See id. at 69-70, 106.)

Although there is insufficient evidence to support a
finding of fact regarding certain individual incidents,
particularly the alleged threatening phone calls or the
confrontation between the parties on the courthouse steps, the
overall pattern of retaliation is clear. The Plaintiffs'
evidence, which has not been credibly contradicted, demonstrates
that the Defendants deliberately engaged in a campaign of
retaliation and repeatedly communicated with their employees
regarding their participation in this lawsuit, in violation of
the TRO and the preliminary injunction issued by Judge Sullivan.
Employees were improperly pressured to sign statements
disavowing the lawsuit, and those who did not were terminated,
suspended, or saw their hours cut. This conduct took place both

13

before and after the entry of the TRO and preliminary

injunction, despite Doria and Memon being aware of both Orders.

## Applicable Legal Standard

Although the decision to impose contempt sanctions is

committed to the District Court's discretion, that discretion is

"narrowly circumscribed." Gucci Am., Inc. v. Weixing Li, 768

F.3d 122, 142 (2d Cir. 2014). In order to establish contempt, a

movant must show 1) that the order the contemnor failed to

comply with is clear and unambiguous, 2) that the proof of

noncompliance is clear and convincing, and 3) that the contemnor

has not diligently attempted to comply in a reasonable manner."

Id. (citing Perez v. Danbury Hosp., 346 F.3d 419, 423 (2d Cir.

2003)). Once contempt has been found, the sanction imposed must

be compensatory or coercive in nature, rather than punitive.

Id. at 144.

## The Recordings Are Admissible

The Defendants argue that the Tebogo recording should not

be considered because it cannot be properly authenticated under

the seven-part test laid out in United States v. McKeever, 169

F. Supp. 426 (S.D.N.Y. 1958), rev'd on other grounds 271 F.2d

14

669 (2d Cir. 1959). However, the Second Circuit "has expressly and repeatedly declined to adopt the McKeever approach," instead choosing to adopt a "general standard" that requires "clear and convincing evidence of authenticity and accuracy." United States v. Hamilton, 334 F.3d 170, 186 (2d Cir. 2003). Moreover, this is a civil case rather than a criminal one like Hamilton or McKeever, and so a still-lower standard for authentication applies, requiring only sufficient evidence for a rational juror to conclude that the statement in a recording was made by the party that the proponent contends to have made it. See Ricketts v. City of Hartford, 74 F.3d 1397, 1410-11 (2d Cir. 1996); S.E.C. v. Badian, 822 F. Supp. 2d 352, 364 (S.D.N.Y. 2011). That standard is more than adequately met here, where Tebogo testified regarding how he recorded the conversation with Doria and Memon and certified that that the recording was correct "[b]ecause I listened to it. I recorded it, and everything is like that, 100 percent." (Tr. at 23.) Because a rational juror could conclude based on Tebogo's testimony that it was in fact Memon and Doria speaking on the recording, its admission was proper. Similarly, although Defendants object to the admissibility of the Recinos and Rodriguez recordings, both may be properly considered, since their supporting affidavits provide enough background that a rational juror could conclude that they contain Doria's and Memon's voices. See Badian, 822

15

F. Supp. 2d at 364.[3]

## Contempt Sanctions Are Warranted

As an initial matter, the TRO and preliminary injunction
entered in this case are clear and unambiguous.  The
straightforward language of the two Orders provided the
Defendants with "clear notice of what specifically they may or
may not do," U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,
789 F.3d 29, 35 (2d Cir. 2015), namely, that they were forbidden
from terminating, suspending, or otherwise discriminating
against their employees for participating in this action, from
threatening to do any of the above, from attempting to have any
employee deported, and from attempting to have any employee sign
documents compromising their rights in this lawsuit.  This
instruction, combined with the two orders' clear textual
prohibition on all forms of retaliation, left no ambiguity.

The two Orders did differ slightly in what sort of
communications regarding the lawsuit were forbidden - the TRO
enjoined the defendants from inquiring into communications with
Plaintiffs' counsel (Dkt. No. 16), while the preliminary

---

[3] Rodriguez' recording is also admissible due to the fact that Defendants did
not object to its use until their post-hearing brief on the contempt motions,
nearly five months after it was first introduced and a point when Plaintiffs
would no longer have the opportunity to cure any inadequacy.  See Fuentes,
563 F.2d at 531.

injunction barred any communications with employees about the
lawsuit in general. (Dkt. No. 61.) However, it is clear that
the Defendants understood what they were prohibited from doing.

Defense counsel represented to Judge Sullivan that his
clients were "consenting to full compliance with [Plaintiffs']
request that the defendants will not contact, they will not
discuss, they will not engage in retaliatory acts." (PI Hg. Tr.
at 13:6-8.) Defendant Memon similarly acknowledged at the
contempt hearing that he was aware of the order and subject to
it. (Tr. at 101:5-16.) Because counsel "agreed voluntarily, in
the presence of his clients, that there would be no discussion
of the case with any employee . . . . the Court finds that the
first element necessary to certify a contempt has been
established." Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55,
72 (E.D.N.Y. 2008).

The Plaintiffs have marshalled clear and convincing
evidence showing that the Defendants deliberately violated the
TRO and preliminary injunction. In three recordings, Tebogo's
live testimony, and a host of sworn affidavits, the Plaintiffs
thoroughly demonstrate a pattern of retaliation at the
Defendants' stores whereby employees were pressured to disavow
any participation in this lawsuit, or face harsh consequences at
work. The Defendants' evidence in opposition, consisting of
Memon's testimony, two written affidavits by Memon, and an

17

affidavit signed by Doria that copies Memon's verbatim, is both
insufficient to contradict the Plaintiffs' evidence and not
credible, for the reasons stated above.  The evidence similarly
shows no indicia of any significant effort on the part of the
Defendants to comply with the TRO and preliminary injunction.
The requirements for contempt are therefore established.  See
Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys.
Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004).

Federal district courts enjoy broad discretion in shaping
civil contempt sanctions, which may either serve to coerce
future compliance or to remedy any harm caused by noncompliance.
F.T.C. v. BlueHippo Funding, LLC, 762 F.3d 238, 243 (2d Cir.
2014).  However, lump-sum civil sanctions for past noncompliance
payable to the Court are generally barred as impermissibly
punitive in nature.  See Mackler Prods., Inc. v. Cohen, 146 F.3d
126, 129 (2d Cir. 1998); see also Gucci Am., Inc. v. Weixing Li,
768 F.3d 122, 144 (2d Cir. 2014).  Given this doctrinal
background and the need to compensate the Plaintiffs for work
hours lost and time suspended in retaliation for their
participation in this lawsuit, a significant monetary sanction,
payable to the Plaintiffs, is appropriate.

Courts in the Second Circuit "strictly adhere" to the
general principle that attorney's fees and costs may only be
recovered on a contempt motion if the sanctioned conduct was

18

willful, defined as conduct where the contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply. GMA Accessories, Inc. v. Eminent, Inc., No. 07 Civ. 3219, 2008 WL 2355826, at *10 (S.D.N.Y. May 29, 2008). If the Court does find that the violation was willful, however, attorney's fees should be awarded "unless there are persuasive grounds to deny them." Id.; Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). Since the Defendants' contempt was willful and there appear to be no persuasive grounds arguing against an award, Plaintiff's counsel's reasonable attorney's fees and costs attributable to the two contempt motions shall be covered by the Defendants.

**Conclusion**

Based on the findings and conclusions above, the Plaintiffs' two motions for contempt are granted. The Defendants are Ordered to pay sanctions in the amount of $10,000, which shall be divided evenly among the Plaintiffs who worked at the Defendants' stores between the May 12, 2015 entry of the TRO and September 30, 2015, the motions' hearing date. The Defendants are Ordered to reinstate all Plaintiffs to the hours they were working prior to the filing of this lawsuit.

19

The Defendants are Ordered to keep accurate records of the hours worked by each employee, as required by the FLSA and NYLL, so that compliance may be verified.   Plaintiffs' counsel shall submit an accounting of their costs and fees in connection with the two instant motions; the total, if reasonable, shall be paid by the Defendants.   The Defendants are cautioned that further acts of retaliation or improper communication with employees regarding the lawsuit will result in stricter sanctions, possibly including a referral to the United States Attorney.

20

It is so ordered.

New York, NY
January /9, 2016

ROBERT W. SWEET
U.S.D.J.