UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X

14 Civ. 7990

IN RE DORIA/MEMON DISC. STORES WAGE &
HOUR LITIG.

OPINION AND ORDER

-----------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiffs

       SLATER SLATER SCHULMAN LLP
       445 Broad Hollow Road
       Melville, NY 11747
       By:  Adam Paul Slater, Esq.
           Jonathan E. Schulman, Esq.
           Anthony R. Portesy, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-10-17

       THE MARLBOROUGH LAW FIRM, P.C.
       555 Fifth Avenue, 14th Floor
       New York, NY 10017
       By:  Christopher Marlborough, Esq.

       Attorneys for Defendants

       LAW OFFICES OF MICHAEL K. CHONG, LLC
       300 Hudson Street, Suite 10
       Hoboken, NJ 07030
       By:  Michael K. Chong, Esq.

**Sweet, D.J.**

Plaintiffs, a conditionally certified class of current and former employees[1] at a chain of discount stores operated by Defendants the Estate of Mohamed Doria (the "Estate"), Michael Memon ("Memon"), Gulan Doria ("Doria"), and their discount respective stores[2] (the "Discount Stores," and, collectively, the "Defendants"[3]) have moved pursuant to Federal Rule of Civil Procedure 23(b)(3) to: class certify a proposed class of non-exempt employees who worked at one or more of Defendants' Discount Stores as further defined below; certify a subclass of class members employed by Defendants on or after April 9, 2011 (the "WTPA Subclass"); order notice of class certification to prospective class members in English, Spanish, and French;

---

[1]  Additional information about the conditionally certified class can be found in earlier opinions of the Court. See Agropong v. Memon, No. 14 Civ. 7990 (RWS), 2015 WL 5610879, at *1 (S.D.N.Y. Sept. 23, 2015).

[2]  The Discount Stores are listed in detail in the Amended Complaint ¶ 49.

[3]  While the term Defendants is used consistently for the sake of simplicity, Plaintiffs make allegations as to the Estate only for the time period preceding Mohamed Doria's death on August 14, 2014. (See Pls.' Mem. of Law in Supp. ("Pls. Mem.") at 2 n.2, Dkt. No. 301.)

1

appoint class representatives[4]; appoint co-lead class counsel[5]; and direct Defendants to provide employment and contact information for specified proposed class members.

Based on the facts and conclusions set forth below, Plaintiffs' motion is granted.

**Prior Proceedings**

This action was initiated by Plaintiffs on October 4, 2014 (the "Complaint"," Dkt. No. 1). Plaintiffs' Complaint alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by not paying their workers minimum wage, overtime compensation, and spread of hours premium pay, in addition to failing to comply with wage statement and pay rate notification requirements. (See generally Complaint.)

On May 12, 2015, Plaintiffs moved for a temporary restraining order, which on June 2, 2015, was converted into a preliminary injunction, to enjoin Defendants from terminating,

---

[4]     Proposed class representatives are: Keletso Tebogo, Olugbenga Opesanwo, David Richardson, Ronald Agyemang, Angel Cartagena, and Maria Sumano.

[5]     Proposed co-lead class counsel are the Marlborough Law Firm, P.C. and Slater Slater Schulman LLP.

suspending, or otherwise discriminating against their employees for participating in this action, from threatening to do any of the above, from attempting to have any employee deported, and from attempting to have any employee sign documents compromising their rights in this lawsuit. (See Dkt. Nos. 16, 28, 41, 61.) On May 14 and July 26, 2017, Plaintiffs filed motions of contempt as to the injunction, a hearing for which was held by this Court on September 30, 2015; on January 21, 2016, this Court found Defendants in contempt of the injunction. See In re Doria/Memon Disc. Stores Wage & Hour Litig., No. 14 Civ. 7990 (RWS), 2016 WL 270080 (S.D.N.Y. Jan. 21, 2016). Defendants were also ordered to keep accurate records of employee work hours going forward. Id., 2016 WL 270080, at *7. On July 22, 2016, Plaintiffs were awarded reasonable attorneys' fees for the contempt motions. See In re Doria/Memon Disc. Stores Wage & Hour Litig., No. 14 Civ. 7990 (RWS), 2016 WL 3963170 (S.D.N.Y. July 22, 2016).

With the contempt motions as a backdrop, Plaintiffs moved for conditional certification of their FLSA class on June 25, 2015, (Dkt. No. 77), and on August 5, 2017, moved to amend their Complaint to add new parties and allegations of retaliation, (Dkt. No. 115). The Court granted both motions on September 23,

3

2015. (Dkt. No. 146.) Plaintiffs' Amended Complaint was filed on December 17, 2015. (the "Amended Complaint," Dkt. No. 191.)

Discovery has been ongoing, and deadlines have been continually pushed back to accommodate the parties' scheduling difficulties. As of this Opinion, the parties' anticipated deposition schedule extends until the end of December 2017. (See Dkt. No. 314.)

On July 6, 2017, Plaintiffs moved the instant motion, which was taken on submission and marked fully submitted on September 13, 2017. (Dkt. No. 300.)

**Facts**

The following facts are drawn from Plaintiffs' Amended Complaint and the declarations, affidavits, and exhibits submitted with respect to the instant motion for class certification. The facts are not in dispute unless otherwise noted.

Defendants own and operate the Discount Stores, a collection of discount stores located throughout the Bronx and

4

Queens, New York. Plaintiffs are non-exempt employees at one or more of the Discount Stores who allege they were required to work six-day, 60 hour week schedules regularly, with one lunch break per day for a maximum of twenty minutes or fewer. Plaintiffs allege that Defendants maintained a policy of failing to pay employees at the Discount Store minimum wage, overtime, and spread of hours premium pay. As part of the alleged employment practices, Defendants did not issue proper wage statements or notifications of pay rates and generally paid in cash and off the books. According to Plaintiffs, Discount Stores workers often worked at several locations and were regularly transferred between stores temporarily or permanently.

Plaintiffs also describe a retaliatory campaign by Defendants against Discount Store employees expressing interest or participating in the instant action. Specifically, Plaintiffs allege that Defendants have suspended and reduced work hours, demoted several Plaintiffs, threated termination, deportation, and physical violation, and filed false police reports against various Plaintiffs. In their Amended Complaint, Plaintiffs have identified fifteen particular employees as particular targets of Defendants' retaliation. (See Amended Compl. ¶ 28.)

**Proposed Class**

Plaintiffs have proposed that the certified class be defined as: "all non-exempt workers who worked at [Defendants' Discount Stores] at any time from October 4, 2008 to the present," (Declaration of Anthony Portesy dated July 6, 2017 ("Portesy Decl."), Ex. A at 1, Dkt. No. 302-1), as defined by a list submitted to the Court in conjunction with the instant motion and which "exclud[es] Defendants and members of their immediate families," (Pls.' Mem. at 1; see Portesy Decl., Ex. X, Dkt. No. 302-24[6]). Plaintiffs have also sought a subclass of "class members who worked for Defendants since April 9, 2011," which would include additional claims brought under the Wage Theft Prevention Act ("WTPA"). (Portesy Decl., Ex. A at 1; see Pls.' Mem. at 1.)

---

[6]    Although at some points in their briefing, Plaintiffs reference the list of prospective class members as attached to the Portesy Declaration at Exhibit A, (Pls.' Mem. at 1; but see Pls.' Mem at 22), the list of names, labeled the "Bergen Discount Stores Class List," appears actually to be annexed as Exhibit X, (Portesy Decl., Ex. X). Exhibit X is what has been considered for the instant motion.

**Applicable Standards**

Class certification is appropriate where the proposed class
meets, by a preponderance of the evidence following a court's
"rigorous analysis," the requirements of Rule 23(a), and the
proposed class constitutes one of the types of classes
enumerated in Rule 23(b). See Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338, 351 (2011); Teamsters Local 445 Freight Div.
Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir.
2008); In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24,
29 (2d Cir. 2006). "Frequently that 'rigorous analysis' will
entail some overlap with the merits of the plaintiff's
underlying claim." Dukes, 564 U.S. at 351; accord Bombardier,
546 F.3d at 202. However, "in making such determinations, a
district judge should not assess any aspect of the merits
unrelated to a Rule 23 requirement." In re Initial Pub.
Offerings, 471 F.3d at 41. The Court has discretion on questions
of class certification because "the district court is often in
the best position to assess the propriety of the class and has
the ability . . . to alter or modify the class, create
subclasses, and decertify the class whenever warranted."
Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d
134, 139 (2d Cir. 2001). However, the "question is not whether

7

the plaintiff has stated a cause of action or will prevail on

the merits, but rather whether the requirements of Rule 23 are

met." Gomez v. Lace Entm't, Inc., No. 15 Civ. 3326 (CM), 2017 WL

129130, at *4 (S.D.N.Y. Jan. 6, 2017) (quoting Kowalski v.

YellowPages.com, LLC, No. 10 Civ. 7318 (PGG), 2012 WL 1097350,

at *12 (S.D.N.Y. Mar. 31, 2012)).

The four prerequisites of Rule 23(a) are that:

(1) the class is so numerous that joinder of all
members is impracticable; (2) there are questions of
law or fact common to the class; (3) the claims or
defenses of the representative parties are typical of
the claims or defenses of the class; and (4) the
representative parties will fairly and adequately
protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs must also show the class

definition is ascertainable. In re Initial Pub. Offerings, 471

F.3d at 44-45. "An identifiable class exists if its members can

be ascertained by reference to objective criteria." In re

Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 395 (S.D.N.Y. 2008)

(quoting In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,

209 F.R.D. 323, 337 (S.D.N.Y. 2002)).

In addition to meeting the requirements of Rule 23(a), the

proposed class must constitute one of the types of classes

enumerated in Rule 23(b). As relevant to Plaintiffs' instant

8

motion, Rule 23(b)(3) provides for class certification if the requirements of Rule 23(a) are met and:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." Espinoza v. 953 Associates LLC, No. 10 Civ. 5517 (SAS), 2011 WL 5574895, *6 (S.D.N.Y. Nov. 16, 2011) (quoting Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 (E.D.N.Y. 2009)).

**Plaintiffs' Motion is Granted**

I.    Timeliness of the Instant Motion

In opposition to Plaintiffs' instant motion, Defendants have put forward a single argument: that Plaintiffs' motion is "untimely." (Defs.' Mem. of Law in Opp. ("Defs.' Opp.") at 11.) Specifically, Defendants contend that filing for class certification almost three years after the initial filing of Plaintiffs' Complaint is undue delay because Plaintiffs had sufficient evidence earlier to support an application for class certification and granting the motion now is fundamentally unfair to Defendants because it delays the litigation. (See generally Defs.' Opp.)

Rule 23 does not set a specific timeframe for filing a motion for class certification, only instructing that the matter be determined "[a]t an early practicable time after a person sues or is sued . . . ." Fed. R. Civ. P. 23(c)(1)(A). While the Second Circuit has found that Rule 23's time limits on class certification "certainly mean pre-trial," it has also stated that "it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to

10

determine whether the prerequisites of Rule 23 are satisfied."
Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund, 214 F.3d
132, 135 (2d Cir. 2000) (quoting Sirota v. Solitron Devices,
Inc., 673 F.2d 566, 571 (2d Cir. 1982)). [T]he untimeliness of a
class-certification motion, in and of itself, will not justify
denying class status to the action," and "will be denied only
when the late timing of the determination may cause prejudice or
unduly complicate the case." Saravia v. 2799 Broadway Grocery
LLC, No. 12 Civ. 7310 (PAC), 2014 WL 2011720, at *2 (S.D.N.Y.
May 16, 2014) (quoting 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, &
EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1785.3 (3d ed. 1998));
see also Acticon AG v. China N. E. Petroleum Holdings Ltd., 687
F. App'x 10, 12 (2d Cir. 2017) (citing the same).

Defendants' arguments are unavailing. From the start,
Plaintiffs' Complaint describes its allegations as a "Class
Action" with "Class- and Collective-Wide Factual Allegations"
and seeks certification of a class under Rule 23. (See Compl. at
17-18, 27.) Since then, Plaintiffs has also moved for and have
been granted collective certification for their FLSA claims.
With such "ample notice," Defendants cannot claim to be
surprised by the current motion. Acticon, 687 F. App'x at 12;
see also Lee v. ABC Carpet & Home, 236 F.R.D. 193, 206 (S.D.N.Y.

11

2006) (rejecting untimeliness argument when "Plaintiff's procedural stance has been as a class action since the inception of this matter, evinced both by the Complaint and by conversations and correspondence with the Court").

Deciding class certification now will not prejudice Defendants' case or unduly delay the litigation. Discovery is ongoing, depositions are presently scheduled to be resolved—at the earliest—at the end of the year, and no trial date has been set. See Pyke v. Cuomo, 209 F.R.D. 33, 37 (N.D.N.Y. 2002) (rejecting class certification untimeliness argument when it was the "first such request for certification and the trial is anything but imminent"). Defendants have not explained how class certification now would have a prejudicial impact on the current discovery timeline, and given the overarching common questions presented, it appears unlikely to do so. See Saravia, 2014 WL 2011720, at *2 (rejecting class certification prejudice argument and noting "Defendants do not specify what additional discovery they would need for purposes of this motion"). Given the continued discovery timeline, no reason has been shown why the notice and opt-out process would engender delay.

12

Lastly, as to Defendants argument that Plaintiffs could have made this motion at an earlier date than actually made, some delay is understandable and, in any event, does not make the current motion insufficiently "early in the proceedings" to consider. Acticon, 687 F. App'x at 12 (quoting In re Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund, 214 F.3d 132 (2d Cir. 2000)). Reviewing the procedural posture of this case, Plaintiffs repeatedly have needed to seek—and, consequently, brief—for injunctions and sanctions motions against Defendants for discovery and interference in the litigation; there have been numerous difficulties throughout the discovery and deposition process, all of which are exemplified by the fact that the initial pretrial conference was not held until November 2016. Plaintiffs have represented that the instant motion was filed shortly after Defendants were able to depose each of the proposed class representatives. (See Pls.' Reply Mem. of Law ("Pls.' Reply"), at 3, Dkt. No. 327.) Defendants have sought to portray a delay of "thirty-three months" as untimely, (Defs.' Opp. at 1), but "it is not," Pyke, 209 F.R.D. at 37 (emphasis in original) (rejecting a ten year gap between filing a complaint and motion for class certification as untimely because of intervening substantive motions and an appeal sent up to the Second Circuit). While theoretically Plaintiffs' motion could

13

have been made sooner, their motion will not be denied for
untimeliness.[7]

## II.   Rule 23(a) Requirements

A class may be certified only if it satisfies the following
prerequisites: "(1) the class is so numerous that joinder of all
members is impracticable; (2) there are questions of law or fact
common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of
the class; and (4) the representative parties will fairly and
adequately protect the interests of the class." Fed. R. Civ. P.
23(a). Courts have also found an implied requirement of
ascertainability to the express requirements set forth in Rule
23(a). See In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 305
(S.D.N.Y. 2010) (citing In re Initial Pub. Offerings, 471 F.3d
at 30). As noted above, Defendants have not disputed that

---

[7]     The limited authorities cited by Defendants do not persuade
otherwise. In Weiss v. La Suisse, 161 F. Supp. 2d 305 (S.D.N.Y.
2001), the court denied plaintiffs leave to amend a complaint to
add a class-wide claim without even needing to reach the
question of class certification. Id. at 320. Here, class-wide
claims have been asserted from the start. In Schulte v. State of
N.Y., 533 F. Supp. 31 (E.D.N.Y. 1981), in addition to noting
that class certification appeared inappropriate on the merits,
the court found that certification would "only lead to further
delay." Id. at 37. For reasons stated above, that is not the
case here.

14

Plaintiffs fail to satisfy any of the Rule 23(a) prongs. For the reasons set forth below, the proposed class satisfies the four requirements of Rule 23(a) and the additional requirement of ascertainability.

### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, a class composed of more than forty members satisfies the numerosity requirement." Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004); see also Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."). "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant must show some evidence of or reasonably estimate the number of class members." Gomez, 2017 WL 129130, at *5 (citation omitted).

Here, Plaintiffs have identified over forty similarly situated workers other than Defendants' family through a contact

15

list provided by Defendants and opt-ins from the FLSA action, as demonstrated by their proposed class list. Deposition evidence presented by Plaintiffs corroborates that the class size is over a hundred and, at minimum, well over forty.

Accordingly, the proposed class has satisfied numerosity.

### b. Commonality and Typicality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "As a practical matter, the two requirements tend to merge in the Second Circuit's class certification inquiry." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (citing Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999)). "Plaintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination.'" Eng-Hatcher v. Sprint

16

Nextel Corp., No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *6
(quoting Attenborough v. Constr. & Gen. Bldg. Laborers' Local
79, 238 F.R.D. 82, 95 (S.D.N.Y. 2006)). In the context of wage
and hour cases, courts in the Second Circuit have considered
"whether the employer had company-wide wage policies that
injured the proposed class," Gomez, 2017 WL 129130, at *7, and
"claims by workers that their employers have unlawfully denied
them wages to which they were legally entitled have repeatedly
been held to meet the commonality prerequisite for class
certification, Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127
(S.D.N.Y. 2011) (colleting cases). While it is possible
"individual circumstances of class members differ," commonality
and typicality exist when class members' "injuries derive from a
unitary course of conduct . . . arise from the same course of
events and . . . make[ ] similar legal arguments to prove
defendant's liability." Id. at 127-28 (internal quotation marks
omitted) (quoting Velez v. Majik Cleaning Serv., Inc., No. 03
Civ. 8698 (SAS), 2005 WL 106895, at *2 (S.D.N.Y. Jan. 19,
2005)).

    Both commonality and typicality are met here. The
allegations of the proposed class arise from common company-wide
policies and practices by Defendants at their Discount Stores,

practices that failed to follow the NYLL and, amongst other things, failed to pay minimum wage, overtime, and spread of hours premium pay. The claims of the proposed WTPA Subclass are likewise similar, alleging Defendants with a common policy and practice of failing to issue wage statements and notifications of pay rates, also in violation of the NYLL; moreover, a subclass is warranted here given the need to differentiate amounts of damages under the additional statute. See Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 50 (E.D.N.Y. 2010) (stating that "creation of subclasses may sometimes be called for where there is an unequal allocation of a settlement fund to different categories of class members"). There is no dispute that the proposed class and subclass representatives' claims and defenses are typical of the class members generally. (See generally Declarations in Support of Mot. to Certify Class, Dkt. Nos. 303-09.) Defendants' defenses are the same as to each of these allegations: that the potential class members were not employees of the Defendants, did not work overtime, and were not paid less than minimum wage.

Accordingly, commonality and typicality are satisfied. See Stinson v. City of N.Y., 282 F.R.D. 360, 371 (S.D.N.Y. 2012) (finding typicality when claims arose "from the same course of

18

events, and each class member makes similar legal arguments to
prove the defendant's liability).


c. Adequacy


Rule 23(a)(4) requires that "the representative parties
will fairly and adequately protect the interests of the class."
Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is
evaluated in two ways: (1) by looking to the qualifications of
plaintiffs counsel; and (2) by examining the interests of the
named plaintiffs." Gomez, 2017 WL 129130, at *8 (citing Baffa v.
Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d
Cir. 2000)). To defeat class certification, "there must be a
showing of a genuine conflict between the proposed class
representative's interests and those of the other members of the
class, and only a conflict that goes to the very subject matter
of the litigation will defeat a party's claim of representative
status." Stinson, 282 F.R.D. at 371 (internal quotation marks
and citation omitted). Plaintiffs have satisfied both Baffa
prongs.

Where proposed "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," adequacy as to class representatives is satisfied. <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 253 (2d Cir. 2011). Each of the proposed class representatives have already participated in written discovery requests and been deposed; many have attended and participated in court hearings, including Defendants' contempt hearing. Lastly, the proposed class representatives' interests are aligned with those the putative class, since each asserts he or she has been injured in the same way, by Defendants' allegedly illegal company practices. <u>See</u> <u>Darquea v. Jarden Corp.</u>, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *3 (S.D.N.Y. Mar. 6, 2008) ("All claims alleged arise from the same wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of the proposed class. As such, named Plaintiffs will fairly and adequately protect the interests of the class.").

As for proposed co-lead class counsel, Marlborough Law Firm, P.C., and Slater Slater Schulman LLP, both possess litigation experience representing unpaid workers in certified and conditionally certified class actions, and prior

representations and actions in this action demonstrate familiarity with the applicable law. (See Portesy Decl., Exs. Q & R, Dkt. Nos. 302-17 & 302-18.) Both firms are qualified to represent the proposed class.

Accordingly, adequacy as to the proposed class representatives and class counsel is satisfied.

### d. Ascertainability

"In addition to the explicit Rule 23 requirements, courts in this District have also imposed an implicit 'ascertainability requirement' upon the certification process." Gomez, 2017 WL 129130, at *8 (collecting cases). The standard for ascertainability "is not demanding" and "is designed only to prevent the certification of a class whose membership is truly indeterminable." Id. (quoting Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010)).

21

Here, ascertainability is established. Plaintiffs have
already assembled a list of prospective class and subclass
members by name, and class membership can ultimately be
ascertained by objective documentation, such as payroll records
and individuals identified by Defendants as non-exempt workers
during discovery, all of which appears to be readily available.
See, e.g., Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 136
(S.D.N.Y. 2003) ("The class can be identified through an
examination of the individual files of each of the
participants.").

Accordingly, the proposed class is ascertainable. See
Noble, 224 F.R.D. at 341 (accepting as ascertainable a class
defined as "all non-exempt employees who were not paid overtime
compensation for each hour worked in excess of forty hours per
week" as defendants' company).

III. Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), a
proposed class must also constitute one of the types of classes
enumerated in Rule 23(b). Plaintiffs have moved for class

certification under Rule 23(b)(3). Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Similarly, Defendants have not contested that Plaintiffs have satisfied the requirements under Rule 23(b)(3). For the reasons below, Plaintiffs have established by a preponderance of the evidence that class certification is appropriate.

a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues

23

subject only to individualized proof. Id. (citing In re Visa
Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir.
2001)). "[W]hile a court evaluating whether a movant has
satisfied the requirements of Rule 23(b)(3) must examine both
the claims and the defenses, the mere fact that a defense may
arise and . . . affect different class members differently does
not compel a finding that individual issues predominate over
common ones. The relevant inquiry is not whether a defense
exists, but whether the common issues will predominate over the
individual questions raised by that defense." Gomez, 2017 WL
129130, at *9 (internal quotation marks and citations omitted).


    Common questions of liability predominate over individual
issues here. The overarching issues at play concern matters of
common policy and practice in Defendants' Discount Stores
regarding pay, recordkeeping, and notification obligations under
the NYLL. Cases of "wage claims are especially suited to class
litigation—perhaps 'the most perfect questions for class
treatment'—despite differences in hours worked, wages paid, and
wages due." Espinoza, 280 F.R.D. at 128 (quoting Ramos v.
SimplexGrinnell LP, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011))
(collecting cases). As "all putative class members were
allegedly harmed by a common practice . . . their grievances

relate to this universal practice implicate common questions of law and fact" and "differences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification." Alleyne, 264 F.R.D. at 49. The Amended Complaint's retaliation claims do not detract from the predominant gravamen of Plaintiffs' allegations.

Accordingly, the predominance requirement is satisfied.

### b. Superiority

The Rule 23(b)(3) superiority inquiry asks whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the defendant]. Gomez, 2017 WL 129130, at *10 (quoting Whitehorn v.

25

Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011)).

Superiority has been established here. Given the overarching questions common to all putative class members and in the context of the amount of damages for each individual plaintiff and that a FLSA action has already been conditionally certified against Defendants, a simultaneous class action over the NYLL claims would allow for a "more cost-efficient and fair litigation of common disputes." Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 164 (S.D.N.Y. 2008); see id. (observing the "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions" and collecting cases). Moreover, given Plaintiffs previous need to acquire a preliminary injunction against Defendants for intimidating employees for getting involved in this action, there is cause for "there is reason to believe that class members may fear reprisal and lack familiarity with the legal system, discouraging them from pursuing individual claims." Noble, 224 F.R.D. at 346.

Accordingly, the superiority requirement is satisfied.

26

IV.  Class Counsel

Plaintiffs have moved to have Marlborough Law Firm, P.C.
and Slater Slater Schulman LLP appointed as co-lead class
counsel. In appointing class counsel, Rule 23(g) directs that a
court consider: "(i) the work counsel has done in identifying or
investigating potential claims in the action; (ii) counsel's
experience in handling class actions, other complex litigation,
and the types of claims asserted in the action; (iii) counsel's
knowledge of the applicable law; and (iv) the resources that
counsel will commit to representing the class." Fed. R. Civ. P.
23(g)(1)(A). Defendants do not dispute the qualifications of
Plaintiffs' proposed class counsel and, as noted above, proposed
co-lead class counsel appear qualified and experienced to
represent this class, both from their past experiences and
handling of this matter up through the present. Accordingly,
counsel are hereby appointed co-lead class counsel.

V.  Notice

Federal Rule of Civil Procedure 23(c)(2)(B) provides that
when a class is certified under Rule 23(b)(3), "the court must
direct to class members the best notice practicable under the

27

circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B)[8]; see Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23.").

Having reviewed Plaintiffs' proposed Notice of Class Certification (the "Notice"), (see Portesy Decl., Ex. A), the Court finds the language of the notice sufficient to satisfy the Rule 23(c)(2)(B) requirements. Plaintiffs' requested language

---

[8]    Rule 23(c)(2)(B) provides:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

translations are also appropriate. (See Pls.' Mem. at 1.)
Although Plaintiffs did not propose a manner in which to deliver
the notice, delivery by first class mail is proper. See, e.g.,
Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 356 (E.D.N.Y.
2006).

Accordingly, to effectuate such notice, within fourteen
days of the date of this Opinion, Defendants are directed to
provide Plaintiffs with the dates of employment, last known
addresses, and last known telephone numbers of the proposed
class members Plaintiffs have identified as numbers 114 through
125 on Exhibit X of the Portesy Declaration. Within ten days of
receipt of the contact information of potential class members
from Defendants, Plaintiffs are directed to mail their proposed
Notice, with translations in English, Spanish, and French, and
all appropriate dates and quantities updated, to each individual
class member as described above, providing class members thirty
days to opt-out of the class following the Notice's mailing.
Defendants are also directed to post the Notice, immediately
upon receipt of it from Plaintiffs, in a conspicuous location
visible to all potential class members in each of the
Defendants' Discount Stores until the conclusion of the opt-out
period.

29

**Conclusion**

   For the foregoing reasons, Plaintiffs' motions for class
certification is granted, with a class and subclass certified as
defined above. Keletso Tebogo, Olugbenga Opesanwo, David
Richardson, Ronald Agyemang, Angel Cartagena, and Maria Sumano
are appointed class representatives for the class and subclass.
Marlborough Law Firm, P.C. and Slater Slater Schulman LLP are
appointed co-class counsel for both the class and subclass.
Plaintiffs are directed to issue the Notice, and Defendants are
directed to provide to Plaintiffs the proposed class member
information and post the finalized Notice, as detailed above.

   It is so ordered.

**New York, NY**
**October /ᶜ , 2017**

                                    _____
                                    **ROBERT W. SWEET**
                                    **U.S.D.J.**

30